UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
HOWARD HENRY,                                      :
                                                   :         NO. 05-CV-8106 (RCC)(DFE)
                        Plaintiff,                 :
                                                   :
              v.                                   :
                                                   :
WYETH PHARMACEUTICALS, INC.,                       :
WALTER WARDROP, ANDREW SCHASCHL,                   :
AND MICHAEL MCDERMOTT                              :
                                                   :
                        Defendants.                :
-----------------------------------------------------------X

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Michael Delikat  (MD-1165)
James H. McQuade (JM-0788)
ORRICK, HERRINGTON & SUTCLIFFE  LLP
666 Fifth Avenue
New York, New York  10103
Telephone:  (212) 506-5000

Attorneys for Defendants Wyeth Pharmaceuticals, a Division
of Wyeth, Walter Wardrop, and Michael McDermott

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................... 1

ARGUMENT ..................................................................................................... 2

    I.    SUMMARY JUDGMENT SHOULD BE GRANTED WITH RESPECT
           TO HENRY'S DISCRIMINATION CLAIMS ......................................... 2

        A.    Defendants Are Entitled To Summary Judgment With Respect To
             Henry's Claims Based On His 2003 Performance Reviews ...................... 3

            1.    The Performance Reviews Did Not Create A Materially
                    Adverse Change In The Terms And Conditions Of Henry's
                    Employment .............................................................................. 4

            2.    There Is No Evidence That The Performance Reviews
                    Were Issued Under Circumstances Giving Rise To An
                    Inference Of Discrimination ............................................... 5

            3.    Henry Cannot Establish That Wardrop Rated Him As A
                    "Solid Performer" Because Of His Race ......................................... 6

        B.    Defendants Are Entitled To Summary Judgment With Respect To
             Henry's Alleged "Demotion" Claim ........................................................ 8

            1.    Henry's Alleged Demotion Did Not Cause A Material
                    Adverse Change In The Terms and Conditions Of Henry's
                    Employment .............................................................................. 8

            2.    Henry Can Point To No Evidence Giving Rise To An
                    Inference Of Discrimination .................................................. 10

            3.    Henry Cannot Meet His Ultimate Burden Of Proof ................... 10

        C.    Defendants Are Entitled To Summary Judgment With Respect To
             Each Of Henry's Alleged Promotion Claims ........................................ 11

            1.    The Project Engineer Position ...................................................... 11

            2.    Production Coordinator Position ................................................... 12

            3.    "Filling In" As Production Coordinator ...................................... 14

            4.    Process Engineer Position ............................................................ 15

            5.    Staff Engineer I Position ............................................................. 16

            6.    Project Engineer Position ............................................................ 17

    II.    SUMMARY JUDGMENT SHOULD BE GRANTED WITH RESPECT
           TO HENRY'S RETALIATION CLAIMS ........................................... 19

         A.    Manager Manufacturing Support Position ................................................ 19

         B.    The PIP and 2005 Mid-Year Performance Review .................................. 22

## TABLE OF CONTENTS
(continued)

**Page**

   III.    THE CLAIMS AGAINST WARDROP AND MCDERMOTT SHOULD
              BE DISMISSED ......................................................................................... 25

CONCLUSION ........................................................................................................ 25

# TABLE OF AUTHORITIES

## CASES

**Page**

*Almonte v. Coca Cola Bottling Co.*,
  959 F. Supp. 569 (S.D.N.Y. 1997) .................................................................................9

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986).................................................................................................2

*Burlington No. & Santa Fe R.R. Co. v. White*,
  126 S. Ct. 2405 (2006)...........................................................................................4, 24

*Carmellino v. District 20*,
  No. 05 Civ. 2882, 2006 WL 2583019 (S.D.N.Y. Sept. 6, 2006)......................................4, 5, 23

*Clark County Sch. Dist. v. Breeden*,
  532 U.S. 268 (2001)................................................................................................20

*Cruz v. Coach Stores, Inc.*,
  202 F.3d 560 (2d Cir. 2000)........................................................................................3

*Cunningham v. Consol. Edison, Inc.*,
  No. 04 Civ. 3522, 2006 WL 842914 (S.D.N.Y. Mar. 28, 2006) ....................................20

*Fairbrother v. Morrison*,
  412 F.3d 39 (2d Cir. 2005).....................................................................................5, 10

*Francis v. Chem. Banking Corp.*,
  62 F. Supp. 2d 948 (E.D.N.Y. 1999),
  *aff'd*, 213 F.3d 626 (2d Cir. 2000), *cert. denied*, 532 U.S. 949 (2001)..............................14, 18

*Galabya v. New York City Bd. of Educ.*,
  202 F.3d 636 (2d Cir. 2000)........................................................................................4

*Greene v. Trustees of Columbia*,
  234 F. Supp. 2d 368 (S.D.N.Y. 2002).........................................................................8, 12

*Gurry v. Merck & Co., Inc.*,
  No. 01 Civ. 5659, 2003 WL 1878414 (S.D.N.Y. Apr. 14, 2003)............................................23

*Harris George Strong v. Defense Logistics Agency*,
  No. 86 Civ. 2480, 1987 WL 13734 (S.D.N.Y. July 8, 1987) .................................................21

*Hills v. City of New York*, No. 03
    2006 WL 2524197 (S.D.N.Y. Aug. 30, 2006).................................................................9

*Hollander v. American Cyanamid Co.*,
    895 F.2d 80 (2d Cir. 1990).................................................................20

*Holt v. KMI-Continental, Inc.*,
    95 F.3d 123 (2d Cir. 1994).................................................................22

*Holtz v. Rockefeller & Co., Inc.*,
    258 F.3d 62 (2d Cir. 2001).................................................................19

*Jackson v. City Univ. of, N.Y.*,
    No. 05 Civ. 8712 (JSR), 2006 WL 1751247 (S.D.N.Y. June 23, 2006)..................................23

*Johnson v. Palma*,
    931 F.2d 203 (2d Cir. 1991).................................................................19

*Langer v. Secretary of Treasury*,
    No. 04-C-739, 2006 WL 2076577 (E.D.Wis. July 24, 2006).................................................23

*Leget v. Henderson*,
    No. 99 Civ. 3636, 2001 WL 43615 (S.D.N.Y. Jan. 18, 2001).................................................9

*Lumhoo v. Home Depot*,
    229 F. Supp. 2d 121 (E.D.N.Y. 2002) .................................................................9

*Malone v. City of New York*,
    03 Civ. 5942, 2006 WL 2524197 (S.D.N.Y. Aug. 30, 2006).................................................4

