UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
HOWARD HENRY,                                        :

                              Plaintiff,             :          05-CV-8106 (RCC)(DFE)

                                                     :
        -against-
                                                     :

WYETH PHARMACEUTICALS, INC., WALTER :
WARDROP, ANDREW SCHASCHL, and                        :
MICHAEL McDERMOTT,                                   :

                                                     :
                              Defendants.            :
------------------------------------------------------------x


---

## MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---


Respectfully submitted,

LEEDS MORELLI & BROWN, P.C.
Attorneys for Plaintiff
By: Steven A. Morelli (SM 4721)
One Old County Road, Suite 347
Carle Place, New York 11514
(516) 873-9550

# TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    I.    PLAINTIFF'S CLAIMS ARE TIMELY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

           A.    Plaintiff's Title VII Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

           B.    Plaintiff's § 1981 and § 296 Claims . . . . . . . . . . . . . . . . . . . . . . . . . . 5

           C.    Plaintiff's Retaliation Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    II.    THERE ARE TRIABLE ISSUE OF FACT AS TO WHETHER
           PLAINTIFF WAS DENIED ADVANCEMENT OPPORTUNITIES
           BECAUSE OF HIS RACE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

           A.    The *Prima Facie* Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

                1.    The Second Prong - Qualified For Employment . . . . . . . . . . . . . . . 8

                2.    The Third Prong - "Adverse Employment Action" . . . . . . . . . . . . 9

                3.    The Fourth Prong - An Inference of Discrimination . . . . . . . . . . . . 15

           B.    Plaintiff Will Be Able To Meet His Ultimate Burden At Trial . . . . . . . . 17

    III.    THERE ARE TRIABLE ISSUES OF FACT AS TO WHETHER
           PLAINTIFF WAS RETALIATED AGAINST FOR MAKING A
           CHARGE OF DISCRIMINATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

## TABLE OF AUTHORITIES

### Cases

*Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456 (2d. Cir. 2001) . . . . . . . . . . . . . . . .7

*Anderson v. Coors Brewing Co.*, 181 F.3d 1171 (10th Cir. 1999) . . . . . . . . . . . . . . . . . .17

*Bombero v. Warner-Lambert Co.*, 142 F.Supp.2d 196 (D.Conn. 2000),
    *aff'd* 9 Fed. Appx. 38 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17, 19, 24

*Burger v. New York Inst. of Tech.*, 94 F.3d 830 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . .10, 15

*Burlington Indus. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257,
    141 L.Ed.2d 633 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Burlington No. & Santa Fe. RR., Co. v. White*, 126 S.Ct. 2405,
    165 L.Ed.2d 345 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20, 21, 22, 23

*Chertkova v. Connecticut Gen. Life Ins. , Co.*, 92 F.3d 81 (2d Cir. 1996)    15, 16, 17, 23

*Cifra v. Gen. Elec. Co.*, 252 F.3d 205 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

*Collins v. Illinois*, 830 F.2d 692 (7th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

*Cornwell v. Robinson*, 23 F.3d 694 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

*Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . .17, 24

*Dawson v. Bumble & Bumble*, 398 F.3d 211 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . .7

*de la Cruz v. New York City of Human Resources Admin*,
    82 F.3d 16 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

*Eastway Constr. Corp. v. City of N.Y.*, 762 F.2d 243 (2d Cir.1985),
    *cert. denied*, 484 U.S. 918 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

*Egelston v. State Univ. Coll.*, 535 F.2d 752 (2d Cir.1976) . . . . . . . . . . . . . . . . . . . . . . . .1, 2

*Everson v. New York City Transit Authority*, 216 F.Supp.2d 71 (E.D.N.Y. 2002) . . . . . . .6

*Forsyth v. Fed'n Employment & Guidance Serv.*, 409 F.3d 565 (2d Cir. 2005) . . . . . . . . .6

*Galabya v. New York City Bd. of Educ.*, 202 F.3d 636 (2d Cir. 2000) . . . . . . . . . 10, 13, 14, 21

*Gallo v. Prudential Residential Serv.*, 22 F.3d 1219 (2d Cir.1994) . . . . . . . . . . . . . . . 1, 2, 15

*Gordon v. New York City Bd. of Educ.*, 232 F.3d 111 (2d Cir. 2000) . . . . . . . . . . . . . . . . 20

*Gregory v. Daly*, 243 F.3d 687 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 15, 16, 17

*Hampton v. Borough of Tinton Falls Police Dep't*, 98 F.3d 107 (3d Cir. 1996) . . . . . . . . 13

*Jaroslawicz v. Seedman*, 528 F.2d 727 (2d Cir.1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199 (2d Cir. 2006) . . . . . . . 19, 20

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817,
   36 L.Ed.2d 668 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 9, 17, 24

*Minor v. Centocor, Inc.*, 547 F.3d 632 (7th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Morris v. Lindau*, 196 F.3d 102 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061,
   153 L.Ed.2d 106 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Olson v. Gen. Elec. Astrospace*, 101 F.3d 947 (3d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . 17

*Ostrowski v. Atlantic Mut. Ins. Cos.*, 968 F.2d 171 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . 16

*Phillips v. Bowen*, 278 F.3d 103 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Pimental v. City of New York*, 2002 WL 977535 (S.D.N.Y. May 14, 2002) . . . . . . . . . . . 13, 14

*Richardson v. N.Y. Dep't Correctional Srvs.*, 180 F.3d 426(2d Cir. 1999) . . . . . . . . . . . . 10, 11

*Rodriguez v. Bd. of Educ.*, 620 F.2d 363 (2d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Sanders v. New York City Human Resources Admin.*, 361 F.3d 749 (2d Cir. 2004) . . . . . . 11

*Schwapp v. Town of Avon*, 118 F.3d 106 (2d Cir.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Smart v. Ball State Univ.*, 89 F.3d 437 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Tadros v. Coleman*, 898 F.2d 10 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Tarshis v. Riese Org.*, 211 F.3d 30, 35-36 (2d Cir. 2000),
    *abrogated on other grounds by, Swierkiewicz v. Sorema, N.A.,*
    534 U.S. 506, 509 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Treglia v. Town of Manilus*, 313 F.3d 71 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . 11

*Wallace v. Suffolk County Police Dep't*, 396 F. Supp. 2d 251 (E.D.N.Y. 2005) . . . . . . . . 14

