Paul
Affidavit

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
HOWARD HENRY,                                    :

                   Plaintiff,            :

         -against-                            :

WYETH PHARMACEUTICALS, INC., WALTER :
WARDROP, ANDREW SCHASCHL, and           :
MICHAEL McDERMOTT,                          :
                                 :
                   Defendants.          :
-----------------------------------------------------------x

05-cv-8106 (RCC)(DFE)

**AFFIDAVIT OF
NEWTON PAUL**

STATE OF NEW YORK   )
                       ) ss.:
COUNTY OF ROCKLAND )

     **Newton Paul**, being duly sworn, deposes and says as follows:

1.     I am a former employee of Wyeth Pharmaceuticals, Inc. ("Wyeth") and was forced

to end my 5-year career there after I experienced a similar situation to Plaintiff's,

who was one of my coworkers, and some other racial comments and behavior that I

witnessed are relevant to Plaintiff's claims. Accordingly, I am fully familiar with

the facts and circumstances set forth herein.

2.     I am a Haitian American, and my position at Wyeth was as a Senior Compliance

Coordinator in the Compliance and Investigations Department within Centrum®

production. In this position, I was paid less than my white coworkers who held the

same position as myself but who had less experience and education that I did.

3.     In February 2004, I witnessed Joe Vitanza (the then-current Managing Director of

LCH and Defendant Walter Wardrop's immediate supervisor) refer to a

malfunctioning alarm system as **a "tar baby** that I just can't get off my back." I
was shocked that a person in Mr. Vitanza's position would be so insensitive to
racial and cultural issues that he would make such a comment and not even realize
how deeply offensive the phrase "tar baby" is to African Americans. I was ashamed
to be an employee of Wyeth on that day, but I nevertheless continued working
there.

4.    The project referred to above involved the installation of a new alarm system
throughout the Centrum® manufacturing area. This project was led by Cara
Muscolo, the white employee who was promoted to the position of Project
Engineer over Plaintiff. After the installation, the alarm system repeatedly
malfunctioned and was eventually turned off. Ms. Muscolo was promoted to a
management position from the Project Engineer position despite her failures with
regard to this project.

5.    In or about the winter of 2004, I witnessed Defendant Wardrop making fun of
Manny Rivera, a Wyeth employee, in a discriminatory way. Wardrop pulled his
pants down low such that the waistband was around his thighs, imitating the dress
of hip-hop youth culture. Mr. Rivera is a Hispanic employee, and Wardrop
proceeded to make other gestures imitating the way he presumably perceives
Hispanic youth. He then said, "Is Manny the kind of guy to wear his pants hanging
down like this?" I am not even Hispanic, but I was deeply offended by Wardrop's
actions because there exists a similar derogatory stereotype that relates to African
American youths. In addition to being offended, I was empathetic toward Mr.

2

Rivera, felt troubled, and was embarrassed (again) to be working under managers who feel it is appropriate to make racial comments in front of their minority employees.

6.    I also had an experience that is eerily similar to Plaintiff's claims. In May 2005, I applied for the position of Compliance Manager by sending my resume and a cover letter to Maura Corcoran, who was either a Director or an Associate Director of the Compliance Department in the Vaccines Group for Wyeth. I was very qualified for the position and felt it would be a great opportunity for me. However, I never received a response to my application despite sending repeated emails to Ms. Corcoran requesting some sort of answer. I was never interviewed for the position and it was eventually given to Mike Curry, who was a white employee. I had far more experience and team successes than Mr. Curry, yet I was not even afforded the opportunity to interview for the position.

7.    I will be bringing my own claims against Wyeth in the courts of New York State based upon the above; however, I felt it was necessary to show the Court that other black employees are also being denied opportunities for advancement at the Wyeth facility in Pearl River, New York. Additionally, the comments by Mr. Vitanza and Defendant Wardrop are just two examples of some of the sophomoric behavior reflecting a discriminatory animus which is held not only by Defendant Wardrop, but the managerial staff of Wyeth Pharmaceuticals as a whole. I firmly believe that Wardrop is a racially discriminatory individual and I feel his bias contributed to Plaintiff's bad performance reviews since I have personally witnessed his racial

3