UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
HOWARD HENRY,

      Plaintiff,

   v.

WYETH PHARMACEUTICALS, INC.,
WALTER WARDROP, ANDREW SCHASCHL,
AND MICHAEL MCDERMOTT

      Defendants.
------------------------------------------------------------X

NO. 05-CV-8106 (RCC)(DFE)

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Michael Delikat (MD-1165)
James H. McQuade (JM-0788)
ORRICK, HERRINGTON & SUTCLIFFE LLP
666 Fifth Avenue
New York, New York 10103
Telephone: (212) 506-5000

Attorneys for Defendants Wyeth Pharmaceuticals, a Division
of Wyeth, Walter Wardrop, and Michael McDermott

OHS East:160136328.3

I.   **THERE ARE NO GENUINE ISSUES OF MATERIAL FACT IN THIS CASE**

Henry's opposition papers confirm that there are no genuine issues of material fact in this case and that Defendants are entitled to summary judgment as a matter of law. Although Henry's Affidavit contains a number of self-serving and conclusory statements, such inadmissible statements cannot create issues of material fact. *See, e.g., Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). Moreover, to the extent that Henry's Rule 56.1 Statement does not refute the facts in Defendants' Rule 56.1 Statement that are derived from declarations, as opposed to affidavits, the statements in Defendants' Rule 56.1 Statement must be deemed admitted.[1]

II.  **MANY CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS**

In an attempt to save five of his time-barred claims from dismissal, Henry argues that the continuing violation exception should apply to four of his failure to promote claims and to one of his performance evaluation claims, or, alternatively, that the statute of limitations should be tolled with respect to these claims. (Henry's Br., 4-5). Henry's argument should be rejected.

First, the continuing violation doctrine cannot be applied in this case because Henry has failed to allege a continuing violation in his Complaint. *See Carmellino v. District 20*, 2006 WL 2583019, *8 (S.D.N.Y. Sept. 6, 2006) ("A continuing violation must be 'clearly asserted both in the EEOC filing and in the complaint.'"). Second, as Henry acknowledges, the Supreme Court recently held that the continuing violation doctrine does not apply to discrete acts of discrimination, such as failure to promote or performance reviews. *See National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). The holding in *Morgan* applies equally to Henry's Title VII, Section 1981, and New York Human Rights Law claims. *See Washington v. County of Rockland*, 373 F.3d 310, 317-18 (2d Cir.

---

[1] Henry's argument that the declarations submitted in support of Defendants' motion are inadmissible because they are not affidavits sworn under oath is simply wrong. It is well established that unsworn declarations that are subscribed as true under the penalty of perjury, like each of the declarations submitted in support of Defendants' motion, are admissible on a motion for summary judgment. *See* 28 U.S.C. § 1746; *LeBoeuf, Lamb, Green & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 65-66 (2d Cir. 1999).

OHS East:160136328.3                                     1

2004) (applying *Morgan* to Section 1981 and 1983 claims); *Dawson v. Bumble & Bumble*, 398 F.3d 211 (2d Cir. 2005). In any event, even if the continuing violation doctrine could be applied to his claims, Henry has failed to argue any basis for its application in this case.

Similarly, Henry's argument that his claims accrued only after he began to believe that the employment decisions at issue were discriminatory is contrary to well established law. The statute of limitations runs from the date of the employment decision, *see Delaware State College v. Ricks*, 449 U.S. 250, 259 (1980), not the date the plaintiff begins to suspect the decision was unlawful. If the statute of limitations could be tolled on this basis, the statute of limitations would be meaningless. Finally, in *Yip v. Board of Trustees*, 2004 WL 2202594 (W.D.N.Y. Sept. 29, 2004), a case cited by Henry which did not involve a Title VII, Section 1981, or New York Human Rights claim, the court did not toll the statute of limitations or indicate that it could be tolled under the circumstances presented here.

## III. HENRY'S DISCRIMINATION CLAIMS SHOULD BE DISMISSED

### A. The 2003 Performance Reviews Issued By Wardrop

Henry has failed to demonstrate that his 2003 mid-year and year-end performance reviews issued by Wardrop caused a materially adverse change in the terms and conditions of his employment. Indeed, each of the cases Henry cites in his Brief is inapposite. Neither in *Treglia v. Town of Manilus*, 313 F.3d 713, 720 (2d Cir. 2002), nor in *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999), was the court presented with the question of whether a performance evaluation constituted an adverse employment action, but instead the courts merely stated in *dicta* that a negative evaluation letter *may* be considered adverse under the appropriate circumstances. Moreover, the court in *Sanders v. New York City Human Resources Administration*, 361 F.3d 749, 756 (2d Cir. 2004), held that an alleged negative performance evaluation does not constitute an adverse employment action as a matter of law. Further, contrary to Henry's contention, *Sanders* does not suggest that a plaintiff can

meet his burden by showing that the performance evaluation "would be used, to deny future promotion opportunities." Henry's Br., 11.