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986).................................................................2

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973).................................................................3, 4

*Norville v. Staten Island Univ. Hosp.*,
    196 F.3d 89 (2d Cir. 1999).................................................................2

*Oliphant v. Conn. Dep't of Transp.*,
    No. 02 Civ. 700, 2006 WL 3020890 (D. Conn. Oct. 23, 2006).................................................6, 23

*Pennington v. City of Huntsville*,
    261 F.3d 1262 (11th Cir. 2001) .................................................................9

*Petersen* v. *Utah Dep't of Correction,*
    301 F.3d 1182 (10th Cir. 2003) ...........................................................................22

*Phillips* v. *Chertoff,*
    No. 03 Civ. 4266, 2005 WL 3466033 (S.D.N.Y. Dec. 16, 2005)............................11

*Pronin* v. *Raffi Custom Photo Lab, Inc.,*
    383 F. Supp. 2d 628 (S.D.N.Y. 2005)........................................................................7

*Richardson* v. *N.Y. Dep't Correctional Srvs.,*
    180 F.3d 426 (2d Cir. 1999).......................................................................................5

*Shider* v. *Commc'n Workers of Am.,*
    No. 95 Civ. 4908, 2004 WL 613093 (S.D.N.Y. Mar. 29, 2004),
    *aff'd,* 2005 WL 2650007 (2d Cir. Oct. 18, 2005)......................................................2

*Smart* v. *Ball State Univ.,*
    89 F.3d 437 (7th Cir. 1996) .......................................................................................5

*St. Mary's Honor Center* v. *Hicks,*
    509 U.S. 502 (1993)...........................................................................................2, 3, 22

*Stockley* v. *AT&T Info. Sys., Inc.,*
    687 F. Supp. 764 (E.D.N.Y. 1988) ............................................................................2

*Texas Dep't of Cmty. Affairs* v. *Burdine,*
    450 U.S. 248 (1981)....................................................................................................3

*Vosatka* v. *Columbia Univ.,*
    No. 04 Civ. 2936, 2005 WL 2044857 (S.D.N.Y. Aug. 25, 2005) ............................23

*Warren* v. *North Shore Univ. Hosp.,*
    03 Civ. 0019, 2006 WL 2844259 (E.D.N.Y. Sept. 29, 2006)..................................22

*Wayne* v. *Principli,*
    No. 01 Civ. 941, 2004 WL 389009 (S.D.N.Y. Mar. 3, 2004) .............................7, 20

*Williams* v. *R.H. Donnelley, Corp.,*
    368 F.3d 123 (2d Cir. 2004)..........................................................................9, 10, 18

*Wolde-Meskel* v. *Argus Commc'n, Inc.,*
    No. 99 Civ. 10112, 2001 WL 883648 (S.D.N.Y. Aug. 7, 2001) ...............................7

# STATUTES

42 U.S.C.

    § 1981................................................................................................................1

    § 2000e *et seq.*,...........................................................................................1

New York State Human Rights Law, Exec. Law

    § 290 *et seq* ....................................................................................................1

## PRELIMINARY STATEMENT

Plaintiff Howard Henry ("Henry"), a former employee of Defendant Wyeth Pharmaceuticals, a Division of Wyeth ("Wyeth"), commenced this action against Wyeth, Walter Wardrop, one of his former supervisors at Wyeth, and Michael McDermott, the former Managing Director of Wyeth's Pearl River facility, asserting claims for discrimination based on his race and color under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981, and the New York State Human Rights Law, Exec. Law § 290 *et seq.* Henry bases his discrimination claim on: (1) his 2003 mid-year performance review and year-end performance review, in which Henry was rated a "solid performer"; (2) an assignment Henry received as part of a facility-wide corporate reorganization, which never was effectuated because Henry had refused to be reassigned; and (3) several promotions or transfers that Henry sought over the course of his career, but that he did not receive. Henry also asserts claims for retaliation based on: (1) one promotion he claims he sought and did not receive; (2) his mid-year 2005 performance review; and (3) a performance improvement plan (the "PIP") he received as a result of his performance problems.

As demonstrated below, none of Henry's claims can survive the instant motion for summary judgment. Henry cannot satisfy a number of elements of his *prima facie* case with respect to each of the alleged employment actions set forth in his Complaint. In addition, each of Henry's claims share the same fundamental flaw -- a complete lack of any admissible evidence suggesting in any way that any of the employment decisions at issue were made because of Henry's race or color or because he had engaged in any protected activity. Accordingly, Henry cannot satisfy his burden of proof with respect to any of these claims, and Defendants are entitled to summary judgment on all of Henry's claims.

## ARGUMENT

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when, after reviewing the allegations in the pleadings and other evidentiary sources, the court finds that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Thus, a party attempting to avoid summary judgment must do more than raise "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he evidence adduced must exceed the chimerical scintilla; it must be 'evidence on which the jury could reasonably find for the plaintiff,' taking into consideration the burden of proof and standard of persuasion to be applied at trial." *Stockley v. AT&T Info. Sys., Inc.*, 687 F. Supp. 764, 770 (E.D.N.Y. 1988) (quoting *Anderson*, 477 U.S. at 252).

## I.  SUMMARY JUDGMENT SHOULD BE GRANTED WITH RESPECT TO HENRY'S DISCRIMINATION CLAIMS

Discrimination claims brought under Section 1981, Title VII and the New York Human Rights Law are all analyzed under the same legal framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999); *Shider v. Commc'n Workers of Am.*, No. 95 Civ. 4908, 2004 WL 613093, at *4 (S.D.N.Y. Mar. 29, 2004), *aff'd*, 2005 WL 2650007 (2d Cir. Oct. 18, 2005). This framework provides for a three-part analysis with the burden of production shifting between the plaintiff and the defendant, but with the ultimate burden of proof always resting upon the plaintiff. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993).

First, the plaintiff has the burden of proving, by a preponderance of the evidence, a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. In cases involving claims of

2

discriminatory failure to promote, such as the instant case, the Plaintiff must prove the following in order to establish a *prima facie* case:  (1) that he is in a protected group; (2) that he satisfactorily performed the duties of his position; (3) that he applied for and was denied a promotion to a position for which he was qualified; and (4) the denial occurred under circumstances giving rise to an inference of discrimination based on plaintiff's membership in that class.  *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 (2d Cir. 2000).