*Yip v. Bd. of Trustees of State Univ. of N.Y.*, No. 03-cv-00959,
    2004 WL 2202594 (W.D.N.Y. Sept. 29, 2004), *aff'd by*, 150 Fed. Appx. 21
    (2d. Cir. Sept. 21, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## Statutes

The Civil Rights Act of 1991, 42 U.S.C. § 2000e-2 . . . . . . . . . . . . . . . . . . . . 1, 8, 9, 20, 22, 24

The Civil Rights Act of 1991, 42 U.S.C. § 2000e-3 . . . . . . . . . . . . . . . . . 1, 19, 20, 21, 22, 24

The Civil Rights Act of 1991, 42 U.S.C. § 2000e-5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

The Civil Rights Act of 1866, 42 U.S.C. § 1981 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 6

N.Y. EXEC. LAW § 296 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 6

## PRELIMINARY STATEMENT

Plaintiff submits this memorandum of law in opposition to Defendants' Motion for Summary Judgment. Plaintiff commenced this action on September 20, 2005 to redress violations of the civil rights afforded to him under the Civil Rights Act of 1991, specifically 42 U.S.C. § 2000e-2(a) and § 2000e-3(a); the Civil Rights Act of 1866, specifically 42 U.S.C. § 1981; and the New York State Human Rights Law, specifically N.Y. Exec. Law § 296. Issue was joined on December 19, 2005 by the filing of Defendants' Answer. Andrew Schaschl was dismissed as a defendant by Stipulation and Order entered on February 8, 2006. Discovery has now been completed and Defendants have filed a Motion for Summary Judgment demanding dismissal of Plaintiff's Title VII and, in a footnote, his § 1981 and New York Human Rights Law claims, to which Plaintiff herein responds.

## STATEMENT OF FACTS

Plaintiff respectfully refers the Court to Plaintiff's Statement Pursuant to Local Rule 56.1 and the pleadings in this action for a full recitation of the facts relevant to the determination of this motion.[1]

## ARGUMENT

The Second Circuit has ruled that the granting of a motion for summary judgment is a drastic remedy which must be used "sparingly." *Gallo v. Prudential Residential Serv.*, 22 F.3d 1219, 1224 (2d Cir.1994); *Egelston v. State Univ. Coll.*, 535 F.2d 752, 754 (2d Cir.1976). It is

_____

[1]Unless cited to an Exhibit or an Affidavit, all statements of fact contained herein are followed by a citation to the appropriate paragraph number of Plaintiff's or, if undisputed, Defendants' Rule 56.1 Statement, which therein contain a more full citation to the appropriate source for the statement of fact.

drastic in that it has *res judicata* effect and deprives the litigant of his or her day in court and his

or her opportunity to cross-examine the movant and movant's witnesses. *See Eastway Constr.*

*Corp. v. City of N.Y.*, 762 F.2d 243, 249 (2d Cir.1985), *cert. denied*, 484 U.S. 918 (1987);

*Egelston*, 535 F.2d at 754. Because of the drastic nature of summary judgment, courts have

circumscribed the remedy. The judicial standard applied in granting the motion is narrow in that

the motion must be denied if any genuine issue of fact exists. *Gallo*, 22 F.3d at 1224.

The Second Circuit has cautioned against dismissing a discrimination claim on a motion

for summary judgment because the employer's intent is often at issue and is difficult to

determine without carefully examining the surrounding facts. *See Schwapp v. Town of Avon*, 118

F.3d 106, 110 (2d Cir.1997); *Gallo*, 22 F.3d at 1224. The district court is limited in granting

summary judgment motions in that the court must carefully scrutinize the proofs submitted in the

light which is most favorable to the non-movant and accord the non-movant the full benefits of

all favorable inferences that may be drawn from the evidence. *Gallo*, 22 F.3d at 1224. If there is

any doubt as to the existence of a triable issue of fact or if a material issue of fact is arguable,

summary judgment must be denied. *Jaroslawicz v. Seedman*, 528 F.2d 727, 731 (2d Cir.1975).

The responsibility of the Court is thus limited on a summary judgment motion to determining

whether there are issues to be tried—not to try the issues itself via the proof before it. *Id.*

## I. PLAINTIFF'S CLAIMS ARE TIMELY

Plaintiff's claims are based upon the following enumerated events:

1.    In December 2001, Plaintiff applied for the position of Project Engineer for which
      he was qualified, but he was passed over for this position in favor of a white
      employee, Cara Muscolo. (12-15).

2.    In July 2002, Plaintiff applied for the position of Production Coordinator for

which he was qualified, but he was passed over for this position in favor of a white employee, Chris DeFeciani. (17-21).

3.   In April 2003, Wyeth denied Plaintiff opportunities for additional experience/training in favor of a white employee by not selecting him to take on the Production Coordinator responsibilities on an interim basis. (24-26).

4.   In April or May of 2003, Plaintiff received a mid-year performance review which he believes was an attempt to thwart his plans of advancement and falsely tarnished his record. (48). Defendants contend that this review took place on September 3, 2003. (48). Regardless of the date, Plaintiff's claim is based upon a document that was made part of his permanent record which presumably reflects the review, but is unsigned by any of the parties. (46-52). This review was given after Plaintiff began asking for opportunities to advance. (Compl. ¶¶ 24-25).

5.   In November 2003, Plaintiff applied for the position of Process Engineer for which he was qualified, but he was passed over for this position in favor of a Hispanic employee, Angel Montanez. (31-36).

6.   On December 17, 2003, Plaintiff received a year-end performance appraisal to which he received a lower score than prior years despite doing the same type and amount of work, if not more work. (68). This review was given after Plaintiff began asking for opportunities to advance. (Compl. ¶¶ 24-25).

7.   On December 17, 2003, Plaintiff was informed that he was being transferred from his position of Production Engineer to Packaging Supervisor. (68).

8.   In January 2004, Plaintiff applied for the position of Staff Engineer I for which he was qualified, but he was passed over for this position in favor of Beelin Cheang, and thereafter a white employee, James Patch. (38-41).

9.   On April 26, 2004, Plaintiff requested a transfer to the position of Consumer Health Project Engineer instead of being demoted to the position of Packaging Supervisor, which request went unanswered. (85).

10.   On July 9, 2004, Plaintiff received a mid-year review which attributed various shortcomings and failures to Plaintiff which were either completely baseless or otherwise outside his areas of responsibility. (92-95).