Moreover, Henry's argument that his performance evaluations constituted a materially adverse change in his employment because they "became part of his permanent record, which any *future* manager *could* see and rely upon when deciding to give [him] a promotion," Henry's Br., 11, must fail because Henry cites to no evidence in the record establishing that his performance evaluations became part of his permanent record or that any managers actually reviewed his performance evaluations in making promotion decisions, nor is their any such evidence. In addition, "[t]he Second Circuit has not held that employer conduct is materially adverse merely because it has the *potential* to cause negative results" in the *future*. *Carmellino*, 2006 WL 2583019, *28 (plaintiffs must show "actual negative ramifications for [their] job conditions"). Like in *Carmellino*, Henry's performance evaluations did not cause any *actual* materially adverse change in the terms and conditions of his employment, and therefore, his claims based on the evaluations must fail.[2]

In addition, the only purported evidence Henry cites to create an inference of discrimination with respect to his 2003 performance evaluations claims is a few ambiguous and isolated remarks made by Wardrop and two other Wyeth employees, Joe Vitanza and Robert Bracco. Henry Br., 16.[3] These alleged remarks, however, are insufficient to create an inference of discrimination. First, the two remarks allegedly made by Wardrop, even if true, were stray remarks that cannot support an inference of discrimination. *See, e.g., Woroski v. Nashua Corp.*, 31 F.3d 105, 109-10 (2d Cir. 1994), *abrogated on other grounds* (holding that stray remark by supervisor is not sufficient to withstand motion

---

[2] Henry's reliance on *Wallace v. Suffolk County Police Dep't*, 396 F. Supp. 2d 251 (E.D.N.Y. 2005), and on *Phillips v. Bowen*, 278 F.3d 103 (2d Cir. 2002), for his argument that his claims based on his performance evaluations (and other claims) constitute an adverse change in his employment is entirely misplaced. In both *Wallace* and *Phillips*, the plaintiffs asserted First Amendment retaliation claims, and, in *Phillips*, the plaintiff had alleged a hostile work environment – something Henry has not alleged, and cannot allege, here.

OHS East:160136328.3                             3

for summary judgment); *Norris v. New York City Housing Auth.*, 2004 WL 1087600, at *13 n. 12 (S.D.N.Y. May 14, 2004) (same). Indeed, neither of the alleged ambiguous remarks made by Wardrop evidence a discriminatory animus towards black employees, were made in the context of any employment decision relating to Henry or any other employee; or were made close to the time when Wardrop made the employment decisions at issue here. Accordingly, Wardrop's alleged comments are "too isolated, ambiguous and attenuated" to create an inference of discrimination. *Phipps v. Comprehensive Comm. Dev. Corp.*, 2005 WL 287413, at *18-19 (S.D.N.Y. Feb. 4, 2005) (statements by supervisor that "they were all Jamaicans" and "we are having all these problems because of these people" are too vague to be considered explicitly discriminatory epithets).[4]

Similarly, the alleged discriminatory remarks attributed to Vitanza and Bracco cannot create an inference of discrimination with respect to the performance reviews issued by Wardrop (or other challenged decisions in this case) because Vitanza and Bracco did not issue the performance reviews (nor were Vitanzo or Bracco responsible for the other employment decisions at issue in this action). *See, e.g., Minton v. Lennox Hill Hosp.*, 160 F. Supp. 2d 687, 695 (S.D.N.Y. 2001) (holding that remarks

---

[3] Henry also points to his own purported statistics (Henry's Br., 16), which relate to his promotion claims, and which could not create an inference of discrimination with respect to his performance reviews. In any event, Defendants address Henry's purported statistics herein at pages 7-8.