Second, if the plaintiff succeeds in making a *prima facie* case, the burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for its actions. *McDonnell Douglas*, 411 U.S. at 802.  This burden is a relatively light one and is met when the defendant proffers a lawful reason for its actions.  *Texas Dep't of Cmty. Affairs v. Burdine* 450 U.S. 248, 256-58 (1981).

Once the defendant succeeds in establishing such a legitimate nondiscriminatory reason, the plaintiff must introduce evidence that the defendant's reason was a pretext for discrimination – a false reason or a cover-up for its intention to discriminate on the basis of race. *Hicks*, 509 U.S. at 507-08; *McDonnell Douglas*, 411 U.S. at 804.  The plaintiff's ultimate burden is to prove that defendant intentionally discriminated against him based on his race. *Hicks*, 509 U.S. at 507; *McDonnell Douglas*, 411 U.S. at 804-05.

### A.    Defendants Are Entitled To Summary Judgment With Respect To Henry's Claims Based On His 2003 Performance Reviews

Henry's claim that his supervisor, Walter Wardrop, gave him a negative mid-year performance review in September 2003 and a negative year-end performance review in December 2003 because of his race must fail.  Henry cannot establish as part of his *prima facie* case that these alleged negative performance reviews constituted a materially adverse change in the terms and conditions of his employment or that either of these actions occurred under

3

circumstances giving rise to an inference of discrimination. Even if Henry could establish a *prima facie* case, he could not meet his ultimate burden of proving intentional discrimination.

### 1. The Performance Reviews Did Not Create A Materially Adverse Change In The Terms And Conditions Of Henry's Employment

To satisfy his *prima facie* case, Henry must demonstrate that he has "endured a materially adverse change in the terms and conditions of employment." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000). "To be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alternation of job responsibilities [and it may] be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular position. *Id.*[1] Henry cannot meet this standard with his 2003 reviews.

Contrary to Henry's allegations, his 2003 mid-year review was not a negative review – the review concluded that "overall, Howard is a 'Solid Performer.'" (52)[2] Similarly, in his 2003 year-end performance review, Henry received an overall rating of "3," which means he was a "solid performer." (68) At the time of this evaluation, employees were rated between 1 and 5 as follows: 5=Outstanding, 4=Exceeds Expectations, 3=Solid Performer; 2=Needs Improvement; 1=Unsatisfactory. (68) According to the annual review form, a "3" rating indicates that the employee was "on target" with the results achieved for the year, meeting objectives, responsibilities, and expectations and that the employee was "skilled," frequently demonstrating most of Wyeth's values. (68) Henry himself had received overall ratings of "3" or the

---

[1] The Supreme Court's recent decision in *Burlington No. & Santa Fe R.R. Co. v. White*, 126 S. Ct. 2405, 2415 (2006) applies only in the context of Title VII retaliation claims, not discrimination claims. *See Carmellino v. District 20*, No. 05 Civ. 2882, 2006 WL 2583019, at *5 (S.D.N.Y. Sept. 6, 2006); *Malone v. City of New York*, 03 Civ. 5942, 2006 WL 2524197, at *7 (S.D.N.Y. Aug. 30, 2006).
[2] The numbered references are to the paragraphs of Defendants' Rule 56.1 Statement, where the substantiating citations for the facts here summarized can be found.

equivalent of a "3" on his annual performance review in six of the preceding eight years and was satisfied with those reviews.  (6, 8)  In fact, in his sworn statement to the EEOC, Henry described the "3" rating he received in 2000 as "extremely positive."  (8)  To the extent Henry's mid-year and annual reviews contained comments pointing out some of Henry's weaknesses and providing examples of the same, the reviews were designed to help Henry improve his performance.  *See Oliphant v. Conn. Dep't of Transp.*, No. 02 Civ. 700, 2006 WL 3020890, at *5 (D. Conn. Oct. 23, 2006) ("Counseling letters, like negative evaluation or other forms of workplace reprimands, are not disruptive enough to rise to the level of 'adverse employment actions'").  Given these undisputed facts, Henry's mid-year 2003 performance review and his 2003 annual review do not constitute materially adverse changes to the terms and conditions of his employment.  *See Carmellino*, 2006 WL 2583019, at *3; *Richardson v. N.Y. Dep't Correctional Srvs.*, 180 F.3d 426, 443-44 (2d Cir. 1999) (rejecting claim of adverse employment action based on two reviews that characterized plaintiff's performance as "average" rather than "excellent"); *see also Fairbrother v. Morrison*, 412 F.3d 39 (2d Cir. 2005) ("unsatisfactory" evaluation that did not negatively alter plaintiff's compensation, benefits or job title was not an adverse employment action in retaliation case); *Smart v. Ball State Univ.*, 89 F.3d 437, 442 (7th Cir. 1996) (finding that plaintiff's negative job evaluations alone did not constitute adverse employment action for purposes of *prima facie* case).

### 2.    There Is No Evidence That The Performance Reviews Were Issued Under Circumstances Giving Rise To An Inference Of Discrimination

Henry's claim also must fail because there is no evidence suggesting in any way that Wardrop provided Henry with an overall rating of "solid performer" in his 2003 mid-year and annual reviews because of his race or color.  The record is simply devoid of any such evidence, and therefore, Henry cannot even establish a *prima facie* case of discrimination.

5

3.    **Henry Cannot Establish That Wardrop Rated Him As A "Solid Performer" Because Of His Race**

The undisputed evidence shows that Wardrop had a legitimate basis for rating Henry as a "solid performer" in the 2003 reviews. Although both reviews identified a number of positives and strengths with Henry's performance, the reviews also identified several areas to focus on, including completing certain projects by year-end and improving attendance. (48, 68) The mid-year review also directed that, when Henry was preparing his Self Appraisal and Goals ("Self Appraisal") for 2003, which is a document used to track Henry's accomplishments for the year and used to prepare Henry's annual performance evaluation, he should quantify and be specific with his accomplishments, and he should provide a summary of work performed and value added to the business. (49) On September 8, 2003, Wardrop reminded Henry that his Self Appraisal must be turned in by October 1, 2003. (54) After Henry missed the deadline for submitting his Self Appraisal, on October 2, 2004, Wardrop reminded Henry that he still needed to receive his Self Appraisal. (55) Nevertheless, Henry failed to submit his Self Appraisal before Wardrop's October 10, 2003 deadline for submitting performance ratings as part of the Rating Review Meeting. (56-57) Thus, despite Wardrop's repeated requests for the Self Appraisal, which would have helped Wardrop prepare Henry's review, Wardrop had to complete Henry's review without the benefit of this document. (57)

In addition, Wardrop had received a number of complaints from Henry's co-workers and other managers about his inability to complete tasks in a timely fashion and the follow-up that was required to get information from Henry or tasks completed by Henry. (68) In addition, due to ongoing delays, unresolved problems, and a lack of confidence from upper management that Henry could successfully complete projects on time, Wardrop's supervisor, Andrew Schaschl, had to instruct Wardrop on at least two occasions in 2003 to complete projects that Henry was

6

responsible for completing. (68) Given these deficiencies in Henry's performance, the overall rating of "3" or "solid performer" was not only fair, but extremely generous.