11.   In September 2004, Plaintiff applied for the position of Manager Manufacturing Support for which he was qualified, but he was passed over for this position in favor of a white employee, Max Katz. (96-103).

12.   On January 12, 2005, Plaintiff received his 2004 performance appraisal which falsely attributed to him various shortcomings, and misstated some of the work that he did during the year. (105).

13.   Throughout 2005, Plaintiff's managers, Katz and Espejo, began to falsely attribute various shortcomings and delays on projects to him in an attempt to discredit Plaintiff's abilities to manage and thwart his plans of advancement. (106-18).

14.   On June 24, 2005, Plaintiff was placed on a Performance Improvement Plan ("PIP") without justification, which he completed in less than a month despite disagreeing with it, and which precluded Plaintiff from applying for other advancement opportunities for the following year. (119-27).

A.   Plaintiff's Title VII Claims

Generally, Title VII plaintiffs must limit their claims to those acts of discrimination which occurred within the 300-day time period prior to the filing of their EEOC charge. 42 U.S.C. § 2000e-5(e)(1); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Plaintiff filed his charge of discrimination with the EEOC on September 24, 2004. Thus, any events that occurred after November 24, 2003 might form the basis for Plaintiff's claims under § 2000e-2. This includes those events described above in paragraphs 6 through 14 inclusive. However, while the 300-day limitations period applies to discrete acts of discrimination such as failures to promote, demotions, and denials of transfer, the statute does not bar the introduction of past discriminatory acts to be used as background evidence in support of Plaintiff's timely claims. *Nat'l R.R.*, 536 U.S. at 114.

*National Railroad* overruled a number of Circuit Courts which applied the "continuing violation theory" to disparate treatment cases. *Id.* at 110-14. However, the Court also held that despite its holding, the statute of limitations would still be subject to equitable doctrines such as tolling and estoppel. *Id.* at 113. For example, in a failed pattern-or-practice claim brought in the

-4-

Second Circuit, the continuing violation theory was still recognized and cited after the Supreme

Court's holding in *National Railroad*. *See Yip v. Bd. of Trustees of State Univ. of N.Y.*, No. 03-

cv-00959, 2004 WL 2202594, at *4 (W.D.N.Y. Sept. 29, 2004), *citing, Cornwell v. Robinson*, 23

F.3d 694 (2d Cir. 1994), *and aff'd by*, 150 Fed. Appx. 21 (2d. Cir. Sept. 21, 2005). Specifically

covered by the continuing violation theory as stated in *Yip* were those acts which were covert in

nature such that the plaintiff only belatedly recognized their unlawfulness. *Yip*, 2004 WL

2202594, at *4. Although the plaintiff in *Yip* could not make such a showing, the holding is in

complete accordance with the general rule that a claim "accrues" for purposes of statutes of

limitations only when a plaintiff knows or has reason to know of the harm.

Plaintiff testified at his deposition and again in his affidavit that he did not initially

believe he was being discriminated against and simply thought that he had not qualified for the

positions he applied. for. (16, 23). It was not until he began asking questions about the fairness of

his promotion denials and when he received unresponsive and inconsistent answers that he began

to form a suspicion of discrimination. (16, 23). His beliefs were later confirmed by his receipt of

negative performance reviews, a transfer which was akin to a demotion, additional denials of

promotion, and his placement on the PIP, all acts which occurred after November 24, 2003. Since

Plaintiff belatedly discovered the discrimination of which he now complains after November 24,

2003, all prior acts which would otherwise be untimely are subject to the equitable doctrine of

tolling with respect to the statute of limitations. *C.f. Yip*, 2004 WL 2202594, at *4.

B.    Plaintiff's § 1981 and § 296 Claims

It is clear that Plaintiff's § 1981 and § 296 claim are separate and distinct from his §

2000e-2 claim. *See Tadros v. Coleman*, 898 F.2d 10, 12 (2d Cir. 1990). Therefore, those acts

-5-

which might not be considered timely for Plaintiff's Title VII claim due to the 300-day statute of

limitations may nevertheless be timely for the purposes of Plaintiff's § 1981 and § 296 claims so

long as they occurred after September 20, 2002. *Id.* (holding that a § 1981 action is not subject to

the 300-day statute of limitations for Title VII actions, but is subject instead to the three-year

statute of limitations period for personal injury actions in New York); *see Forsyth v. Fed'n*

*Employment & Guidance Serv.*, 409 F.3d 565, 572 (2d Cir. 2005) (holding that applicable statute

of limitations period for § 296 claims is three years). Since under both § 1981 and § 296, the

statute of limitations is three years, *Everson v. New York City Transit Authority*, 216 F.Supp.2d

71, 78 (E.D.N.Y. 2002), any events that occurred after September 20, 2002 may form the basis

for these claims since Plaintiff filed his complaint on September 20, 2005. In light of the

foregoing, Plaintiff's claims based upon the above paragraphs 3 through 14 inclusive must all be

considered timely. His claims based upon paragraphs 1 and 2 above must also be considered

timely for the same reasons as Plaintiff's Title VII claims; *viz.*, Plaintiff did not discover the

unlawfulness of these two events until much later and they are therefore subject to equitable

tolling.

C.    Plaintiff's Retaliation Claims

     Defendants do not dispute that Plaintiff's retaliation claims are timely no matter which

statute they arise under.

## II. THERE ARE TRIABLE ISSUES OF FACT AS TO WHETHER PLAINTIFF WAS DENIED ADVANCEMENT OPPORTUNITIES BECAUSE OF HIS RACE

     In a disparate treatment case where there is no evidence of direct discrimination, a

plaintiff must satisfy the three-part burden-shifting test established by the Supreme Court in

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) in order to survive summary judgment in the Second Circuit. *Dawson v. Bumble & Bumble*, 398 F.3d 211, 216 (2d Cir. 2005).[2] Plaintiff must first establish his *prima facie* case by showing: (a) he is a member of a protected class; (b) he was competent to perform a job or was performing his duties satisfactorily; (c) he suffered an "adverse employment decision or action"; and, (d) the complained-of decision or action occurred under circumstances giving rise to an inference of discrimination based upon his membership in a protected class. *Id.* Establishing this burden has been described as *de minimis. Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 467 (2d. Cir. 2001).