[4] *See also Argueta v. North Shore Long Island Jewish Health System, Inc.*, 2003 WL 22670915, at *8-9 (E.D.N.Y. Nov. 6, 2003) (holding that "stray remarks are not evidence of discrimination 'if they are not temporally linked to an adverse employment action'" and granting summary judgment because stray remarks made more than five months before adverse action are insufficient to establish a nexus between the comments and the adverse action); *Sergilus v. Covenant House Under 21*, 1999 WL 717274, at *2 (S.D.N.Y. Sept. 15, 1999) (holding that comments by Haitian plaintiff's supervisor—who assisted in plaintiff's termination—that plaintiff "smelled" and that "all Haitians smelled" were not made close enough in time to plaintiff's termination to be evidence of discrimination); *Campbell v. Daytop Village, Inc.*, 1999 WL 292576, at *3 (S.D.N.Y. May 7, 1999) (supervisor's racist remarks about black people generally did not have a "nexus" to reduction in force), *aff'd* 201 F.3d 430 (2d Cir. 1999); *Balut v. Loral Electronic Systems*, 988 F. Supp. 339, 348-49 (S.D.N.Y. 1998) (supervisor's comments that plaintiff's co-worker who was the same age as plaintiff was an "older engineer with health problems" was too ambiguous and isolated to attribute age discrimination as motivating factor in plaintiff's termination decision), *aff'd* 166 F.3d 1199 (2d Cir. 1998); *O'Connor v. Viacom Inc.*, 1996 WL 194299, at *5 (S.D.N.Y. April 23, 1996) (one isolated, ambiguous remark and two racial epithets by plaintiff's superior "without a demonstrated nexus to complained of personnel actions" were insufficient to defeat summary judgment), *aff'd*,104 F.3d 356 (2d Cir. 1996).

by employees who had no role in plaintiff's termination are "irrelevant"); *Sergilus*, 1999 WL 717274, at *2 ("The fact that co-workers called Plaintiff a 'fucking Haitian' and mimicked his speech is not evidence of discrimination because these comments were not made by people who had a role in the decision to terminate plaintiff"). Moreover, because none of these alleged remarks evidenced a discriminatory animus, were made in the context of any employment decision, or were made close in time to the employment decisions at issue, they cannot create an inference of discrimination.

Further, Henry's mere denial that his overall rating as a solid performer in his 2003 performance evaluations was warranted is insufficient to meet his ultimate burden of proving discrimination. *See, e.g., Ponniah Das v. Our Lady of Mercy Med. Ctr.*, 2002 WL 826877, at *9 (S.D.N.Y. April 2002) ("The fact that an employee disagrees with an employer's evaluation of him does not prove pretext."). It is undisputed that Wardrop had received a number of complaints from Henry's co-workers and other managers about Henry's performance and that Wardrop's supervisor had to instruct Wardrop on at least two occasions in 2003 to complete projects that Henry was responsible for completing. (68) Given the deficiencies in Henry's performance, the overall rating of "3" or "solid performer" was fair and justified. *See id.* ("an employee's opinion that a performance review was unfair, . . . cannot bootstrap her claims into a Title VII claim of discrimination."). Moreover, contrary to Henry's suggestion, there is no evidence indicating that Wardrop provided Henry with inconsistent explanations for the reasons for his 2003 performance reviews.[5]

### B. The Alleged "Demotion" Claim

Henry's claim based on his alleged "demotion" to the Packaging Supervisor position must fail as a matter of law because, among other reasons as explained in Defendants' Brief, it is

---

[5] Henry's claim that the 2003 mid-year review is highly in dispute because he never received or signed it should be disregarded. If Henry never received or signed the review as he claims, then he should not be permitted to assert a claim of discrimination based on that review. In any event, Wardrop recently discovered the signed copy of the 2003 mid-year review. (Wardrop Reply Decl., Ex. 1; McQuade Reply Decl., ¶ 3).

undisputed that Henry never actually was transferred into the position, and therefore, he cannot demonstrate that he suffered any material adverse change in the terms or conditions of his employment. Henry argues in the section of his Brief addressing his retaliation claims that "it is of no import that Plaintiff never ultimately assumed the responsibilities of Packaging Supervisor, as the "materially adverse" requirement under § 2000e-3 [Title VII's anti-retaliation provision] does not require a change in the terms and conditions of employment." Henry Br., 21. Henry also cites *Burlington No. & Santa Fe R.R. Co. v. White*, 126 S. Ct. 2405 (2006), which applies to retaliation claims, not discrimination claims, Defendants' Br., 4, fn.1, and argues that he satisfies the standard annunciated in that decision. Henry's argument should be rejected because he has asserted only a discrimination claim – not a retaliation claim – based on the Packaging Supervisor position. (McQuade Decl. Ex. 1, at Ex. 4; McQuade Decl. Ex. 6).[6] Thus, whether Henry could satisfy the *Burlington* retaliation standard with respect to his alleged demotion claim is entirely irrelevant.