Not only is there no evidence that Wardrop gave Henry a "3" rating in 2003 because of his race or color, but the undisputed evidence actually negates any possible inference of discrimination. For example, the fact that Wardrop had hired Henry to the Production Coordinator position in 2000 and had given him an overall rating of "4" on his performance evaluation in each of the preceding two years creates a strong inference that discrimination was *not* a motivating factor when Wardrop gave Henry an overall rating of "3" on his performance evaluation in 2003. *See, e.g., Pronin v. Raffi Custom Photo Lab, Inc.*, 383 F. Supp. 2d 628, 639 (S.D.N.Y. 2005) ("same actor" inference undermines plaintiff's claim of discrimination, especially when hiring and firing decisions were made within two years of each other); *Wayne v. Principli*, No. 01 Civ. 941, 2004 WL 389009, at *12 (S.D.N.Y. Mar. 3, 2004) (finding that fact that employer fired plaintiff less than two years after he hired her "strongly suggests that discrimination was not a motivating factor in his decision"); *Wolde-Meskel v. Argus Commc'n, Inc.*, No. 99 Civ. 10112, 2001 WL 883648, at *6 (S.D.N.Y. Aug. 7, 2001) (involvement of alleged wrongdoer in positive action on behalf of plaintiff "not only fails to give rise to but in fact detracts from an otherwise supportable inference of discrimination").

In addition, Henry's claim that he was entitled to a "5" rating for 2003 is belied by the fact that he was consistently rated as an average employee throughout his tenure with Wyeth, having received ratings exactly in the middle of the rating scale in 10 of 12 years, and having never been rated a "5" or the highest rating on the rating scale.[3]

---

[3] Henry's Title VII claim based on his mid-year 2003 performance review is barred by the statute of limitations because Henry failed to file a Charge of Discrimination with the EEOC within 300 days of this event. *Greene v. Trs. of Columbia*, 234 F. Supp. 2d 368, 376-77 (S.D.N.Y. 2002). Because Henry filed his charge on September 24, 2004, he can only assert Title VII claims based on claims that arose after November 24, 2003.

**B.    Defendants Are Entitled To Summary Judgment With Respect To Henry's Alleged "Demotion" Claim**

In 2003, Wyeth's Pearl River facility initiated a massive corporate restructuring referred to as the Organizational Cascade. (58)  As part of this process, a new organizational chart at the Pearl River facility was prepared, every employee essentially was removed from their current position and placed in a pool of people available for hire for a position in the new organizational structure, and then the positions in the new organizational structure were filled in from the top down, in a cascading manner. (58)  One of the purposes of the Organizational Cascade, and the job rotation that it produced, was to ensure that employees develop a well-rounded and diverse background in the manufacturing process. (60)  As part of the Organizational Cascade, Henry was selected to fill a position as Packaging Supervisor in the Packaging Department. (64)  As demonstrated below, Henry's claim that he was "demoted" to the Packaging Supervisor position because of his race should be dismissed.

**1.    Henry's Alleged Demotion Did Not Cause A Material Adverse Change In The Terms and Conditions Of Henry's Employment**

Henry's claim must fail as a matter of law because he cannot demonstrate, as he must, that he suffered any material adverse change in the terms or conditions of his employment.  It is undisputed that Henry never actually was transferred into the Packaging Supervisor position. (82, 91)  After he objected to the assignment, he was permitted to stay in his position as Production Engineer. (82-91)  Courts have routinely held that, when an initial employment decision is rescinded before it becomes effective, as here, the plaintiff cannot satisfy his *prima facie* case. *See, e.g., Pennington v. City of Huntsville*, 261 F.3d 1262, 1267-68 (11th Cir. 2001) ("The case law in this area indicates that the decision to reprimand or transfer an employee, if rescinded before the employee suffers a tangible harm, is not an adverse employment action"); *Leget v. Henderson*, No. 99 Civ. 3636, 2001 WL 43615, at *6 (S.D.N.Y. Jan. 18, 2001) (stating

8

that temporary adverse transfer followed by complete restoration of employment status not actionable). For example, in *Lumhoo v. Home Depot,* the court found that an employee who was wrongfully terminated (and who remained unemployed for three weeks) but was subsequently reinstated to his former job with full back pay, benefits, seniority status, and all references to the discharge removed from his file, did not experience an adverse employment action. 229 F. Supp. 2d 121 (E.D.N.Y. 2002); *see also Almonte v. Coca Cola Bottling Co.,* 959 F. Supp. 569, 572 (S.D.N.Y. 1997) (no adverse employment action where termination decision rescinded) (citing cases); *Hills v. City of New York,* No. 03 CV 4265, 2006 WL 2524197 (S.D.N.Y. Aug. 30, 2006) (holding that filing of disciplinary charges that were later dismissed did not constitute adverse employment action in race discrimination claims).

In any event, even if Henry's assignment to the Packaging Supervisor position actually had been effectuated, it still would not have constituted a materially adverse change in the terms or conditions of his employment because it was a lateral move, not a demotion. "If a transfer is truly lateral and involves no significant changes in an employee's conditions of employment, the fact that the employee views the transfer either positively or negatively does not of itself render the denial or receipt of the transfer [an] adverse employment action." *Williams v. R.H. Donnelley, Corp.,* 368 F.3d 123, 128 (2d Cir. 2004) (denial of employee's transfer request to a position that would have paid less and was rated lower in the organization was not an adverse action); *see also Fairbrother v. Morrison,* 412 F.3d 39 (2d Cir. 2005) (transfer that did not involve lost wages, retirement credits, benefits, overtime opportunities or other real changes in the conditions was not a materially adverse change in employment, regardless of plaintiff's alleged emotional loss due to the transfer).