Assuming Plaintiff establishes his *prima facie* case, a presumption of discrimination arises and the burden of proof then shifts to Defendants to articulate some legitimate non-discriminatory reason for the challenged employment decision or action. *Id.* If Defendants satisfy this burden, the presumption of discrimination raised by Plaintiff's *prima facie* case is lessened, but summary judgment is only appropriate if Plaintiff cannot point to any evidence which would tend to support a reasonable finding of discriminatory intent. *See id.* If any such evidence exists, summary judgment must be denied because Plaintiff "must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant[s] were not [their] true reasons but were a pretext for discrimination. *Dawson*, 398 F.3d at 216 (internal quotation omitted).

---

[2] As Defendants correctly point out, whether the claim arises under Title VII, § 1981 or § 296 is of no import and the *McDonnell Douglas* three-part burden-shifting analysis is utilized to decide each claim.

A.    The *Prima Facie* Case

It is undisputed that Plaintiff is a member of a protected class as he is a black employee. *See* § 2000e-2(a). Therefore, under the facts of this case, Plaintiff need only establish that he was qualified for any of the promotions he applied for or was otherwise doing his job satisfactorily, he was turned down for the position he applied for or was disciplined in some way, and such denial of promotion or discipline occurred under circumstances giving rise to an inference of discrimination. *See McDonnell Douglas*, 411 U.S. at 802.

1.    *The Second Prong - Qualified for Employment*

The Second Circuit has "long emphasized that the qualification prong must not be interpreted in such a way as to shift into the plaintiff's *prima facie* case an obligation to anticipate and disprove the employer's proffer of a legitimate, non-discriminatory basis for its decision." *Gregory v. Daly*, 243 F.3d 687, 696 (2d Cir. 2001). Plaintiff does not need to demonstrate perfection, or even a moderate performance; rather, he need only make a "minimal showing" that he possesses the basic skills necessary for the performance of the job. *Id.* Plaintiff's resume (Ex. 27), along with the work he had previously done which was documented in his performance appraisals for the previous nine years (6 *et seq.*; 9 *et seq.*; 10 *et seq.*; Exs. 1-10) when compared to the job descriptions for the positions he applied for (Exs. 19, 20, 30, 31) shows that Plaintiff was qualified for each and every position for which he applied. Specifically with regard to the Project Engineer position, Plaintiff had actually been performing the duties on a temporary basis under the direction of the person who would be hiring for the position. (15 *et seq.*). In any event, Defendants have not disputed that Plaintiff was qualified for the positions he applied for; rather, they attempt to show that others were more qualified in an attempt to justify

-8-

their position. However, under the standard set forth in *Gregory*, Plaintiff has made the minimal

showing that is required; to wit, he possessed the basic skills necessary for the positions for

which he applied.

He also was performing his duties satisfactorily despite what is contained in his

performance reviews as his 2003 and 2005 Engineer's Status Reports as well as the Special

Recognition Awards he received in 1997 and 2004 make clear that his work was, at a minimum,

satisfactory. (Exs. 32, 39, 18). He never received "needs improvement," "unsatisfactory," or

"below expectations" on any of his reviews prior to 2003 when he began asking for advancement

opportunities. (Exs. 1-10; Henry Aff. at ¶ X).

2.    *The Third Prong - "Adverse Employment Action"*

The third prong of Plaintiff's *prima facie* case has typically been referred to as an

"adverse employment action"; however, that term is not part of the statutory text of Title VII,

which only uses the term "discrimination." *See* § 2000e-2(a)(1). The Seventh Circuit, which is

very well-respected and well-versed in employment law, recently spoke directly to this issue and

eloquently stated:

> Although hundreds if not thousands of decisions say that an 'adverse employment action'
> is essential to the plaintiff's *prima facie* case, that term does not appear in any
> employment discrimination statute or *McDonnell Douglas*, and the Supreme Court has
> never adopted it as a legal requirement. The statutory term is 'discrimination,' and a
> proxy such as 'adverse employment action' often may help to express the idea which the
> Supreme Court has embraced—that it is essential to distinguish between material
> differences and the many day-to-day travails and disappointments that, although
> frustrating, are not so central to the employment relation that they amount to
> discriminatory terms or conditions. (citations omitted). Helpful though a judicial gloss
> such as 'adverse employment action' may be, that phrase must not be confused with the
> statute itself or allowed to displace the Supreme Court's approach, which inquires
> whether the difference is material."

*Minor v. Centocor, Inc.*, 547 F.3d 632, 634 (7th Cir. 2006).

To be "material" in the Second Circuit, the challenged action could be an obvious "adverse" decision, such as termination of employment, a denial of a promotion, a demotion, a less distinguished title, a material loss of benefits, or diminished material responsibilities. *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000); *see Burlington Indus. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) (an adverse employment action need not have monetary consequences but can also include diminished responsibilities or 'other indices that might be unique to a particular situation'). However, if a plaintiff has presented <u>any</u> evidence from which a trier of fact may reasonably infer that there was an adverse employment action or that it occurred under circumstances giving rise to an inference of discrimination, then a defendant's motion for summary judgment must be denied. *See Burger v. New York Inst. of Tech.*, 94 F.3d 830, 834 (2d Cir. 1996).

In light of the above, lower performance reviews can be considered material changes in the terms and conditions of Plaintiff's employment if the result of those reviews placed Plaintiff in a materially worse position. Defendants rely on *Richardson v. N.Y. Dep't Correctional Srvs.* for the proposition that "average" reviews rather than "excellent" reviews cannot constitute an adverse employment action. 180 F.3d 426, 443-44 (2d Cir. 1999). Significant to the court in *Richardson* was that the plaintiff presented no evidence of the reviews themselves, no evidence of how or why she deserved better, and no evidence that the "average" rating was unwarranted. *Id.* Similarly, in *Smart v. Ball State Univ.*, on which Defendants rely, the Seventh Circuit merely found that negative reviews <u>by themselves</u> could not form the basis for a finding of an adverse employment action. 89 F.3d 437, 442 (7th Cir. 1996). *Richardson* itself recognized that

-10-

"[b]ecause there are no bright-line rules, courts must pore over each case to determine whether the challenged employment action reaches the level of adverse." *Id.* at 446.