Moreover, even if Henry's assignment to this position actually had been carried out, Henry still could not demonstrate that the transfer materially disadvantaged the terms and conditions of his employment. Henry's conclusory statement that the transfer could possibly effect his "***future advancement opportunities***," Henry's Br., 14 (emphasis added), is insufficient to meet his burden. *Chu v. City of New York*, 2000 WL 1879851, *6 (S.D.N.Y. Dec. 27, 2000) (finding plaintiff's "conclusory testimony" that transfer would limit his promotional opportunities insufficient to demonstrate adverse employment action). Moreover, Henry's claim that the job responsibilities for the Packaging Supervisor position would have required Henry to simply "sit on an assembly line" is belied by the job description for this position Henry has submitted. (Henry Aff. Ex. 30).

Furthermore, Henry's attempt to create an inference of discrimination by pointing to his

---

[6] Nor could Henry assert a retaliation claim based on the Packaging Supervisor position because the decision to assign Henry to that position occurred in 2003, before Henry engaged in any protected activity in 2004.

OHS East:160136328.3            6

own unreliable so-called statistical evidence and anecdotal recollections is insufficient to meet the final element of his *prima facie* case. *Zenni v. Hard Rock Café Int'l, Inc.*, 903 F. Supp. 644, 654 (S.D.N.Y. 1995) (granting summary judgment, finding employee's statistical and anecdotal evidence regarding promotions "insufficient" and "unpersuasive" to establish discrimination). As an initial matter, statistical evidence alone is insufficient to prove "an inference of discrimination" as Henry purports to do. (Henry Br., 16); *Hudson v. IBM*, 620 F.2d 351, 355 (2nd Cir 1980) ("statistical proof alone cannot ordinarily establish a *prima facie* case of disparate treatment"); *Zenni*, 903 F. Supp. at 654 (finding plaintiff's statistical and anecdotal evidence "insufficient to help establish a prima facie case, insufficient to show pretext, and insufficient to demonstrate discriminatory intent."). Moreover, Henry's so-called statistical evidence is unreliable because his "statistics" are not based on such critical information as the number of employees who make up the pool of potential or actual applicants, the racial makeup of the pool of potential or actual applicants, the number of employees who actually applied for the relevant positions, the racial makeup of the actual applicants, the qualifications of the actual applicants, or that the same decision makers were involved in all of the decisions, among other vital information. Without this basic information, Henry's statistics are meaningless. *See Coser v. Moore*, 739 F.2d 746, 750 (2d Cir. 1984) (statistical analyses must take into account the relevant pools of qualified applicants); *Zahorik v. Cornell University*, 729 F.2d 85, 95 (2d Cir. 1984) (where decisions are not made by a single authority, but are highly decentralized, gross statistics are "meaningless."); *Zenni*, 903 F. Supp. at 654 (holding that statistics drawn from small samples are "untrustworthy" because "small changes in hiring may prompt dramatic statistical fluctuations"). For the same reasons, the conclusory and speculative claims by Daisy Early and Newton Paul that they believed that they had been treated unfairly because of their race adds nothing to Henry's claims, particularly because neither claims that any of the individuals who made the employment decisions that Henry complains of also had treated them unfairly. *See Wyvill v.*

OHS East:160136328.3                                                7

*United Co. Life Ins.*, 212 F.3d 296, 303 (2d Cir. 2000) ("mini-trials were not probative on issue of whether [plaintiffs] faced discrimination"); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) ("To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases.").

Finally, Henry has failed to establish his ultimate burden of proof on this claim. Henry's contention that McDermott, Schaschl, Wardrop, and Rose each gave him different reasons for the Packaging Supervisor decision is unsupported by the record, and, in any event, is irrelevant because, other than Wardrop (who selected another engineer who was black as part of the Organizational Cascade, instead of Henry) these individuals were not the individuals who made the decision not to retain Henry in his then-current position or to assign him to the Packaging Supervisor position.