9

Henry's proposed assignment to the Packaging Supervisor did not constitute any material adverse change to the terms and conditions of his employment, as it was purely a lateral transfer with no change in salary or benefits. (65). Moreover, Wyeth's managers uniformly felt the Packaging Supervisor position would be an excellent opportunity for Henry because he would be a team leader; he would have direct supervisory responsibilities for a number of employees, which could lead to future management opportunities; he would get exposure to the packaging operations, which could help him obtain other positions in the future; he could learn new skills; and he could use his engineering background to make improvements in the packaging department. (66) The mere fact that Henry viewed this position as inferior "does not of itself render . . . the transfer [an] adverse employment action." *Williams*, 368 F.3d at 128.

### 2. Henry Can Point To No Evidence Giving Rise To An Inference Of Discrimination

Henry cannot point to any evidence indicating that his assignment to the Packaging Supervisor position occurred under circumstances giving rise to an inference of discrimination, and therefore, he cannot satisfy the fourth element of his *prima facie* case of discrimination.

### 3. Henry Cannot Meet His Ultimate Burden Of Proof

Even if Henry could somehow establish a *prima facie* case, his claim still would fail because Wyeth had a legitimate non-discriminatory reason for the assignment and because Henry cannot show that this reason was false and that the real reason was intentional racial discrimination. As demonstrated in Defendants' Rule 56.1 Statement, Henry's assignment to the Packaging Supervisor position occurred due to a massive corporate reorganization that affected all employees at the Pearl River facility. (64) The Organizational Cascade was designed to ensure employees were in positions that best matched their skill set and to ensure employees developed a diverse background in the manufacturing process. (59, 60) The primary

10

considerations in placing individuals like Henry were matching an individual's skills to the skills required by the position, potential for a development opportunity of the individual, and an individual's performance. (59) Henry cannot present a shred of evidence suggesting in any way that this legitimate, non-discriminatory reason was not the real reason for the assignment to the Packaging Supervisor position. Nor can Henry present any evidence indicating that the real reason for this assignment was intentional racial discrimination.

Moreover, the undisputed facts refute any claim of discrimination. Henry's former supervisor, Wardrop, who also was reassigned as part of the Organizational Cascade, had an opportunity to select Henry for a position as an Engineer. (62) However, rather than selecting Henry for the position, Wardrop selected another individual, Jean Colas, because Wardrop believed he was a highly qualified engineer and a high performer. (62) Significantly, Jean Colas is an African-American. *See Phillips v. Chertoff*, No. 03 Civ. 4266, 2005 WL 3466033 (S.D.N.Y. Dec. 16, 2005) (finding no inference of discrimination when plaintiff is replaced with someone in same protected class). In sum, nothing in the record in this case, even viewed in the light most favorable to Henry, provides any indication that he was the victim of discrimination.

## C.    Defendants Are Entitled To Summary Judgment With Respect To Each Of Henry's Alleged Promotion Claims

### 1.    The Project Engineer Position

Defendants are entitled to summary judgment on Henry's Project Engineer promotion claim because Henry cannot establish the fourth element of his *prima facie* case – that he was not selected for this position under circumstances giving rise to an inference of discrimination. Indeed, the record is devoid of any facts indicating that Henry was not selected for this particular position because of his race or color. Henry himself testified that he has no basis for believing that he was not selected for this particular position because of his race or color. (16)

11

Even assuming *arguendo* that Henry could establish a *prima facie* case, his claim still would fail because he cannot establish his ultimate burden of proof. The undisputed facts establish that Kevin Costello hired Cara Muscolo for the position in December 2001 because he felt she was the best candidate. (13) Muscolo had done her job very well for Costello in the past in a different position, and they had worked well together. (14) Muscolo had significant experience in the packaging area, which was something Costello was seeking for the position. (14) Henry himself admits that Muscolo was qualified for this position. (14) In contrast, Henry had no packaging experience and had not gained Costello's confidence as Muscolo had. (15) In fact, Costello believed that Henry had difficulties multi-tasking, and Costello was not impressed with his overall job performance. (15) Based on these undisputed facts demonstrating that Costello legitimately believed that Muscolo was the best qualified for the position and based on Henry's own testimony that he has no basis for believing that he was not selected for this position because of his race or color, Henry's claims must be dismissed as a matter of law.[4]

## 2.    Production Coordinator Position

Henry's claim based on the Production Coordinator position similarly must fail. Henry cannot show that he was not selected for this position under circumstances giving rise to an inference of discrimination, and therefore, he cannot establish a *prima facie* case. Moreover, even if he could establish a *prima facie* case, his claim still would fail because he cannot establish his ultimate burden of proof, as Wyeth had a legitimate non-discriminatory reason for making this decision, and there is no evidence of discrimination.

---

[4] Henry's Title VII claim based on this employment decision is barred by the statute of limitations. *See supra,* fn. 3. Similarly, Henry's New York State Human Rights claim is barred by the three year statute of limitations. *See Greene,* 234 F. Supp. 2d at 376-77. Because Henry filed his federal court action on September 20, 2005, Henry can only assert New York State Human Rights Law claims based on events that arose after September 20, 2002. *See id.*

In July 2002, Andrew Schaschl hired Chris DeFeciani for this position because he believed that DeFeciani was the most qualified for the position. (19) Schaschl selected DeFeciani for a number of reasons. First, he felt that DeFeciani had excellent multi-tasking skills, which Schaschl felt was a critical job requirement. (18, 20) Schaschl felt that DeFeciani had a very good cross-functional background and excellent knowledge of manufacturing operations, which he believed were important for this position. (20) In addition, DeFeciani had proven himself to Schaschl as an excellent performer and a very capable employee. (20) In fact DeFeciani had received the highest overall rating of 5 in each his performance reviews for 2000 through 2002. (20) Finally, DeFeciani had filled in as the Production Coordinator at times in the past when his predecessor was absent from the job and had performed the job very well on those occasions. (20) Henry himself admits that he has no reason to believe that DeFeciani was unqualified for the Production Coordinator position. (22)

Schaschl, who was familiar with Henry's work, did not believe that Henry had a full breadth of knowledge and experience in the manufacturing operations, as DeFeciani had. (21) In addition, Schaschl believed that Henry had problems multi-tasking, which would have made it difficult for him to succeed in the Production Coordinator position. (21) Thus, Schaschl had a legitimate basis for selecting DeFeciani for this position, and there is no evidence indicating in any way that Henry's race played any role in this decision. Henry admits that he has no basis for believing that he was not selected for this position because of his race or color. (23) Given these undisputed facts, Henry's promotion claim based on the Production Coordinator position should be dismissed as a matter of law.[5]

---

[5] Henry's Title VII and New York State Human Rights Law claims based on this incident are time barred. *See supra*, fn. 3-4.