Plaintiff does not rely on *Richardson* though because the Second Circuit has since stated that negative performance evaluations can constitute an adverse employment action. *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002) (citing *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999) (holding same). In *Sanders v. New York City Human Resources Admin.*, the Second Circuit found (on the plaintiff's appeal from a judgment as a matter of law after she failed to satisfy her burden at trial) that a jury could find that a negative performance evaluation did not, on its own, constitute an adverse employment action where no evidence was presented that the review changed her terms and conditions of employment. 361 F.3d 749, 756 (2d Cir. 2004). Thus, the inverse must be true; to wit, a jury can reasonably find that a negative performance evaluation can constitute an adverse employment action where the evidence suggests that a plaintiff suffered some change in his terms and conditions of employment, namely that the downgraded performance appraisal was used, or would be used, to deny future promotional opportunities. However, what is important to note from *Sanders* is that the question was one for the jury, and whether the plaintiff ultimately succeeded is of no import.

Plaintiff's performance reviews all became part of his permanent record, which any future manager could see and rely upon when deciding whether to give Plaintiff a promotion. Additionally, Plaintiff can show that his performance reviews after he began asking for advancement opportunities were unwarranted—the exact evidence that was lacking in *Richardson. See* 180 F.3d at 443-44. Plaintiff did the exact same work and more in 2003 than he had in prior years, and his 2003 Engineering Status Report confirms the amount of work he did.

(Ex. 32). Plaintiff was the only person who could solve a problem with the CTC Single Pass Project after others had been working on it for almost ten months to no avail. (105.1). Despite this, the 2004 reviews mentioned nothing of all this work and his rating was inexplicably lower than prior years. (105.1). The original 2003 review states that Plaintiff "completely missed the deadline" for a number of projects (Ex. 12), yet Defendants have not been able to provide a factual basis for this statement. Wardrop never communicated to Plaintiff what projects Plaintiff was late on. (44, 46.1). The only thing Plaintiff was "late" on was his 2003 goals and objectives, a "project" that Wardrop already had in his possession from earlier in the year (48.1), which he told Plaintiff not to turn in because he did not need it (57.1), and which he refused to read once Plaintiff tried to submit it (69). Wardrop stated that other managers complained to him about Plaintiff, yet no names have been provided and no evidence of any kind has been put forth to support this statement. (45). Significantly, Wardrop later stopped Plaintiff before his meeting with Rose and told Plaintiff that he had done a good job and that he had completed all his work on time. (72.1). The 2004 performance appraisal was similarly unwarranted for the reasons set forth in Plaintiff's Rule 56.1 Statement. (92). After Plaintiff received the review, he saw what was happening to him and began documenting on a monthly basis all of the work he had been doing—that is, until Espejo asked him to stop. (95). The review also did not contain any references to the fact that Plaintiff was instrumental in finishing and completing the CTC Single Pass project, which a number of other engineers, scientists and outside technical support failed to do for a period of ten months. (105).

Almost every single fact regarding Plaintiff's 2005 performance reviews and his placement on the PIP are in dispute. (106-28). The PIP is certainly an "adverse employment

action" since he was subject to termination because of it, and the effect of the PIP was that Plaintiff could not apply for any additional positions for a period of one year following its institution. (121). Significant is that Plaintiff finished the PIP within approximately one month, which tends to show that its institution was unnecessary in the first place. (126). The 2005 mid-year review contained negative ratings in areas for which Plaintiff was not even responsible or were overall departmental problems not attributable to him. (123). Moreover, Plaintiff's 2005 Engineering Status Report completely belies all of the proffered reasons given in the 2005 mid-year review and the PIP. (125). A jury could certainly infer that the 2003-05 reviews and the PIP were completely baseless and would have had the effect of limiting Plaintiff's future advancement opportunities.

Despite Defendants' contentions otherwise, a transfer can also constitute an adverse employment action where the employer transfers an employee (a) to a job assignment that is materially and significantly different; (b) to a job assignment that is less prestigious; (c) to a job assignment that is materially less suited to the employee's skills and expertise; or (d) to a job assignment that is less conducive to career advancement. *See Galabya*, 202 F.3d at 641; *de la Cruz v. New York City of Human Resources Admin*, 82 F.3d 16, 21 (2d Cir. 1996); *Rodriguez v. Bd. of Educ.*, 620 F.2d 363, 366 (2d Cir. 1980); *Pimental v. City of New York*, 2002 WL 977535, at *3 (S.D.N.Y. May 14, 2002). Where a transfer "results in a change of responsibilities so significant as to constitute a setback to the plaintiff's career," the transfer is actionable. *Galabya*, 202 F.3d at 641. The Second Circuit is in complete accord with other jurisdictions in this regard. *See Hampton v. Borough of Tinton Falls Police Dep't*, 98 F.3d 107, 116 (3d Cir. 1996) (reversing summary judgment and leaving for jury question of whether the plaintiff's transfer

-13-

was in fact a demotion and whether the move constituted an adverse employment action); *Collins v. Illinois*, 830 F.2d 692, 702-04 (7th Cir. 1987) (lateral transfer with change in job responsibilities but same benefits and pay is adverse employment action).

Plaintiff's demotion to Packaging Supervisor as part of the Organizational Cascade in January 2004 was certainly, in light of the above, an adverse employment action. The position required Plaintiff, a chemist and engineer who synthesized complicated pharmaceutical reactions, to do little more than sit on an assembly line and watch hourly employees pack vitamins into a bottle. (65). While Plaintiff had two Bachelor's degrees, the position required no more education that a high-school diploma. (65). Plaintiff was highly overqualified for such a position. Other employees at Wyeth know that when an engineer is transferred to the Packaging Supervisor position, it typically means that the engineer is incompetent to do anything else. (65). Most importantly, however, the move had the effect of limiting Plaintiff's future advancement opportunities because of the stigma associated with it. (65). Under *Galabya, de la Cruz, Rodriguez*, and *Pimental*, Plaintiff's transfer under the facts and circumstances of this case could be found by a jury to constitute an adverse employment action.