### C.   The Alleged Promotion Claims

Henry has failed to present any arguments or to identify any material issues of fact that would justify the denial of summary judgment on his promotion claims.[7]

## IV.   HENRY'S RETALIATION CLAIMS SHOULD BE DISMISSED

Henry provides no meaningful response to Defendants' showing that they are entitled to summary judgment on his retaliation claim based on the Manager Manufacturing Support position, and therefore, summary judgment should be granted on that claim. In addition, Henry's reference to his 2003 performance reviews and his assignment to the Packaging Supervisor position as part of his retaliation claims should be disregarded, because he has not alleged that those claims are part of his retaliation claims either in his EEOC Charge or in his Complaint; nor could he because it is undisputed that his first complaints of discrimination occurred in 2004, after those employment

---

[7] Henry's reference to his 2004 mid-year and year-end reviews issued by Espejo, and his 2005 mid-year review and PIP issued by Katz in connection with his discrimination claims should be disregarded because Henry did not assert these as discrimination claims in his EEOC Charge or Complaint. In any event, as discussed in Section IV herein, the claims must fail as a matter of law.

decisions were made. (87). Finally, any claims based on his 2004 performance reviews should be disregarded because Henry failed to assert such claims in both his EEOC Charge and Complaint.

Henry also has failed to demonstrate that his performance evaluations or the PIP constituted a materially adverse change in the terms and conditions of his employment. Indeed, the post-*Burlington* decisions in this Circuit have confirmed that an employment evaluation generally will not constitute a material adverse change in the terms of employment absent evidence that negative consequences resulted from those evaluations. Defendants' Br., 23 (citing cases); *see also Morgan v. Masterfoods USA, Inc.*, 2006 WL 3331780, *12 (S.D. Ohio Nov. 14, 2006) (holding that lower performance evaluation was not actionable adverse action because plaintiff offered no evidence of any harm caused by alleged unfair evaluation); *Grother v. Union Pacific Railroad Co.*, 2006 WL 3030769, *4 (S.D. Tex. Oct. 23, 2006) (same). Henry has presented no evidence that these reviews limited his future advancement opportunities, and, given the fact that Henry completed the PIP and suffered no tangible job consequences as a result of either the PIP or evaluations, his claims must fail.

Henry also has failed to establish any causal connection between his alleged protected activity and the PIP or his performance reviews. Henry simply attempts to gloss over the significant time lag between his alleged protected activity and the PIP and performance reviews by arguing that the PIP and performance reviews followed his alleged protected activity.

Finally, Henry has failed to establish his ultimate burden on his retaliation claims. Henry's unsupported and conclusory statements that, in his view, his performance reviews were unwarranted because his co-workers were responsible for the deadlines he missed is insufficient to establish pretext contrary to Henry's statement. Despite Henry's conclusory self-serving allegations, it remains undisputed that on a number of occasions Espejo and Katz received complaints from others that Henry failed to meet important deadlines and failed to complete tasks in a timely manner. (106-18). Indeed, these incidents are clearly set forth in Defendants' Rule 56.1 Statement

(106-29), and Henry has failed to challenge these undisputed facts with any competent evidence. Moreover, contrary to Henry's contention, "the timing of events alone, even if sufficient to meet plaintiff's *prima facie* burden, cannot defeat summary judgment." *Vosatka v. Columbia Univ.*, 2005 WL 2044857, *10 (S.D.N.Y. Aug. 25, 2005) (citing cases). Further, Henry has presented no evidence suggesting that either Espejo or Katz (the only decision makers with respect to Henry's retaliation claims) knew of Henry's complaints of discrimination when they issued the performance reviews and the PIP, negating any inference of retaliation. *See, e.g., Long v. AT&T Info. Sys., Inc.*, 733 F. Supp. 188, 206 (S.D.N.Y. 1990) (summary judgment on retaliation claim granted where plaintiff failed to demonstrate that alleged retaliator knew of plaintiff's EEOC charge). In any event, because none of the complaints of discrimination Henry made while working at Wyeth included complaints about either Espejo or Katz, it would not be reasonable to believe that Espejo or Katz would have any motivation to retaliate against Henry.

## CONCLUSION

For the foregoing reasons, this Court should grand Defendants' motion for summary judgment and dismiss the Complaint in its entirety with prejudice.

Dated: New York, New York
December 4, 2006

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _____
Michael Delikat (MD-1165)
James H. McQuade (JM-0788)
666 Fifth Avenue
New York, New York 10103
(212) 506-5000

Attorneys for Wyeth Pharmaceuticals, a Division of Wyeth, Walter Wardrop, and Michael McDermott