### 3.    "Filling In" As Production Coordinator

Henry claims that he was denied a promotion when he was not given the opportunity to fill in for DeFeciani on a temporary basis when DeFeciani went out on a medical leave on one occasion in April 2003. This claim must fail for several reasons.

First, Henry cannot establish the third element of his *prima facie* case – that he applied for and was denied a promotion to an open position. It is undisputed that there was no open position here, but instead Schaschl merely asked another employee to fill in for DeFeciani during a medical leave on one occasion. (24, 26) Moreover, it is undisputed that Henry never asked Schaschl if he could fill in for DeFeciani while he was out on medical leave. (27) Thus, Henry cannot establish a *prima facie* case with respect to this position. *See, e.g., Francis v. Chem. Banking Corp.*, 62 F. Supp. 2d 948, 960 (E.D.N.Y. 1999) ("a plaintiff must 'allege that she or he applied for a specific position or positions and was rejected therefrom . . .'"), *aff'd*, 213 F.3d 626 (2d Cir. 2000), *cert. denied*, 532 U.S. 949 (2001).

Second, Henry cannot establish that Schaschl's decision to have Richard Morgan fill in for DeFeciani occurred under circumstances giving rise to an inference of discrimination. It is undisputed that Schaschl selected Richard Morgan because Morgan already had been filling for DeFeciani and had been performing the Production Coordinator job responsibilities in DeFeciani's routine absences from work. (25) It also is undisputed that Morgan was an excellent performer, receiving the highest overall rating of 5 in each of his performance reviews for 2002 through 2004. (25) Because Schaschl had a legitimate basis for selecting Morgan to fill in for DeFeciani and because the record is devoid of any evidence of discrimination, Henry

14

cannot establish either his *prima facie* burden of proof or his ultimate burden of proof on this claim. Accordingly, this claim should be dismissed.[6]

### 4.    Process Engineer Position

Henry's claim that he was denied a promotion to a Process Engineer position should be denied because there is absolutely no evidence suggesting in any way that Henry was denied this position because of his race or color. Indeed, Henry frankly admitted during his deposition that even he does not believe that he was denied this position because of his race:

> Q:    And what is your basis for believing that you were denied for believing that you were denied this position because of your race?
>
> A:    Well, I didn't – I didn't express that I was denied this particular position because of my race.
>
> Q:    Do you believe that as you sit here today?
>
> A:    No.

(37)  Accordingly, Henry cannot meet either his *prima facie* burden or his ultimate burden with respect to this claim.

In any event, the undisputed evidence demonstrates that Wyeth's basis for this employment decision was legitimate and non-discriminatory. Kirit Rokad, the hiring manager for this position, ultimately selected Angel Montanez for the position because he believed that he was the most qualified for a number of reasons. (34) First, Montanez had worked for Wyeth's Vaccine Division in the past, and Rokad felt that there was a benefit to selecting someone who had worked in the Vaccine Division because that person would be familiar with manufacturing processes employed by that Division. (35) Henry had never worked in the Vaccine Division and he admits that it would be an advantage to hire someone who had experience in that Division. (35) Second, Montanez, unlike Henry, had significant experience with aseptic processing which

---

[6] Henry's Title VII claim based on this employment decision is barred by the statute of limitations. *See supra*, fn. 3.

was a critical requirement for the job. (35, 36) Finally, Montanez, unlike Henry, was working towards his Masters of Sciences degree in chemical engineering. (35, 36) Accordingly, Henry cannot meet his burden of proof with respect to this claim.

### 5. Staff Engineer I Position

Henry's claim that he was denied a promotion to a Staff Engineer I position should be denied because there is no evidence indicating that Henry was denied this position because of his race or color. Once again, Henry has candidly admitted that even he does not believe that he was denied this position because of his race:

> Q:    Now, do you believe that you were denied this position because of your race?
>
> A:    I can't say a hundred percent. There's a small – there's a small there's a probability, because I wasn't given an interview. But I mean I have to say no.

(43) Given this testimony, given the non-existence of any evidence of discrimination with respect to this claim, and given the undisputed fact that Wyeth had a legitimate non-discriminatory reason for hiring another individual for this position, Henry cannot make out a *prima facie* and cannot satisfy his ultimate burden with respect to this claim.

The undisputed evidence demonstrates that Wyeth had a legitimate and non-discriminatory basis for making this hiring decision. John Simpson, the hiring manager for this position, was seeking to hire an individual who had a Ph.D. in chemical engineering or an individual with a B.S. or M.S. in chemical engineering with substantial experience in bioprocess downstream operations. (39) John Simpson in fact selected a candidate with a Ph.D. in chemical engineering. (41) Henry did not have a Ph.D. or any substantial experience in bioprocess downstream operations. (40) Accordingly, Henry did not meet the qualifications for

16

this position, and Simpson selected the individual whom he felt was most qualified for the position. (39-43) Accordingly, Henry's claim based on this position should be dismissed.

### 6. Project Engineer Position

Henry's claim that he was denied a transfer to a position as a Project Engineer because of his race must fail because he cannot establish, as he must as part of his *prima facie* case, that he applied for and was denied a transfer to the Project Engineer position and that such a denial created a materially significant disadvantage in his working conditions. Even assuming *arguendo*, Henry could satisfy his *prima facie* case, his claim still would fail because he cannot show that Wyeth's reason for not transferring him was a pretext for intentional discrimination.

After Henry was advised that he would be assigned to the Packaging Supervisor Position as part of the Organization Cascade, he complained about this assignment to a number of upper-level managers and insisted on remaining in his current position. (70-86) After much discussion, Peter Bigelow presented Henry him with two options for different positions within the company: (1) the Packaging Supervisor position that he had been assigned to as part of the Organizational Cascade; or (2) a Senior Validation Specialist position within the Vaccines Division. (85) Henry rejected both of these options and suggested that, rather than moving to the Packaging Supervisor position or moving to a position in the Vaccines Division, he would be willing to assume the role of Consumer Health Project Engineer, which Henry admits would have been a lateral move, not a promotion. (85) Ultimately, Bigelow granted Henry's wish and permitted him to remain in his position as a Production Engineer. (86) Thus, Bigelow gave Henry the position he sought, rather than Henry's second choice (Project Engineer).