While Plaintiff has argued that each of the complained-of actions constituted separate and distinct material employment actions, this is not the only way for Plaintiff to satisfy his *prima facie* case. Even where certain employment actions are not independently "adverse," they can combine to constitute an "atmosphere" of adverse acts. *See Phillips v. Bowen*, 278 F.3d 103, 109 (2d Cir. 2002) ("an accumulation of 'seemingly minor incidents' may combine to establish an 'atmosphere of adverse employment action[.]'" *Id.*; *see also, Wallace v. Suffolk County Police Dep't*, 396 F. Supp. 2d 251 (E.D.N.Y. 2005) (holding that three separate actions taken by an

-14-

employer, while not individually adverse, may nevertheless be considered in determining whether there was an "atmosphere of adverse employment action."). Therefore, even if the Court finds that any one of the complained-of actions could not by itself constitute an adverse employment action, summary judgment must nevertheless be denied because a jury could infer that the overall atmosphere at Wyeth was "adverse" to him because of his race.

   3.    *The Fourth Prong - An Inference of Discrimination*

       With regard to the fourth prong of Plaintiff's *prima facie* case, and his latter burden of proving Defendants' proffered reasons were mere pretext, any amount of evidence from which a trier of fact may reasonably infer that there was an adverse employment action is sufficient to defeat Defendant's motion. *Burger*, 94 F.3d at 834; *see Gallo*, 22 F.3d at 1224 (all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought). The absence of direct evidence of a discriminatory intent does not by itself entitle Defendants to summary judgment. *Gregory*, 243 F.3d at 695; *see Chertkova v. Connecticut Gen. Life Ins. , Co.*, 92 F.3d 81, 91 (2d Cir. 1996) (outlining different circumstances under which a discriminatory intent may be found). Indeed, employment discrimination plaintiffs "more often than not must depend on the cumulative weight of circumstantial evidence." *Tarshis v. Riese Org.*, 211 F.3d 30, 35-36 (2d Cir. 2000), *abrogated on other grounds by, Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 509 (2002).

       In *Chertkova*, the court set forth a number of circumstances under which a discriminatory intent may be found, each of which consists of circumstantial evidence. 92 F.3d at 91. The general timing of the sequence of events may be sufficient to show discriminatory intent, just as a pattern of failing to consider Plaintiff for a promotion for which he was qualified, or giving

-15-

preferential treatment to those outside his protected class, might show a specific discriminatory intent. *Id.* Additionally, it is settled precedent in this circuit that actions or remarks by decision-makers that tend to show a "discriminatory animus" may lend support to the inference of a discriminatory motive. *Gregory,* 243 F.3d at 697; *Chertkova,* 92 F.3d at 91 (citing *Ostrowski v. Atlantic Mut. Ins. Cos.,* 968 F.2d 171, 182 (2d Cir. 1992)).

Wardrop's and other managers' comments and actions could lead a jury to infer discriminatory animus as they were racial or ethnic in nature. (138-41). The statistics showing the racial makeup of Wyeth's upper management also show that no black employees were given management positions during the two Organizational Cascades, and only 7.5 percent (of an admittedly small sample) of the other promotions given during a certain time period were given to minority employees, and of those promotions, none were into upper management. (143-45). Most importantly, however, is that for every position for which Plaintiff applied (and for the position for which Mr. Newton Paul applied (142)), the positions were not awarded to an African American employee, and a substantial amount of them went to white employees. Plaintiff also made it known that he was seeking advancement opportunities, but when it came time for managers to find employees to fill-in on an interim basis for certain positions (a function by which the individual is typically promoted to a full-time position), Plaintiff was never selected while other white employees were. (11-16, 24-30). Finally, the timing of the sequence of events is another substantial indicator that each employment action was motivated by Plaintiff's race. Plaintiff had applied for several positions for which he was turned down, but it was only when he began questioning these denials that his reviews dropped, his accomplishments went unrecognized, and everybody's reasoning became inconsistent. (Ex. A at 201-04).

-16-

The Court should find that Defendants' discriminatory intent could reasonably be found by a jury, and such an inference would be in accord with controlling authority. *C.f. Gregory*, 243 F.3d at 697; *Chertkova*, 92 F.3d at 91.

B.    Plaintiff Will Be Able To Meet His Ultimate Burden At Trial

Defendants have offered seemingly legitimate non-discriminatory reasons for each of the challenged employment decisions. Therefore, it is incumbent upon Plaintiff to show that those proffered reasons are pretextual. *McDonnell Douglas*, 411 U.S. at 802. In order to demonstrate pretext, Plaintiff does not need to show that the proffered reasons are false or that they did not play a role in the employment decision; rather, he need only show that they were not the only reason, and that the discriminatory motive played some role in the decision. *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995). Defendants' motion must be denied if Plaintiff can demonstrate "such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Bombero v. Warner-Lambert Co.*, 142 F.Supp.2d 196, 203 n. 7 (D.Conn. 2000) (quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999), and citing *Olson v. Gen. Elec. Astrospace*, 101 F.3d 947, 951-52 (3d Cir. 1996)), *aff'd* 9 Fed. Appx. 38 (2d Cir. 2001).

First, each and every time Plaintiff asked a different individual about his 2003 performance appraisal and corresponding transfer to the Packaging Supervisor position, he received a different answer. (74.1; *see* Ex. A at 201-04). Some of the individuals statements now are completely inconsistent with emails that those individuals wrote in the past. For example,

-17-

McDermott says now that Plaintiff was transferred to the Packaging Supervisor position in order to gain supervisory experience, but he also admitted at his deposition that Plaintiff already had supervisory experience, and the reason he gave back in 2004 was that he was opposed to one person staying in a position for too long, hence the transfer. (74.1). Despite what McDermott and Wardrop said about Plaintiff's transfer, Bigelow confirmed orally that such a move would not be a "good use of resources," a statement that Plaintiff documented in an email. (82.1).

Second, with regard to the 2003 reviews; the 2004 reviews; and the 2005 harassment, reviews, and PIP, Plaintiff has already argued why they all were completely unwarranted; thus, pretextual. *See, supra,* at Point II(A)(2) & (3). Especially with regard to the 2003 mid-year review, Defendants rely on the document to support their assertions that Plaintiff's performance was slipping which is why he was denied advancement opportunities, but the 2003 mid-year review is highly in dispute as it is unsigned by any of the parties and Wardrop and Plaintiff vehemently disagrees on when the review was given and under what circumstances. (48).