Henry's claim fails because he never actually applied for or was denied the Project Engineer position. Indeed, it is undisputed that Henry never bid on this position, never applied

for this position, and never spoke to the relevant hiring manager about this position.  (85) Accordingly, he cannot establish his *prima facie* case based on this event.  *See Francis*, 62 F. Supp. 2d at 960 ("a plaintiff must 'allege that she or he applied for a specific position or positions and was rejected therefrom . . . .'").

Moreover, it is well settled that when an employee asserts a claim based on the denial of a requested transfer (as opposed to receiving an involuntary transfer), the plaintiff "must establish that [the employer's] *denial* of her request for a transfer created a materially significant disadvantage in her working conditions."  *Williams*, 368 F.3d at 128 (holding that denial of requested transfer to new geographical location was not materially adverse change in plaintiff's employment status, explaining that plaintiff's desire to relocate to area where she maintained home was type of "subjective, personal disappointments [that] do not meet the objective indicia of an adverse employment action").   Henry cannot possibly meet his burden given the circumstances of his request for a transfer:  a mere "suggested" transfer as a second option to his first choice of remaining in his current position as a Production Coordinator in one email to Peter Bigelow relating to his assignment as part of the Organization Cascade.  Given the fact that Henry was given precisely what he was seeking – to remain in the Production Engineer position – he cannot demonstrate that he suffered a "materially significant disadvantage to his working conditions."  Accordingly, Henry cannot establish a *prima facie* case.

Even if Henry could establish a *prima facie* case, his claims still would fail because Wyeth had a legitimate non-discriminatory reason for this alleged denial of a transfer:  it granted Henry his wish and gave him precisely what he was seeking – to remain in the Production Engineer position.  Moreover, Henry can present no evidence indicating that this decision was a pretext and that intentional discrimination was the real reason for this decision.

18

## II.    SUMMARY JUDGMENT SHOULD BE GRANTED WITH RESPECT TO HENRY'S RETALIATION CLAIMS

The same three-step burden-shifting analysis that applies to discrimination claims applies to retaliation claims. *See Johnson v. Palma*, 931 F.2d 203, 207 (2d Cir. 1991). To establish a *prima facie* case of retaliation, a plaintiff must show: (1) that he was engaged in a protected activity by opposing conduct barred by Title VII; (2) that the employer was aware of the Plaintiff's protected activity; (3) that he suffered an adverse employment action; and (4) that there was a causal connection between Plaintiff's protected activity and the adverse employment action. *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 79 (2d Cir. 2001). If the plaintiff succeeds in making a *prima facie* case, the burden then shifts to the defendant to articulate some legitimate, non-retaliatory reason for its actions. *Johnson*, 931 F.2d at 207. If the defendant succeeds in proffering such a legitimate non-retaliatory reason, the plaintiff, who continues to retain the ultimate burden of persuasion and proof, must introduce evidence that the defendant's reason was a pretext for retaliation. *Id.*

In the present case, Henry alleges that Wyeth retaliated against him for complaining of discrimination by: (1) denying him the position as Manager Manufacturing Support in December 2004; (2) placing him on the Performance Improvement Plan in June 2005; and (3) giving him a negative mid-year review in 2005. As demonstrated below, Henry cannot meet his burden of proof with respect to any of these employment actions, and therefore, Defendants are entitled to summary judgment with respect to Henry's retaliation claim.

### A.    Manager Manufacturing Support Position

Henry's claim that he was not selected for the Manager Manufacturing Support position because of his alleged protected activity must fail because he cannot establish the fourth element of his *prima facie* case: that there was a causal connection between Henry's protected activity

19

and this employment decision. Moreover, even if Henry somehow could establish a *prima facie* case of retaliation, his claim still would fail because he cannot meet his ultimate burden of proving that Wyeth's legitimate non-retaliatory reasons for selecting another individual for this position were a pretext for retaliation.

First, Henry's claim must fail because there is no evidence suggesting any causal connection between Henry's complaint of discrimination in February 2004 and this employment decision which became effective January 2005. The approximate nine-month time gap between Henry's protected activity (his complaint to Peter Bigelow in February 16, 2004) and this employment decision, which occurred in November 2004, is far too long to establish any causal connection between the protected activity and the challenged employment decision. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268 (2001) (citing case where three-month period between protected activity and adverse action was too long to establish temporal proximity); *Hollander v. American Cyanamid Co.*, 895 F.2d 80, 84-85 (2d Cir. 1990) (no causation where three and a half months passed between protected activity and adverse action); *Cunningham v. Consol. Edison, Inc.*, No. 04 Civ. 3522, 2006 WL 842914, at *19 (S.D.N.Y. Mar. 28, 2006) (concluding that "a passage of two months between the protected activity and the adverse employment action seems to be the dividing line"); *Wayne v. Principli*, No. 01 Civ. 941, 2004 WL 389009, at *13 (S.D.N.Y. Mar. 3, 2004) (holding that mere fact that adverse employment action occurred three months after protected activity is insufficient to meet plaintiff's burden.). Thus, Henry cannot establish even a *prima facie* case of retaliation.

Even if Henry could establish a *prima facie* case of retaliation based on this employment decision, his claims still would fail because Wyeth had a legitimate, non-retaliatory reason for its decision, and Henry cannot show that this reason was false or a pretext for retaliation. It is

undisputed that Andrew Espejo selected Max Katz for the Manager Manufacturing Support position because he legitimately believed that Katz was the most qualified for the position based in large part upon on a panel interviewing process which applied equally to each candidate. (97-103) Henry, Katz, and the eight other individuals who were selected by Espejo to interview for this position were interviewed by a panel of five managers, who asked each of the candidates the exact same pre-determined questions and gave them a numerical score in eight categories based upon their responses. (97) Katz received the highest score in the interview process, and the panel unanimously selected Katz for this position. (98) In addition, Katz also stood out to Espejo because of his significant project management experience, his Masters of Engineering Degree, and his diverse background, including a number of different positions within Wyeth, all of which were important for this job. (99-102) In contrast, Henry did not distinguish himself in any way and had received one of the lower scores from the panel. (103) In addition, Espejo had some concerns with Henry's job performance as he felt that Henry missed deadlines and needed to improve his ability to manage tasks to meet due dates. (92) Ultimately, Espejo selected Katz because he felt he was the best candidate for the position, a view which was shared by the five managers who interviewed all of the candidates. (98-102) *See Harris George Strong v. Defense Logistics Agency*, No. 86 Civ. 2480, 1987 WL 13734, at *5 (S.D.N.Y. July 8, 1987) ("[i]n a promotion case, the employer need not prove that the person selected was the most qualified candidate; an employer has discretion to choose among equally qualified candidates provided the decision is not based upon unlawful criteria").