Third, with regard to the positions that Plaintiff applied for, all but one was given to white employees, and none were awarded to African Americans. The statistical evidence alone is enough for a jury to infer pretext, as is the overall atmosphere at Wyeth. Defendants state that Plaintiff did not receive the Production Coordinator position because Chris DeFeciani (the person who ultimately received it) had been filling in for Todd Davenport on a temporary basis (20), yet Plaintiff asked for this same opportunity and was denied (20.3). Nevertheless, even though Plaintiff had been functioning as a Project Engineer on an interim basis, he was denied the opportunity to become the Project Engineer when it became available (15.1). Also with regard to the Staff Engineer I position, Plaintiff had experience working in the department but was denied

the full-time position once it became available. (38). Defendants' reasons are simply inconsistent.

When it came time to select another person to perform the Production Engineer positions on a

temporary basis in Chris DeFeciani's absence, Plaintiff shrugged off his last denial and tried

again, but was again denied despite everybody's knowledge that he was seeking the opportunity.

(27).With regard to the Process Engineer position, Rokad stated that he gave the position to

Montanez since he was working on his Masters degree, yet Plaintiff already had two

baccalaureates, one more than Montanez. (35.1). Rokad also stated he did not select Plaintiff

because he did not have experience in the Vaccines Division, yet McDermott himself was

transferred to Vaccines without any experience in the area. (35.2).

Defendants' reasoning is so weak with respect to each complained-of action that a jury

could infer that it is unworthy of credence. *See Bombero*, 142 F.Supp.2d at 203 & n.7.

### III. THERE ARE TRIABLE ISSUES OF FACT AS TO WHETHER PLAINTIFF WAS RETALIATED AGAINST FOR MAKING A CHARGE OF DISCRIMINATION

In order to present a *prima facie* case of retaliation under § 2000e-3, Plaintiff must show

that: (1) he engaged in protected participation or opposition to discriminatory practices under

Title VII; (2) Wyeth was aware of this activity; (3) Wyeth took adverse action against him; and

(4) there is a causal connection between the adverse action and the protected activity. *Kessler v.*

*Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006).

In order to satisfy the first prong, Plaintiff need only show that he had a "good faith,

reasonable belief that he was opposing an employment practice made unlawful by Title VII." *Id.*

at 210. Clearly, Plaintiff's complaint of being treated unfairly, followed by various meetings with

different individuals where the subject of his race as a motivating factor was set out (75, 87),

-19-

followed by a formal email complaining of discrimination (87), followed by a formal EEOC charge (134) were all acts opposing an employment practice made unlawful by Title VII. His complaints were also clearly made in good faith; to wit, he noticed a pattern forming whereby he was denied advancement opportunities in favor of his white coworkers with less experience than he, and when he asked for an explanation he was given conflicting answers from different individuals (Ex. A at 201-04).

Plaintiff's employer was certainly "aware" of this activity since the various emails and meetings occurred with Wyeth management. To the extent Defendants argue he cannot satisfy the second prong because certain individuals were not "aware" of Plaintiff's complaints, the Second Circuit (and as it points out, every other circuit) has held that individual awareness is not required, and all that need be shown is "general corporate knowledge" of Plaintiff's complaints. *Kessler*, 461 F.3d at 210; *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000). To that end, Espejo's, Walrdop's, and Katz's treatment of Plaintiff can form the basis for his retaliation claims whether they were individually aware of his complaints or not.

With regard to the third prong, the Supreme Court has recently held that there are major differences between the substantive provisions of § 2000e-2 and the retaliation provisions of § 2000e-3. *See Burlington No. & Santa Fe. RR., Co. v. White*, 126 S.Ct. 2405, 2411-14, 165 L.Ed.2d 345 (2006). For an alleged retaliatory act to be actionable under § 2000e-3, it need not relate to the terms or conditions of employment as it does to be discriminatory under § 2000e-2. *Id.* at 2412-13. Plaintiff must show that the challenged acts were materially adverse, "which in [the retaliation] context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 2415 (internal quotation and citation omitted).

-20-

A reassignment of job duties constitutes retaliation under this standard if all the circumstances of the particular case show that a reasonable employee would view the change as materially adverse from an objective standpoint. *Id.* at 2416-17. The duties of the new job must be considered, as well as the level of prestige (or lack thereof) associated with the transfer. *Id.* at 2417. If the responsibilities of the new job are significant enough to constitute a setback in Plaintiff's career, the transfer is actionable. *Galabya*, 202 F.3d at 641.

With regard to the transfer to the Packaging Supervisor position, it is of no import that Plaintiff was never ultimately required to assume the responsibilities of Packaging Supervisor, as the "materially adverse" requirement under § 2000e-3 does not require a change in the terms or conditions of Plaintiff's employment. *Burlington*, 126 S.Ct. at 2412-13. In *Burlington*, the plaintiff-employee was suspended for 37 days without pay, but then was later awarded back pay after an internal grievance procedure was utilized. *Id.* at 2417. Nevertheless, the Court held, such an act could suffice to establish a claim under § 2000e-3 since such an act could have been the subject of injunctive relief, and since Title VII not only offers an aggrieved party compensatory damages, but punitive damages as well. *Id.* Significant to the Court was the period of time that the plaintiff had to suffer the effects of the discrimination, regardless of whether the employer ultimately compensated her for them in the end. *See id.*

Just as in *Burlington*, Plaintiff had to suffer the effects of his placement as a Packaging Supervisor for a significant period of time: he had to report to the packaging department manager (91) and, most importantly, had to go to work every day knowing that his coworkers looked upon him with disdain since it was known that a transfer from an engineering position to a packaging position evinced "incompetence." (65). A jury could find that even though Defendants rescinded

-21-

Plaintiff's transfer later on, Plaintiff's realization of the effects of the transfer for almost five months could well have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington* 126 S.Ct. at 2415.

With regard to Plaintiff' performance reviews and subsequent placement on the PIP, it has already been argued why these actions were materially adverse for the purposes of § 2000e-2. *Supra* at Point II(A)(2). A jury could also reasonably find that they were materially adverse for the purposes of § 2000e-3 since: (a) the placement on the PIP meant that Plaintiff could not apply for another promotion for a one-year period thereafter (121.1); (b) Plaintiff was threatened with termination if he did not comply with the terms of the PIP (121.1); (c) he was harassed by Espejo and Katz who made it seem like Plaintiff was somehow responsible for project delays that were attributable to the whole department (106-18); and (d) Espejo documented these falsified deficiencies in Plaintiff's performance reviews for 2004 and 2005, making them part of his permanent employment record (123.1-123.3). Defendants argue that the performance reviews and the PIP were not adverse employment actions which do not "constitute materially adverse changes in terms of employment." (Defs. Mem. of Law at 23). The above is not the applicable standard for a § 2000e-3 claim as the Court stated in *Burlington*, 126 S.Ct. at 2412-13. The actions do not need to constitute a change in the terms of employment. *Id.* Additionally, Defendants' characterization of the PIP as a "counseling letter" is completely disingenuous as the effect of the PIP was that Plaintiff could be subject to termination as a result of it had he not completed the plan (121.1), and the PIP precluded Plaintiff from applying for other promotional opportunities for the following year (121.1). The fact of the matter is that the fear of being placed on a PIP could well dissuade a reasonable worker from complaining of discrimination, which is

-22-

the correct standard to be used for this claim. *Burlington*, 126 S.Ct. at 2415.