Henry's own belief that he was the most qualified for the position is insufficient to create an issue of fact as to who was most qualified. *See Petersen v. Utah Dep't of Correction*, 301 F.3d 1182, 1191 (10th Cir. 2003) (plaintiff's belief that he had "more relevant experience than

other applicants is no more than [his] own subjective judgment" and cannot support finding of discrimination); *Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 129 (2d Cir. 1994) (plaintiff cannot create an inference of discrimination based on her "personal belief that she was most qualified"); *Warren v. North Shore Univ. Hosp.*, 03 Civ. 0019, 2006 WL 2844259, at *8 (E.D.N.Y. Sept. 29, 2006) ("Determining how to evaluate a candidate's . . . record and how to weigh various factors in making a promotion decision is precisely the sort of decision in which courts do not intervene without evidence that the employer's claimed reason was so lacking in merit as to call into question its genuineness.")

Further, the fact that Espejo had selected Henry as one of the ten individuals to interview out of the more than thirty individuals who applied for the position suggests that Espejo had no retaliatory intent. *See* 509 U.S. at 513-14 (recognizing that in evaluating whether discrimination was motivating factor, evidence of non-discrimination should be considered as well).

Moreover, even if the temporal proximity between Henry's protected activity and this employment decision had been closer, "the timing of events alone, even if sufficient to meet the plaintiff's *prima facie* burden, cannot defeat summary judgment in the face of defendant's proffered legitimate reason." *Vosatka v. Columbia Univ.*, No. 04 Civ. 2936, 2005 WL 2044857, at *10 (S.D.N.Y. Aug. 25, 2005) (citing cases).

## B.    The PIP and 2005 Mid-Year Performance Review

Henry's retaliation claim based on the PIP and mid-year performance evaluation he received in June 2005 must fail because Henry cannot establish either his *prima facie* burden or his ultimate burden of proof.

First, Henry cannot establish the third element of his *prima facie* case: that either the PIP or his 2005 mid-year performance evaluation constitute a materially adverse change in the terms

22

and conditions of his employment.  The Supreme Court recently announced that, in the context of retaliation claims (as opposed to discrimination claims), to constitute a "materially adverse" change in the terms of employment, "the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 126 S. Ct. at 2409.  Following the Supreme Court's decision in *Burlington*, courts have held that a negative performance review or written counseling letters, such as Henry's mid-year performance evaluation and the PIP, by themselves, do not constitute materially adverse employment actions and have granted summary judgment on this basis. *See Oliphant*, 2006 WL 3020890, at *6-7 (holding that "[c]ounseling letters, like negative evaluations or other forms of workplace reprimands, are not disruptive enough to rise to the level of adverse employment actions."); *Carmellino*, 2006 WL 2583019, at *32 (holding that negative performance evaluations do not constitute materially adverse change in terms of employment absent evidence that any negative consequence resulted from those evaluations); *Jackson v. City Univ. of N.Y.*, No. 05 Civ. 8712 (JSR), 2006 WL 1751247, at *4 (S.D.N.Y. June 23, 2006) (same); *Langer v. Sec'y of Treasury*, No. 04-C-739, 2006 WL 2076577 (E.D. Wis. July 24, 2006) (holding that "absent some "tangible job consequences . . . negative performance evaluations generally do not constitute adverse employment action"); *see also Gurry v. Merck & Co., Inc.*, No. 01 Civ. 5659, 2003 WL 1878414, at *5,  (S.D.N.Y. Apr. 14, 2003) (holding (in pre-*Burlington* decision) that performance evaluation and "Performance Improvement Plan" do not constitute adverse employment action).  Given the fact that Henry successfully completed the PIP and suffered no tangible job consequences as a result of either the PIP or mid-year evaluation, Henry cannot satisfy the third element of his *prima facie* case.

Second, Henry cannot demonstrate the fourth element of his *prima facie* case: any causal connection between his alleged protected activity and the PIP or the 2005 mid-year performance review. The timing of the PIP and the performance review, coming more than 16 months after Henry's first complaint of discrimination to Bigelow, cannot support an inference of retaliation. Moreover, there is no evidence suggesting that the PIP or the performance review was connected to Henry's complaints of discrimination.

Third, even if Henry could somehow establish a *prima facie* case, his claims still would fail because Katz had legitimate non-retaliatory reasons for issuing the PIP and the mid-year performance review. Indeed, both the PIP and the mid-year performance review were justified by Henry's deteriorating job performance. On a number of occasions, Katz received complaints from others that Henry failed to meet important deadlines and failed to complete tasks in a timely manner. (108-118) In addition, Katz felt that Henry frequently failed to communicate with him, failed to return his phone calls or his emails on a timely basis, was insubordinate to him, and was frequently absent from work or failed to provide adequate notice. (108-118) On one occasion in 2005, Henry's failure to complete an assignment resulted in a violation of Wyeth's standard operating procedures and FDA regulations, and a formal compliance investigation was initiated and a formal Event Report Form had to be prepared and made available for the FDA . (117).

Finally, Henry's claims must fail because there is no evidence suggesting that Wyeth's reasons for issuing in the PIP or the 2005 mid-year review was pretextual or that Henry's protected activity had any role in the issuance of the PIP or the mid-year performance review.[7]

---

[7] To the extent Henry also attempts to premise his discrimination claims on any of these events in this Section II that have been pleaded as retaliation claims both in his EEOC Charge and in his Complaint in this action, Henry's claims still would fail for the same reasons set forth above and because Henry cannot present any evidence that any of these actions were taken because of Henry's race or color.

**III.    THE CLAIMS AGAINST WARDROP AND MCDERMOTT SHOULD BE DISMISSED**

The claims against McDermott and Wardrop should be dismissed for all of the reasons cited above and because Henry cannot show that either of these individuals engaged in any retaliatory or discriminatory act in connection with any of the claims asserted in the Complaint.

### **CONCLUSION**

Based on the foregoing, Wyeth's motion for summary judgment should be granted in its entirety and the Complaint dismissed with prejudice.

Dated: New York, New York
       October 30, 2006

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _____
       Michael Delikat (MD-1165)
       James H. McQuade (JM-0788)
       666 Fifth Avenue
       New York, New York 10103
       (212) 506-5000

Attorneys for Wyeth Pharmaceuticals, a Division
of Wyeth, Walter Wardrop, and Michael McDermott

25