With regard to the fourth prong, the facts are clear, and it is the timing of the sequence of events that supports the inference that Plaintiff's complaints prompted his transfer and his negative performance reviews. *See Chertkova*, 92 F.3d at 91. Plaintiff complained he was being treated unfairly and was not being given opportunities to advance (20.3), he was then given negative performance reviews and transferred to the Packaging Supervisor position (24-25, 68), he then complained that he was being treated this way because of his race (75), he then was given additional negative reviews (92-95), he then was again denied promotions (85, 96-103), and he then was placed on the PIP (119-27). The only difference in circumstance before he was being treated this way and after was that he complained of discrimination. Wardrop's history of racial comments and discriminatory animus lend support to such a conclusion. (138-41). A jury could certainly find a causal connection between Plaintiff's complaints and the resulting actions.

To address Defendants' argument that the length of time between the protected activities and the retaliatory actions somehow bars Plaintiff's recovery, this argument has no merit. First, it is not only Plaintiff's email to Bigelow which is the protected activity, but it is also his prior complaints that he was being treated unfairly, his complaint to McDermott that his race was a motivating factor, and his subsequent filing of his initial EEOC charge of discrimination. His 2003 mid-year review, his 2003 performance appraisal, and his transfer to the Packaging Supervisor position followed his complaints. The denials of his promotions to Manager of Manufacturing Support and Consumer Health Project Engineer followed his complaints to McDermott and Bigelow. His 2004 performance review followed his charge of discrimination to the EEOC. Moreover, his 2005 performance reviews, his placement on the PIP, and Espejo's and

-23-

Katz's harassment were their first opportunities to become involved in the <u>ongoing</u> pattern of retaliation. Nevertheless, whether the Court finds that the temporal proximity of the 2005 challenged actions (or any of the challenged actions for that matter) is a bar to Plaintiff's recovery under § 2000e-3, it is clear that a jury could still find that these actions support Plaintiff's recovery under § 2000e-2, as argued above in Point II.

Just as with a claim under § 2000e-2, the *McDonnell Douglas* burden-shifting framework is used for claims made under § 2000e-3. *See Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 216 (2d Cir. 2001). Once Plaintiff has set forth his *prima facie* case, Defendants must respond with a legitimate, non-retaliatory reason for their actions, and if they do so, Plaintiff must set forth facts which could lead a jury to find that the proffered reasons were pretextual. *Id.*

Plaintiff highly disputes whether Defendants have responded with any legitimate reasons for the actions they took. Plaintiff has set forth sufficient evidence for a jury to conclude that despite what his 2004 and 2005 reviews actually say on the documents, Plaintiff was undeserving of those reviews. (105.1-105.2, 123.1-123.3). As just one example, his 2005 Engineering Status Report makes clear that he had accomplished all of his goals in 2005 satisfactorily and on time, which belies the 2005 performance review, the PIP, and Espejo's and Katz's emails. (*See, e.g.*, 123.2, 107). Even if the Court finds that a jury could reasonably find these reasons legitimate, the Court should also find that Plaintiff should be entitled to prove that they were pretextual, thereby satisfying his ultimate burden. To reiterate, Plaintiff need only show that a retaliatory motive played some part in the challenged actions, not that it was the only basis for the actions. *Cronin*, 46 F.3d at 203. He has shown such "weaknesses" in Defendants' proffered reasons such that a jury could find them "unworthy of credence." *Bombero*, 142 F.Supp.2d at 203 n.7. Again, his

2005 Engineering Status Report is just one example. (Ex. 39). Others include his own testimony that any delays attributed to him in the emails, the reviews, and the PIP were either departmental in nature (not individualized) or were caused by reasons that were not within Plaintiff's control, such as being assigned one project with only 12 days remaining after it had been in the hands of his superiors for at least two weeks prior. (123 *et seq.*). Plaintiff has sufficiently challenged the "interview" he received for the Manager Manufacturing Support position by showing that three out of the four interviewers were people that had previously been placed in positions over Plaintiff, which supports a reasonable inference that the interview was a sham. (103).

To sum up Plaintiff's entire case in a succinct manner, Plaintiff was an extremely talented chemical engineer receiving good reviews for nine straight years and two awards who began seeking advancement opportunities within Wyeth. He applied for one position, and was turned down. He applied for another, and was turned down. Another. Another. He became suspicious, and he asked his supervisor why it was he was not advancing—why he was being treated unfairly. The next thing he knew, his performance ratings dropped, his accomplishments were being ignored, nobody could give a consistent answer to him as to why, and he was placed in danger of losing his job. Despite what any document says or what any witness stated in support of Defendants' motion, the only difference between Plaintiff's situation ante-2003 and post-2003 was that he complained that he was not being promoted. Plaintiff has sufficient evidence from which a jury could conclude that any of the stated reasons for Plaintiff's negative reviews or discipline were not the true reasons, and that the overall atmosphere at Wyeth is one in which black employees are surreptitiously discriminated against in an environment where the management sees them as nothing more than voodoo-practicing vitamin bottle watchers.

-25-

## CONCLUSION

For all the foregoing reasons, Defendants' motion should be denied in its entirety and this case should be scheduled for trial at a time that is convenient for the Court.

**Dated:**        **Carle Place, New York**
               **November 27, 2006**

Respectfully submitted,

By: _____
    **Steven Morelli (SM 4721)**
    **LEEDS MORELLI & BROWN, P.C.**
    **Attorneys for Plaintiff, Howard Henry**
    **One Old Country Road, Suite 347**
    **Carle Place, N.Y. 11514**
    **(516) 873-9550**

-26-