Michael Delikat
James H. McQuade
ORRICK, HERRINGTON & SUTCLIFFE LLP
666 Fifth Avenue
New York, New York 10103
Telephone: (212) 506-5000

Attorneys for Defendants Wyeth Pharmaceuticals, a
Division of Wyeth, Walter Wardrop, and Michael
McDermott

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HOWARD HENRY,<br><br>         Plaintiff,<br><br>    -against-<br><br>WYETH PHARMACEUTICALS, INC.,<br>WALTER WARDROP, ANDREW<br>SCHASCHL, and MICHAEL<br>MCDERMOTT,<br><br>        Defendants. | 05 Civ. 8106 (CMM) |

## DEFENDANTS' TRIAL BRIEF

## TABLE OF CONTENTS

Page

I.    PRELIMINARY STATEMENT ..................................................................... 1

II.   SUMMARY OF PRINCIPAL FACTS........................................................... 2

   A.    No discriminatory events claimed before December 2001 .................... 2

   B.    Discrimination claims ........................................................................... 3

      1.    December 2001 – Project Engineer position ............................. 3

      2.    July 2002 – Production Coordinator position ........................... 4

      3.    April 2003 – Temporary fill-in as production coordinator ....... 4

      4.    November 2003 – Process Engineer position ............................ 4

      5.    January 2004 – Staff Engineer I position.................................. 5

      6.    2003 – performance issues......................................................... 5

      7.    December 2003 – the 2003 annual performance evaluation....... 6

      8.    December 2003 – the Organizational Cascade .......................... 6

   C.    Henry's job complaints and his first complaint of discrimination......... 7

   D.    Retaliation claims................................................................................. 10

      1.    September 2004 – Manager Manufacturing Support position................. 10

      2.    June 2005 – Performance improvement plan............................ 10

      3.    June 2005 --  Mid-year performance evaluation...................... 11

   E.    The end of Henry's employment .......................................................... 11

III.  ARGUMENT.............................................................................................. 12

   A.    Henry's discrimination claims must fail ............................................... 12

      1.    The Project Engineer position – December 2001 ..................... 14

      2.    The Production Coordinator position – July 2002 .................... 15

      3.    Filling in temporarily for DeFeciani – April 2003................... 16

      4.    The Process Engineer position – November 2003 .................... 17

      5.    The Staff Engineer I position – January 2004 .......................... 17

      6.    2003 performance evaluations ................................................. 18

      7.    The Organizational Cascade and Henry's planned reassignment........... 20

   B.    Henry's retaliation claims must also fail .............................................. 22

      1.    December 2004 – Manager Manufacturing Support position................. 23

      2.    The PIP and 2005 mid-year performance review ..................... 24

**TABLE OF CONTENTS**
(continued)

Page

C.    The events claimed to be actionable are disconnected and unrelated ................. 26

D.    The statute of limitations bars some of these claims ........................................... 27

E.    There is no basis for individual liability ................................................................ 29

F.    Henry can demonstrate no damages. ................................................................. 30

IV.    CONCLUSION ........................................................................................................ 31

## TABLE OF AUTHORITIES

**Page**

*Almonte* v. *Coca Cola Bottling Co.*,
   959 F. Supp. 569 (S.D.N.Y. 1997) ........................................................................21

*Arroyo Lopez* v. *Nuttal*,
   25 F. Supp. 2d 407 (S.D.N.Y. 1998)........................................................................30

*Bickerstaff* v. *Vassar College*,
   196 F.3d 435 (2d Cir. 1999)........................................................................18, 27

*Binder* v. *Long Island Lighting Co.*,
   847 F. Supp. 1007 (E.D.N.Y. 1994) ........................................................................30

*Burlington No. & Santa Fe R.R. Co.* v. *White*,
   126 S. Ct. 2405 (2006)........................................................................19, 24

*Butts* v. *The City of New York*,
   990 F.2d 1397 (2d Cir. 1993)........................................................................28

*Carmellino* v. *District 20*,
   2006 WL 2583019 (S.D.N.Y. Sept. 6, 2006)........................................................................19, 25

*Cerrato* v. *Durham*,
   941 F. Supp. 388 (S.D.N.Y. 1996) ........................................................................29

*Clark County Sch. Dist.* v. *Breeden*,
   532 U.S. 268, 121 S. Ct. 1508 (2001) ........................................................................23

*Cruz* v. *Coach Stores, Inc.*,
   202 F.3d 560 (2d Cir. 2000)........................................................................12

*Cunningham* v. *Consol. Edison, Inc.*,
   2006 WL 842914 (S.D.N.Y. Mar. 28, 2006) ........................................................................23

*Dominic* v. *Consolidated Edison Co.*,
   822 F.2d 1249 (2d Cir. 1987)........................................................................30

*Fairbrother* v. *Morrison*,
   412 F.3d 39 (2d Cir. 2005)........................................................................19, 21

*Francis* v. *Chem. Banking Corp.*,
   62 F. Supp. 2d 948 (E.D.N.Y. 1999), *aff'd*, 213 F.3d 626 (2d Cir. 2000) ........................16

*Galabya* v. *New York City Bd. of Educ.*,
  202 F.3d 636 (2d Cir. 2000)..............................................................................13, 19

*Harris George Strong* v. *Defense Logistics Agency*
  1987 WL 13734 (S.D.N.Y. July 8, 1987) ........................................................24

*Hills* v. *City of New York*,
  2005 WL 591130 (S.D.N.Y. Mar. 15, 2005) ..................................................21

*Hollander* v. *American Cyanamid Co.*,
  895 F.2d 80 (2d Cir. 1990)..............................................................................23

*Holt* v. *KMI-Continental, Inc.*,
  95 F.3d 123 (2d Cir. 1994)..............................................................................24

*Holtz* v. *Rockefeller & Co., Inc.*,
  258 F.3d 62 (2d Cir. 2001)..............................................................................22

*International Bhd. of Teamsters* v. *United States*,
  431 U.S. 324, 97 S. Ct. 1843 (1977)..............................................................30

*Jackson* v. *City Univ. of N.Y.*,
  2006 WL 1751247 (S.D.N.Y. June 23, 2006) ................................................25

*Johnson* v. *Al Tech Specialties Steel Corp.*,
  731 F.2d 143 (2d Cir. 1984)............................................................................30

*Johnson* v. *Palma*,
  931 F.2d 203 (2d Cir. 1991)............................................................................22

*Jones* v. *R.R. Donnelley & Sons, Co.*,
  541 U.S. 369, 124 S. Ct. 1836 (2004).............................................................27

*Kolstad* v. *American Dental Association*,
  527 U.S. 526, 119 S. Ct. 2118 (1999).............................................................30

*Langer* v. *Sec'y of Treasury*,
  2006 WL 2076577 (E.D. Wis. July 24, 2006) ................................................25

*Ledbetter* v. *Goodyear Tire & Rubber Co.*,
  127 S. Ct. 2162 (2007)....................................................................................27

*Leget* v. *Henderson*,
  2001 WL 43615 (S.D.N.Y. Jan. 18, 2001) .....................................................20

*Lumho* v. *Home Depot*,
  229 F. Supp. 2d 121 (E.D.N.Y. 2002) .............................................................20

*Malone* v. *City of New York*,
2006 WL 2524197 (S.D.N.Y. Aug. 30, 2006) ........................................................19

*McDonnell Douglas Corp.*, v. *Green*,
411 U.S. 792, 93 S. Ct. 1817 (1973)........................................................12, 13, 14

*Nat'l R.R. Passenger Corp.* v. *Morgan*,
536 U.S. 101, 122 S. Ct. 2069-73 (2002) ........................................................13, 27

*Norville* v *Staten Island Univ. Hosp.*,
196 F.3d 89 (2d Cir. 1999)........................................................12

*Oliphant* v. *Conn. Dep't of Transp.*,
2006 WL 3020890 (D. Conn. Oct. 23, 2006) ........................................................19, 24

*Padilla* v. *Metro-North Commuter R.R.*,
92 F.3d 117 (2d Cir. 1996)........................................................30

*Pena* v. *Brattleboro Retreat*,
702 F.2d 322 (2d Cir. 1983)........................................................1

*Pennington* v. *City of Huntsville*,
261 F.3d 1262 (11th Cir. 2001) ........................................................20

*Petersen* v. *Utah Dep't of Correction*,
301 F.3d 1182 (10th Cir. 2003) ........................................................24

*Petrosino* v. *Bell Atlantic*,
385 F.3d 210 (2d Cir. 2004)........................................................1

*Pronin* v. *Raffi Custom Photo Lab., Inc.*,
383 F. Supp. 2d 628 (S.D.N.Y. 2005)........................................................20

*Ragin* v. *Harry Macklowe Real Estate Co.*,
6 F.3d 898 (2d Cir. 1993)........................................................30

*Reeves* v. *Sanderson Plumbing Products Inc.*,
530 U.S. 133, 120 S. Ct. 2097 (2000)........................................................13

*Reilly* v. *Cisneros*,
835 F. Supp. 96 (W.D.N.Y. 1993)........................................................30

*Richardson* v. *N.Y. Dep't Correctional Servs.*,
180 F.3d 426 (2d Cir. 1999)........................................................19

*Rivera* v. *Baccarat, Inc.*,
10 F. Supp. 2d 318 (S.D.N.Y. 1998)........................................................30

*Sanders* v. *New York City Human Res. Adm.*,
    361 F.3d 749 (2d Cir. 2004)................................................................13

*Saulpaugh* v. *Monroe Community Hosp.*,
    4 F.3d 134 (2d Cir. 1991)................................................................30

*Shider* v. *Com. Workers of Am.*,
    2004 WL 613093 (S.D.N.Y. Mar. 29, 2004),
    *aff'd*, 2005 WL 265007 (2d Cir. Oct. 18, 2005)................................12

*Smart* v. *Ball State Univ.*,
    89 F.3d 437 (7th Cir. 1996) ..........................................................13, 19

*St. Mary's Honor Center* v. *Hicks*,
    509 U.S. 502, 113 S. Ct. 2742 (1993)...........................................12, 13

*Sunderam* v. *Brookhaven National Laboratories*,
    424 F. Supp. 2d 545 (E.D.N.Y. 2006) ..............................................28

*Texas Dep't of Cmty. Affairs* v. *Burdine*,
    450 U.S. 248, 101 S. Ct. 1089 (1981) ..............................................13

*Van Zant* v. *K.L.M. Royal Dutch Airlines*,
    80 F.3d 708 (2d Cir. 1996)................................................................28

*Warren* v. *North Shore Univ. Hosp.*,
    2006 WL 2844259 (E.D.N.Y. Sept. 29, 2006) ................................24

*Wayne* v. *Principli*,
    2004 WL 389009 (S.D.N.Y. Mar. 3, 2004) ................................20, 23

*Weeks* v. *New York State*,
    273 F.3d 76 (2d Cir. 2001)................................................................13

*Whidbee* v. *Gazarelli Food Specialties, Inc.*,
    223 F.3d 62 (2d Cir. 2000)................................................................29

*Williams* v. *R.H. Donnelly Corp.*,
    368 F.3d 123 (2d Cir. 2004)..............................................................21

## STATUTES AND REGULATIONS

28 U.S.C.
   § 1658............................................................................................................................27

42 U.S.C.
   § 1981 ..............................................................................................1, 12, 27, 28, 30
   § 1981a.........................................................................................................................30
   § 1981a(b)(3) ..............................................................................................................30
   § 2000e *et seq.*............................................................................................................1
   42 U.S.C. § 2000e-5(e) ......................................................................................28, 30

N.Y. Exec. Law
   § 290 *et seq.* ...............................................................................................................1
   § 290.1(a) .....................................................................................................................30

N.Y. CPLR
   § 214(2)........................................................................................................................28

OHS East:160277252.1
6390-258

## I.    PRELIMINARY STATEMENT.

This action arises out of events allegedly occurring during the employment of Plaintiff HOWARD HENRY ("Henry") by Defendant WYETH PHARMACEUTICALS, A DIVISION OF WYETH ("Wyeth") at Wyeth's manufacturing facility in Pearl River, Rockland County, New York.  Henry sues Wyeth, Defendant WALTER WARDROP ("Wardrop"), one of his former supervisors at Wyeth, and Defendant MICHAEL MCDERMOTT ("McDermott"), the former Site Managing Director of Wyeth's Pearl River facility.[1]  Henry's claims are that Wyeth discriminated against him because of his race or color by denying him certain promotions, giving him "negative" performance evaluations, and assigning him in a corporate reorganization to a position he did not want, and, subsequently, that Wyeth retaliated against him by denying him later promotions, giving him further "negative" performance evaluations, and placing him on a remedial performance program because he had made a complaint of racial discrimination in early 2004.  Henry claims that these acts were in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*) ("Title VII"), the Civil Rights Act of 1866 (42 U.S.C. § 1981) ("Section 1981") and the New York State Human Rights Law (Exec. Law § 290 *et seq.*).[2]

---

[1] Andrew Sshaschl, whose name remains in the caption as a defendant, was dismissed from this action as a party defendant by Stipulation and Order entered herein on February 8, 2006.

[2] There is no claim for wrongful discharge in the Complaint, nor has Plaintiff asserted that his employment was wrongfully terminated in his response to Defendants' pending motion for summary judgment.  It is undisputed that Plaintiff left his employment voluntarily by failing or refusing either to return to work or to submit medical documentation justifying his continued absence.  If Plaintiff were attempting to assert a claim for constructive discharge, which he has taken no steps to do, he would have to prove that Wyeth, "rather than acting directly, 'deliberately [made his] working conditions so intolerable that [he was] forced into an involuntary resignation;'" and that his "'working conditions would have been so difficult or unpleasant that a reasonable person in [his] shoes would have felt compelled to resign.'"  *Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir. 1983) (citations omitted).  The facts here simply do not support such a claim, and Henry could not prove either the requisite intent by Wyeth or the necessary intolerable level of work conditions.  *See Petrosino v. Bell Atlantic*, 385 F.3d 210, 229-32 (2d Cir. 2004).

In addition, Henry claims that Wardrop and McDermott each individually violated the New York State Human Rights Law by aiding and abetting the discrimination and retaliation committed by Wyeth.

All of these claims fail in their entirety.

The evidence will show that the events claimed to constitute the alleged incidents of discrimination and retaliation were discrete acts and single occurrences taking place at specific, separated times, involving particular and unique circumstances and distinct decision-makers, and having no overlapping cast of participants in common. The evidence will further demonstrate that Henry at no time during his employment received a "negative" annual performance evaluation, and that all of his annual evaluations rated him as at least "satisfactory" or "meets expectations." The evidence will further demonstrate that Wyeth had legitimate, non-discriminatory, non-retaliatory business reasons for all of its employment decisions concerning Henry, and that there is no basis to infer that any of those decisions were made because of Henry's race or color, or because he had engaged in any protected activity. There will, in addition, be no evidence that either Wardrop or McDermott participated in any racially discriminatory or retaliatory act against Henry.

Hence, Henry will not be able to meet his burden to prove discrimination or retaliation under any of the statutes he invokes, and judgment must be for the Defendants.

## II.    SUMMARY OF PRINCIPAL FACTS.

### A.    No discriminatory events claimed before December 2001.

Henry began his continuous employment with Wyeth in 1993 and was employed until February 6, 2006. He began at Wyeth as a Chemist, at salary level 4, was promoted in 1997 to Science II Chemist at salary level 7, and was further promoted to Production Engineer at salary

level 9 in August 2000. In August 2000, effective with his promotion, Henry began reporting to Walter Wardrop.

Prior to 2002, all of Henry's performance evaluations rated him at the mid-point or higher in the applicable scale. Hence, for 1993, 1994 and 1995 Henry's overall performance rating was "Quality Performance," the midpoint of the scale; for 1996 and 1997, it was "At Expectations," also the midpoint of the scale in use then; for 1998, Henry's overall rating was "Exceeds Expectations," the fourth step on an ascending scale of 5; and for 1999 and 2000, Henry's overall rating was "At Expectations" and "Solid Performer," respectively, in each case the midpoint on a scale of five. Wardrop participated in Henry's evaluation for the first time for the 2000 review. Wardrop then gave Henry his performance evaluations for 2001 and 2002, for each of which years Wardrop rated him at "Exceeds Expectations," the fourth step on an ascending scale of five. Henry makes no claim that any of his pre-Wardrop evaluations were discriminatory or retaliatory, and he believed his 2000, 2001 and 2002 evaluations by Wardrop were "extremely positive" and makes no claim of discrimination or retaliation about them.

**B.    Discrimination claims**

Henry's claims of discrimination begin in December 2001 and concern the following discrete incidents:

**1.    December 2001 – Project Engineer position.**

In December 2001, Henry applied for the position of Project Engineer. The hiring manager for the position was Kevin Costello. Neither Wardrop nor McDermott was involved in the hiring decision. There were several candidates for the position, and Costello hired Cara Muscolo because he believed she was the most qualified candidate. Henry admits that Muscolo was qualified for the position. Indeed, Henry did not believe at the time that his race or color were reasons he was not selected for this position.

3

### 2. July 2002 – Production Coordinator position.

In July 2002, Henry applied for a position as Production Coordinator. The position was to report to Andrew Schaschl, who made the hiring decision. Neither Wardrop nor McDermott was involved in the hiring decision. Schaschl considered several candidates for the position and hired Chris DeFeciani because he believed DeFeciani was the most qualified candidate for the position. Henry admits that DeFeciani was qualified for the position. Henry did not believe at the time that race or color was a factor in the selection of DeFeciani for this position.

### 3. April 2003 – Temporary fill-in as production coordinator.

In April 2003, DeFeciani took a medical leave and Schaschl asked Richard Morgan to perform DeFeciani's responsibilities temporarily until DeFeciani returned. The decision was made by Schaschl; neither Wardrop nor McDermott was involved in it. Morgan had filled in for DeFeciani in the past and had higher overall performance ratings than Henry. When he learned about it, Henry asked why he had not been asked to fill in for DeFeciani in the past, but Henry had not asked to fill in for DeFeciani. Henry does not dispute that Morgan was qualified to perform the duties. Henry admits that he has no basis to believe that he was not asked to fill in for DeFeciani because of race or color.

### 4. November 2003 – Process Engineer position.

In November 2003, Henry applied for a Process Engineer position in the Vaccines Division. The Vaccines Division was a separate and distinct division from the divisions in which Henry had applied for positions in the past. The hiring decision for the Process Engineer position was made by Kirit Rokad, then Associate Director of Manufacturing Engineering. Neither Wardrop nor McDermott was involved in this hiring decision. There were several applicants for the position, and Henry was interviewed. Rokad hired Angel Montanez for the position because he believed Montanez was the most qualified candidate. Montanez had worked

4

in the Vaccines Division in the past; Henry had not.  Moreover, Montanez had substantial experience in aseptic processing, which Henry did not have.  Montanez's educational experience was also at a more advanced level than Henry's.  Henry admits that he does not believe he was denied the Process Engineer position because of his race or color.

### 5.     January 2004 – Staff Engineer I position.

In January 2004, Henry applied for a position as Staff Engineer I in the Bioprocess Department.  That department was a department in the research division of Wyeth, and it was in a different division from the positions Henry had earlier applied for.  The hiring manager for the position was John Simpson, who made the decision.  Neither Wardrop nor McDermott was involved in this hiring decision.  Simpson was seeking either an individual with a Ph.D. in chemical engineering, or someone with a less advanced chemical engineering degree and substantial experience in bioprocess downstream operations.  There were a number of applicants, including Henry.  Simpson selected Beelin Cheang, who had a Ph.D. in chemical engineering.  Henry did not have a Ph.D. in chemical engineering, nor did he have substantial experience in bioprocess development.  Cheang ultimately declined the position in June 2004, and Simpson then hired James Patch, who accepted it in December 2004 and who had a Ph.D. in chemical and biological engineering.  Henry admits that he was not denied the Staff Engineer I position because of his race or color.

### 6.     2003 – performance issues.

Wardrop gave Henry his mid-year 2003 performance review on September 3, 2003, reflecting his belief that Henry's performance had slipped in 2003 and complaints he had received from Henry's co-workers and other managers that Henry was not getting work done on time and needed excessive follow-up and intervention from managers to complete tasks.  The September 3, 2003 review also contained positive comments on Henry's performance and

directions for improvement, and Wardrop gave Henry an overall evaluation of "Solid Performer." Thereafter, Henry failed to comply with Wardrop's written direction to provide Wardrop by October 1, 2003, with his Self Appraisal for the 2003 annual performance review, and Henry did not turn in the Self-Appraisal until January 5, 2004, months after the 2003 annual performance reviews were scheduled to be, and were, completed. McDermott was not involved in Henry's mid-year 2003 performance evaluation.

### 7.    December 2003 – the 2003 annual performance evaluation.

On December 17, 2003, Wardrop gave Henry his 2003 annual performance evaluation, which had been formulated and assigned at a meeting of Wardrop and other managers on October 10, 2003. The 2003 annual evaluation, containing both positive and critical comments, gave Henry an overall rating of "Solid Performer," the mid-point on a scale of 5. Henry was unhappy with the evaluation and believed he should have been rated a 5, the highest rating. The 2003 annual evaluation had been completed without the benefit of Henry's Self-Appraisal, because Henry had failed to turn it in on time. McDermott was not involved in Henry's 2003 annual evaluation.

### 8.    December 2003 – the Organizational Cascade.

In his meeting with Henry on December 17, 2003, Wardrop also informed Henry of his assignment as a result of the Organizational Cascade. The Organizational Cascade was a massive restructuring of Wyeth's Pearl River organization, developed in 2003, in which everyone was removed from his or her position and placed in a pool, and the new organizational structure was then filled from the top down from the pool. The objective was to find the best match between individual skills and position requirements, to recognize individual performance, and to provide potential development opportunity for each individual. McDermott, as Site Managing Director at the time, a position he left in February 2004, was responsible for selecting

the individuals to fill the small number of high-level Director positions, and for giving final, administrative approval over the entire re-assignment plan at the end of the process. Otherwise, he had no detailed involvement in the process. At Henry's level, which was below the level of associate directors and managers, the positions in the new organization were filled by group meetings of associate directors and managers. In the Organizational Cascade, Wardrop was assigned to a new position and no longer had direct supervisory authority over Henry. In his new position, Wardrop was authorized to hire an engineer to report to him and hired Jean Colas, a black person. Also as part of the reorganization, Andrew Espejo was appointed to the position of Associate Director of Manufacturing for Centrum operations, and Henry was selected to fill a position as Packaging Supervisor, reporting to Espejo. The assignment of the Packaging Supervisor position was with no change in salary or grade for Henry and was a transfer at the same level of the organization. Henry was given the Packaging Supervisor assignment because it would give him direct supervisory authority over a number of employees and his managers believed it would be a developmental opportunity for him.

### C. Henry's job complaints and his first complaint of discrimination.

In January and February 2004, Henry sought and received a series of meetings with managers to talk about his job complaints.

Henry met with Wardrop again on January 6, 2004, about his 2003 annual performance evaluation and his assignment to the Packaging Supervision position in the Organizational Cascade. At this meeting, Henry finally turned in his Self-Appraisal, which had been due the prior October 1. Following the meeting, and after reading Henry's Self-Appraisal, Wardrop decided to change some of the wording in the 2003 annual performance review, but not the overall rating of "Solid Performer."

On January 9, 2004, Henry met with Schaschl about the same subjects, and Schaschl told him he believed the new assignment would be a good developmental opportunity for Henry but also said he had had problems with Henry's job performance.

On January 12, 2004, Henry met with Joanne Rose, Associate Director of Human Resources, about the same subjects, and Rose also told him she believed the Packaging Supervisor position was a good developmental opportunity, and she recommended she and Henry meet with Wardrop to see if the language of the 2003 annual evaluation could be changed, but she told Henry the overall rating would remain the same.

On January 13, 2004, Henry had his first meeting with McDermott about his performance evaluation and the new assignment. McDermott also told him that the Packaging Supervision position was a good developmental opportunity and noted that he, McDermott, had himself started his career at Wyeth in the packaging department. McDermott also reviewed Henry's three most recent annual performance evaluations and concluded they were fair and reasonable.

On January 16, 2004, Rose and Wardrop met with Henry, giving him an amended 2003 annual performance evaluation, which Henry refused to sign. Rose invited him, if he were still unhappy, to submit a written rebuttal to his review, which would be included in it, but Henry never did that. Rose also had been looking for other openings which might be suitable for Henry, and she asked Henry for a resume so that she could continue these efforts, but Henry refused her help.

On January 22, 2004, Henry met for a second time with McDermott, and at this meeting he made a vague comment about his race, to which McDermott responded that Pearl River was a very diverse site and that if there were any issues about diversity, he would want to know about

them. McDermott did not at this point understand Henry to be making a complaint about racial discrimination, and Henry had not made any such complaint prior to that time.

On January 26, 2004, Henry met with Peter Bigelow, then Senior Vice President of the Wyeth Consumer Healthcare Operating Unit, about his 2003 annual review and the Packaging Supervisor position. In that meeting, Henry told Bigelow he wanted to remain in his current position. Bigelow then conferred with Schaschl and McDermott, who reported that Henry's performance was mixed, and he decided to delay Henry's transfer to the Packaging Supervisor position until he could review Henry's performance evaluations and speak to Henry again.

On February 16, 2004, Henry sent Bigelow an e-mail, referring to a conversation with Bigelow he said had occurred on February 11, 2004, in which he said he had accused Wardrop, Schaschl and McDermott of racial discrimination, and adding Joanne Rose to the list of those who had participated in the discrimination. *This was the first complaint of racial discrimination Henry made.* Bigelow then caused an investigation of Henry's discrimination complaint to be initiated by Wyeth's corporate human resources department, which assigned Eugene Sacket, who interviewed a number of people, including Henry, and concluded on or about April 7, 2004, that there was no evidence of racial discrimination.

On February 25, 2004, Bigelow advised Henry that he had reviewed Henry's prior performance evaluations and found them to be clear and objective.

On April 21, 2004, Bigelow met with Henry and proposed two alternative positions for Henry, the Packaging Supervisor position assigned in the Organizational Cascade, or a Senior Validation Specialist position in the Vaccines Division. Henry rejected both and suggested he be transferred laterally to the position of Consumer Health Project Engineer. He never bid on that position, never applied for it and never spoke to the hiring manager about it. Ultimately,

Bigelow decided to permit Henry to remain in his position as Production Engineer. Henry, therefore, was never actually placed in the Packaging Supervisor position.

**D.    Retaliation claims.**

    **1.    September 2004 – Manager Manufacturing Support position.**

In September 2004, Henry applied for a new position as Manager Manufacturing Support, which was to report directly to Espejo. The position was rated at more than two grade levels above Henry's current position. There were nearly thirty applicants, and ten, including Henry, were interviewed by a panel of four managers using a list of predetermined questions based upon job requirements and candidate skills and awarding a numerical score in eight different categories. Max Katz received the highest score and outranked Henry in every category. Espejo hired Katz on the unanimous recommendation of the interview panel.[3]

    **2.    June 2005 – Performance improvement plan.**

On January 12, 2005, Espejo gave Henry his 2004 annual performance evaluation, which gave Henry the overall rating of 3, identified as "On Target" and "Skilled", the midpoint on a scale of five. The review noted strengths and accomplishments, but it also cited areas needing improvement, particularly timeliness of performance, with which Espejo had had problems, and about which he had received complaints about Henry from other managers.

In January 2005, Katz became Henry's direct supervisor and had problems with Henry's performance from the start. Katz received complaints from other managers about delays by Henry, found that Henry failed to communicate with him, was difficult to reach and was frequently absent from work or failed to provide adequate notice of absence. Henry also failed,

---

[3] On or about September 24, 2004, Henry filed his initial charge of racial discrimination with the New York State Division of Human Rights. This initial charge contained no claim of retaliation. Henry filed a second charge of discrimination against Wyeth on or about October 18, 2005, asserting claims of retaliation for the first time, and concerning events occurring after November 30, 2004.

among other timely performance problems, to comply with directions from Espejo to make timely submissions of Weekly Maintenance Zone Checklists, which led to a formal compliance investigation and formal event report required by the FDA, and Henry also failed to complete Preventive Maintenance Order Reviews on time, which also had regulatory compliance consequences. As a result of these performance problems, Katz placed Henry on a formal Performance Improvement Program ("PIP") on June 24, 2005. Henry was advised that the PIP was not a disciplinary tool, but a remedial measure to encourage corrective action and improved performance. Henry's performance improved after he was placed on the PIP, and he was removed from it on July 25, 2005.

### 3.    June 2005 -- Mid-year performance evaluation.

Also on June 24, 2005, Katz gave Henry his mid-year 2005 performance evaluation. The evaluation provided feedback to Henry in 25 categories and rated him "on pace" in eleven categories, "behind pace" in nine categories, and "unacceptable" in five categories. The review reflected Katz's honest opinions of Henry's actual performance to date and was critical of Henry for missing deadlines and failing to complete projects.

### E.    The end of Henry's employment.

On August 5, 2005, Henry took a medical leave of absence and did not return to work thereafter. On January 10, 2006, Wyeth advised Henry he needed to furnish medical documentation within a reasonable and defined period or he would removed from employment effective February 6, 2006. He did not furnish such documentation and was removed from the employment rolls effective February 6, 2006, in accordance with Wyeth policy. He admits that he chose not to submit the requested documentation because he did not wish to return to work.

### III.    ARGUMENT.

#### A.    Henry's discrimination claims must fail.

There will be no direct evidence of racial discrimination against Henry.   Hence, these discrimination claims brought under Title VII, Section 1981 and the New York State Human Rights Law are all analyzed under the same legal framework established by the Supreme Court in *McDonnell Douglas Corp., v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973).   *See Norville v Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999); *Shider v. Com. Workers of Am.*, 2004 WL 613093, at *4 (S.D.N.Y. Mar. 29, 2004), *aff'd*, 2005 WL 265007 (2d Cir. Oct. 18, 2005). This framework provides for a three-part analysis, with the burden of production shifting between the plaintiff and the defendant, but with the ultimate burden of proof always resting upon the plaintiff.   *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507, 113 S. Ct. 2742, 2747 (1993).

First, the plaintiff has the burden of proving, by a preponderance of the evidence, a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824.

In cases involving discriminatory failure to promote, such as the instant case, the plaintiff must prove the following in order to establish a *prima facie* case:   (1) that he is in a protected group; (2) that he satisfactorily performed the duties of his position; (3) that he applied for and was denied a promotion to a position for which he was qualified; and (4) that the denial occurred under circumstances giving rise to an inference of discrimination based upon the plaintiff's membership in the protected class. *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 (2d Cir. 2000).

Where the claim is that a performance evaluation was actionable discrimination, the plaintiff's *prima facie* burden is to prove by a preponderance of the evidence: (1) that he was in a protected group; (2) that he satisfactorily performed the duties of his position; (3) that he endured

a materially adverse change in the terms and conditions of employment by reason of the evaluation; and (4) that the materially adverse change in terms and conditions of employment occurred under circumstances giving rise to an inference of discrimination based upon the plaintiff's membership in the protected class. *See Sanders v. New York City Human Res. Adm.*, 361 F.3d 749, 755-56 (2d Cir. 2004); *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000); *Weeks v. New York State*, 273 F.3d 76, 84-86 (2d Cir. 2001), *abrogated on other grounds* by *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 108-14, 122 S. Ct. 2069-73 (2002); *Smart v. Ball State Univ.*, 89 F.3d 437, 442-43 (7th Cir. 1996).

In either case, whether with regard to promotions or performance evaluations, if the plaintiff succeeds in proving a *prima facie* case by a preponderance of the evidence, then the burden of production shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for its actions. *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824. This burden is a relatively light one and is met when the defendant proffers a lawful reason for its actions. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256-58, 101 S. Ct. 1089, 1095-96 (1981).

Once the defendant succeeds in articulating such a legitimate nondiscriminatory reason, the plaintiff, in order to prevail, must prove by a preponderance of the evidence that the defendant's articulated reason(s) was a pretext for discrimination – a false reason or cover-up for its intentional discrimination because of race or color. *Hicks*, 509 U.S. at 507-08, 113 S. Ct. at 2747-48; *McDonnell Douglas*, 411 U.S. at 804-05, 93 S. Ct. at 1825-26. At all times, the plaintiff retains the ultimate burden to prove by a preponderance of the evidence that the defendant intentionally discriminated against him because of his race or color. *Reeves v. Sanderson Plumbing Products Inc.*, 530 U.S. 133, 142-43, 120 S. Ct. 2097, 2106 (2000); *Hicks*,

509 U.S. at 507, 113 S. Ct. at 2747; *McDonnell Douglas*, 411 U.S. at 804-05, 93 S. Ct. at 1825-26.

Under these standards, Henry cannot carry his burden of proof with respect to any of his discrimination claims.

### 1.    The Project Engineer position – December 2001.

There is no claim of discrimination by Henry concerning any event prior to his failure to obtain the Project Engineer position in December 2001. There is, moreover, simply no evidence probative of racial discrimination prior to that time. Nor can Henry prove that the Project Engineer decision in December 2001 was racially discriminatory. There is simply no evidence that he was not selected for this position under circumstances giving rise to an inference of discrimination – the necessary fourth element of the *prima facie* case he must prove by a preponderance of the evidence. Even if there were such evidence, Wyeth's responsive evidence, which will be that the hiring manager, Kevin Costello, hired Cara Muscolo for the position because he believed she was the most qualified candidate, is sufficient to carry Wyeth's burden to articulate a legitimate, non-discriminatory reason for the decision. Moreover, the evidence will show that Costello knew Muscolo, that he had worked with her, that they had worked well together, and that Muscolo had significant experience in the packaging area, which Costello was looking for in the candidates. The evidence will also show that Henry had no packaging experience, and that Costello believed Henry had difficulties doing more than one thing at once and that his overall job performance was not exceptional. Henry has already admitted that Muscolo was qualified for the position, and that he has no basis for believing that he was not selected for the position because of his race or color. Under these circumstances, there is no evidence to suggest that Costello's reasons for selecting Muscolo were a pretext for racial

discrimination, and Henry could not possibly carry his ultimate burden to prove that he was intentionally denied this position because of his race or color.

## 2. The Production Coordinator position – July 2002.

For the same reasons, Henry cannot prove that the Production Coordinator decision in July 2002 was racially discriminatory. There is no evidence that he was not selected for this position under circumstances giving rise to an inference of discrimination, so he cannot meet his burden to prove a *prima facie* case. The evidence will show that this decision was made by Andrew Schaschl, and that Schaschl hired Chris DeFeciani for this position because he believed DeFeciani had excellent multi-tasking skills, a very good cross-functional background, and excellent knowledge of manufacturing operations, all of which Schaschl believed were critical job requirements. The evidence will also show that DeFeciani had received the highest overall performance ratings available for the prior three years. The evidence will further show that Schaschl did not believe Henry had the breadth of knowledge and experience in manufacturing operations that DeFeciani had, and that Henry had difficulties multi-tasking, and the record will demonstrate that Henry's performance reviews were not as strong as DeFeciani's. Under these circumstances, Wyeth clearly meets its burden to articulate legitimate, non-discriminatory reasons for its decision to hire DeFeciani instead of Henry, and there is no evidence to suggest that these reasons were false or not concluded in good faith. In addition, Henry has admitted that he has no reason to believe that DeFeciani was unqualified for this position and that he has no basis to believe he was not selected for this position because of his race or color. Under these circumstances, it is clear that Henry cannot meet his ultimate burden to prove by a preponderance of the evidence that he was denied this position because of his race or color.

### 3.    Filling in temporarily for DeFeciani – April 2003.

This incident must fail to ground a claim of discrimination for several reasons. First, Henry will be unable to demonstrate that there was any open position here. Schaschl merely asked another employee to fill in for DeFeciani during the latter's temporary medical leave. Nor will there be any evidence that Henry sought this temporary fill-in position at the time. Thus, Henry will be unable to prove the third element of a *prima facie* case, that he applied for and was denied an *available* position. *See, e.g., Francis v. Chem. Banking Corp.*, 62 F. Supp 2d 948, 960 (E.D.N.Y. 1999) ("a plaintiff must 'allege that she or he applied for a specific position or positions and was rejected therefrom'"), *aff'd*, 213 F.3d 626 (2d Cir. 2000). In addition, Henry cannot demonstrate that Schaschl's request to someone else, not Henry, to fill-in temporarily in this position occurred under circumstances giving rise to an inference of discrimination, the necessary fourth element of a *prima facie* case. There is no such evidence. Even if there were, Wyeth's evidence will show that Schaschl asked Richard Morgan to take on the temporary responsibilities because Morgan had been performing them during DeFeciani's routine absences from work, and that Morgan had received the highest overall performance ratings available for at least the last three years. Henry had not earlier filled in for DeFeciani, and his performance evaluations were not as strong as Morgan's. Under these circumstances, Wyeth more than meets its burden to articulate legitimate, non-discriminatory reasons for its actions. No evidence suggests that these reasons are false and a pretext for unlawful discrimination. Moreover, Henry has admitted that DeFeciani was qualified to perform these duties and that he has no basis to believe that he was not asked to fill in for DeFeciani because of his race or color. Thus, Henry cannot meet his ultimate burden to prove by a preponderance of the evidence that he was not asked to fill in temporarily in this position because of his race or color.

### 4.    The Process Engineer position – November 2003.

Again, there will be no evidence that Henry was denied this position under circumstances giving rise to an inference of racial discrimination, and so Henry will be unable to prove an indispensable element of a *prima facie* case. The evidence will show that the hiring decision for this position was made by Kirit Rokad, and that the position was in the Vaccines Division, a division in which Henry had never worked or applied for an opening before. Wyeth's evidence, more than sufficient to meet its burden to articulate a reasonable, non-discriminatory reason for its decision, will show that Rokad hired Angel Montanez because Montanez had worked for the Vaccines Division in the past, because Montanez had significant experience with aseptic processing, which was important for the job, because Montanez was working toward a master's degree in chemical engineering, and because he believed Montanez was the most qualified of the candidates. The evidence will further show that Henry did not have comparable experience with aseptic processing and was not working on a master's degree at that time. Moreover, Henry has admitted that he did not believe at the time and does not believe now that he was denied this position because of his race or color. Under these circumstances, Henry could not meet his ultimate burden to prove by a preponderance of the evidence that he was denied this position because of his race or color.

### 5.    The Staff Engineer I position – January 2004.

Henry's discrimination claim with respect to this opening must fail for the same reasons as the others. There will be no evidence that Henry was denied this position under circumstances giving rise to an inference of unlawful discrimination. Hence, Henry will not be able to establish a *prima facie* case concerning this opening. Even if he could, the evidence will show that this position was in the Bioprocess Department, where Henry had no experience, and that it was under John Simpson, who was seeking to hire someone with either a Ph.D. in chemical

engineering or a less advanced degree in chemical engineering but with extensive experience in bioprocess downstream operations. Henry did not meet these qualifications, and Simpson offered the job to two people, the first of whom turned it down, but both of whom had Ph.D's in chemical engineering. Wyeth, therefore, meets its burden to articulate a legitimate, non-discriminatory reason for these decisions. Moreover, Henry has no admissible evidence, just his own tentative, subjective speculation, that he did not receive this position because of his race. Such subjective speculation does not constitute evidence of discrimination. *See Bickerstaff v. Vassar College*, 196 F.3d 435, 448, 452, 456 (2d Cir. 1999) (an inference of discrimination is not a suspicion or a guess; it is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that is known to exist; and: a plaintiff's "feelings and perceptions" of being discriminated against are not evidence of discrimination). Hence, Henry is unable to meet his ultimate burden to prove by a preponderance of the evidence that he was denied this position because of his race or color.

### 6.    2003 performance evaluations.

As noted above, to prove a performance evaluation gives rise to an actionable claim of racial discrimination, the plaintiff, as essential elements of his *prima facie* case, must prove by a preponderance of the evidence both that he experienced a materially adverse change in the terms and conditions of employment by reason of the evaluation and that the materially adverse change in terms and conditions of employment occurred under circumstances giving rise to an inference of racial discrimination. Henry cannot satisfy these requirements with respect either to his September 3, 2003 mid-year review or his December 17, 2003 annual review.

The evidence will demonstrate that both reviews, given by Wardrop, gave Henry an overall positive rating. To be sure, both reviews set forth critical comments about Henry's job performance and noted items for improvement, but the mid-year review nevertheless accorded

18

Henry the overall rating of "Solid Performer," and the year-end review likewise gave him the overall rating of "Solid Performer," which, at the time, was the mid-point on a scale of five. The review form itself indicated that the midpoint rating meant that the employee was "on target," meeting objective, responsibilities, and expectations, and that the employee was "skilled," frequently demonstrating most of Wyeth's values. These ratings were consistent with Henry's ratings for the eight previous years, in six of which he had received the same overall assessment, rising only one step to the fourth level of a five-step scale only in the two prior years.

Under no circumstances can these reviews rationally be construed as "negative," let alone a "materially adverse change in terms or conditions of employment." "To be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities [and it may] be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices * * * unique to a particular position." *Galabya, supra*, 202 F.3d at 640.[4] The fact that Henry's reviews contained job criticism and direction for improvement does not render them "materially adverse changes."[5] Moreover, there is no evidence that these evaluations were issued under circumstances giving rise to an inference of racial discrimination. Henry, therefore, cannot meet his burden to prove a *prima facie* case with respect to the 2003 evaluations.

---

[4] The Supreme Court's recent decision in *Burlington No. & Santa Fe R.R. Co. v. White*, 126 S. Ct. 2405, 2415 (2006), applies only in the context of Title VII retaliation claims, not discrimination claims. *See Carmellino v. District 20*, 2006 WL 2583019, at *5 (S.D.N.Y. Sept. 6, 2006); *Malone v. City of New York*, 2006 WL 2524197, at *7 (S.D.N.Y. Aug. 30, 2006).

[5] *See Oliphant v. Conn. Dep't of Transp.*, 2006 WL 3020890, at *5 (D. Conn. Oct. 23, 2006) (counseling letters, negative evaluations and workplace reprimands are not disruptive enough to rise to the level of "adverse employment actions"); *Carmellino, supra*, 2006 WL 2583019, at 3 (same); *Richardson v. N.Y. Dep't Correctional Servs.*, 180 F.3d 426, 443-44 (2d Cir. 1999) (two reviews characterizing performance as "average" rather than "excellent" not materially adverse employment actions); *Fairbrother v. Morrison*, 412 F.3d 39, 55-56 (2d Cir. 2005) ("unsatisfactory" evaluation not an adverse employment action); *Smart, supra*, 89 F.3d at 442 (negative evaluations alone do not constitute adverse employment action for purposes of *prima facie* case).

Even if Henry could prove a *prima facie* case of evaluation discrimination, Wyeth's evidence of legitimate business reasons would be more than sufficient to rebut it. The evidence will show that Wardrop had received a number of complaints in 2003 about Henry's tardiness in completing tasks and difficulty in meeting deadlines, and there is no dispute that Henry failed to turn in his 2003 Self Appraisal until long after the deadline given to him. There is no evidence to suggest that these reasons were false or a pretext for racial discrimination. In fact, Wardrop had hired Henry into his then present position in 2000 and had been the supervisor who had given him higher overall performance ratings for 2001 and 2002,[6] and, as noted, the 2003 evaluations were fully consistent with Henry's overall history as an average employee throughout his tenure with Wyeth to that point. There is certainly nothing but Henry's subjective opinion to warrant the contention that he should have received a "5", the highest rating, for 2003. Under these circumstances, Henry could not meet his ultimate burden to prove by a preponderance of the evidence that the 2003 evaluations were motivated by racial discrimination.

### 7. The Organizational Cascade and Henry's planned reassignment.

Henry's claim that his projected reassignment to the position of Packaging Supervisor was racially discriminatory must fail for the same reasons his performance evaluation claims are defective. First, he cannot prove a *prima facie* case because he cannot demonstrate a materially adverse employment action. In fact, the proposed transfer never actually occurred.[7] In addition,

---

[6] *See, e.g., Pronin v. Raffi Custom Photo Lab., Inc.*, 383 F. Supp. 2d 628, 639 (S.D.N.Y. 2005) ("same actor" inference undermines claim of discrimination, especially when decisions were made within two years); *Wayne v. Principli*, 2004 WL 389009, at *12 (S.D.N.Y. Mar. 3, 2004) (manager firing plaintiff less than two years after hiring "strongly suggests that discrimination was not a motivating factor in his decision); *Wolde-Meskel v. Argus Commc'n, Inc.*, 2001 WL 883648, at *6 (S.D.N.Y. Aug. 7, 2001) (involvement of alleged wrongdoer in positive action on behalf of plaintiff "not only fails to give rise to but in fact detracts from an otherwise supportable inference of discrimination).

[7] *See, e.g., Pennington v. City of Huntsville*, 261 F.3d 1262, 1267-68 (11th Cir. 2001) (rescinded decision before tangible harm incurred is not an adverse employment action); *Leget v. Henderson*, 2001 WL 43615, at *6 (S.D.N.Y. Jan. 18, 2001) (same); *Lumho v. Home Depot*, 229 F. Supp. 2d 121 (E.D.N.Y. 2002) (employee wrongfully terminated and unemployed for three weeks reinstated with full back compensation did not experience adverse

it would have been a lateral move; not a demotion.[8]  Second, Henry cannot demonstrate that the proposed transfer was arrived at under circumstances giving rise to an inference of racial discrimination.    The proposed assignment was generated by a process of corporate reorganization in which everyone at Pearl River was reassigned based upon job requirements, individual skills and developmental prospects.  There is no evidence that Henry was singled out in any way, or that race was in any way involved in these decisions.    The corporate reorganization, or Organizational Cascade, and reassignment of personnel based upon its criteria are also more than sufficient reasonable, non-discriminatory reasons to meet Wyeth's burden even if Henry were able to establish a *prima facie* case.  There is no dispute that all of Wyeth's managers who were or became familiar with Henry's situation believed that his proposed reassignment was an excellent developmental opportunity because it would give him direct supervisory responsibility and position him for future management openings.  More importantly, there is no evidence that Wyeth's articulated reasons for the proposed reassignment were a pretext for racial discrimination – as evidenced in particular by the repeated efforts higher and higher levels of management and human resources personnel undertook to meet with Henry once he complained about the reassignment, to review his record and his complaints, and to find alternative assignments for him.  In the end, all of these re-visitations of Henry's record and evaluations concluded that his reviews were fair and reasonable, and Henry turned down the alternative assignments offered to him.  His only response was to suggest that he be given a lateral transfer to a position as Consumer Health Project Engineer, a position he did nothing to

---

employment action); *Almonte v. Coca Cola Bottling Co.*, 959 F. Supp. 569, 572 (S.D.N.Y. 1997) (termination rescinded); *Hills v. City of New York*, 2005 WL 591130 (S.D.N.Y. Mar. 15, 2005) (disciplinary charges later dismissed not adverse employment action).

[8] *See Williams v. R.H. Donnelly Corp.*, 368 F.3d 123, 128 (2d Cir. 2004) (truly lateral transfer not an adverse employment action, and fact that employee views it either positively or negatively does not itself render it such); *Fairbrother, supra*, 412 F.3d at 56 (same).

explore or pursue. As a result, he was simply allowed to remain in the Production Engineer position he held prior to the Organizational Cascade, a result he himself said he wanted at least one stage of the ensuing discussions. Under all of these circumstances, Henry cannot meet his ultimate burden to prove by a preponderance of the evidence that his treatment and proposed reassignment in the Organizational Cascade was motivated by racial discrimination.

**B.     Henry's retaliation claims must also fail.**

The three-step burden-shifting analysis that applies to discrimination claims also applies to retaliation claims. *See Johnson v. Palma*, 931 F.2d 203, 207 (2d Cir. 1991). The plaintiff must establish a *prima facie* case of retaliation, proving by a preponderance of the evidence: (1) that he was engaged in a protected activity by opposing conduct barred by Title VII; (2) that the employer was aware of the Plaintiff's protected activity; (3) that he suffered an adverse employment action; and (4) that there was a causal connection between his protected activity and the adverse employment action. *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 79 (2d Cir. 2001). If the plaintiff does so, the burden then shifts to the defendant to articulate some legitimate, non-retaliatory reason for its actions. *Johnson*, 931 F.2d at 207. When the defendant does so, the plaintiff, who continues to retain the ultimate burden of persuasion and proof, must prove that the defendant's reasons are a pretext for retaliation. *Id.*

Here, there is no evidence that Henry raised anything like a complaint of racial discrimination prior – at the earliest – to his vague remarks to McDermott on January 22, 2004, and there is no evidence of anything resembling an actual complaint until his e-mail to Bigelow on February 16, 2004, referencing a purported conversation with Bigelow on February 11, 2004. Beyond that, Henry's own admissions demonstrate that none of the claimed denials of promotions occurring prior to that time were racially discriminatory, and there is no evidence that Wardrop, who was responsible for the 2003 mid-year and annual performance evaluations,

or those who, in the Organizational Cascade process, developed the proposed reassignment of Henry to the Packaging Supervision position, were aware of any complaint of racial discrimination by Henry at the time they made the employment decisions they made. As a result, any actionable complaint of retaliation Henry may have can only relate to adverse employment actions he experienced after, at the earliest, January 22, 2004. Henry cannot carry his burden of proof with respect to any such subsequent events he claims were retaliatory.[9]

### 1.    <u>December 2004 – Manager Manufacturing Support position.</u>

Henry cannot establish a *prima facie* case of retaliation for this claim, because he cannot demonstrate the essential causal connection between his discrimination complaint at the beginning of 2004 and the decision on this position at the end the year. The time-gap between the protected act and the employment decision – approximately nine to ten months – is simply too long.[10] Moreover, there is no overlap between the people who were engaged with Henry's discrimination complaint (Bigelow, McDermott, Wardrop, Sacket) and those who made the employment decision for this position (Espejo and a committee of four other managers). And there is simply no evidence that Henry's discrimination complaint was a factor in this decision – or that these decision-makers even knew about it. Even if Henry could establish a *prima facie* case of retaliation concerning this position, it would be thoroughly rebutted by Wyeth's articulated, non-discriminatory reasons, which were that the position would have represented a

---

[9] To the extent Henry may attempt to premise his discrimination claims on any of these subsequent events (which he does not appear to be doing), the claims would still fail for the reasons they fail as retaliation claims and because Henry cannot meet his ultimate burden to prove by a preponderance of the evidence that any of these subsequent actions was taken because of his race or color.

[10] *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 121 S. Ct. 1508 (2001) (citing case where three-month period was too long); *Hollander v. American Cyanamid Co.*, 895 F.2d 80, 84-85 (2d Cir. 1990) (no causation where interval was three and a half months); *Cunningham v. Consol. Edison, Inc.*, 2006 WL 842914, at *19 (S.D.N.Y. Mar. 28, 2006) (two months between protected activity and the adverse employment action seems to be the dividing line); *Wayne, supra*, 2004 WL 389009, at *13 (adverse employment action three months after protected activity insufficient to meet plaintiff's burden).

quantum jump of two to three grade levels over Henry's current position and that the successful candidate out of thirty applicants was chosen because he was the high scorer, much higher than Henry, in a standardized interview process by a committee, and who had also had significant, satisfactory project management experience Henry did not have.[11]  Henry cannot prove that these reasons were a pretext for retaliation.  There is no such evidence, and Henry's own subjective belief that he was the most qualified for the position is not evidence of discriminatory intent.[12] Moreover, Espejo, who was the hiring manager, had selected Henry to be one of the individuals to be interviewed out of the more than thirty who applied.  Henry, therefore, cannot meet his ultimate burden to prove by a preponderance of the evidence that this decision was retaliatory.

## 2.    The PIP and 2005 mid-year performance review.

Here again, Henry cannot establish a *prima facie* case of retaliation, because, in either case, he cannot demonstrate that the employment action constituted a materially adverse change in the terms or conditions of his employment.  In the retaliation context, the employee must be able to prove that the employer's actions are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington, supra*, 126 S. Ct. at 2409.  Following *Burlington*, courts have held that negative performance review or written counseling letters by themselves do not constitute materially adverse employment actions. *See Oliphant, supra*, 2006 WL 3020890, at **6-7 (counseling letters, negative evaluations and other forms of workplace reprimands not disruptive enough to be adverse

---

[11] *See Harris George Strong v. Defense Logistics Agency* (1987 WL 13734, at *5 (S.D.N.Y. July 8, 1987) (employer need not prove that person promoted was the most qualified candidate; it has discretion to choose among equally qualified candidates so long as the choice is not based upon unlawful criteria).

[12] *See Petersen v. Utah Dep't of Correction*, 301 F.3d 1182, 1191 (10th Cir. 2003) (plaintiff's subjective belief cannot support finding of discrimination); *Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 129 (2d Cir. 1994) (personal belief that plaintiff was most qualified cannot create inference of discrimination); *Warren v. North Shore Univ. Hosp.*, 2006 WL 2844259, at *8 (E.D.N.Y. Sept. 29, 2006) (evaluating candidate's record for promotion is decision in which courts do not intervene absent evidence employer's claimed reason was so lacking in merit as to call its genuineness into question.).

employment actions); *Carmellino, supra*, 2006 WL 2583019, at *32 (same); *Jackson v. City Univ. of N.Y.*, 2006 WL 1751247, at *4 (S.D.N.Y. June 23, 2006) (same); *Langer v. Sec'y of Treasury*, 2006 WL 2076577, at *2 (E.D. Wis. July 24, 2006) (absent tangible job consequences, negative performance evaluations do not constitute adverse employment actions). Here, the evidence shows nothing but a mid-year performance review evaluating Henry's strengths and weaknesses in 25 standardized categories, and a remedial performance improvement program to encourage and assist him to get his performance back on track. He completed the PIP in a month and was taken off it. Under these circumstances, he can prove nothing more than ordinary performance counseling, which does not rise to the level of the required adverse employment action. Moreover, the 2005 mid-year review and the PIP are even more remote in time from Henry's discrimination complaint at the beginning of 2004, and there is no evidence of any temporal or personnel connection between the two. Hence, Henry cannot prove any causal connection between these events and his protected activity. For all of these reasons, he cannot prove a *prima facie* case of retaliation in connection with these employment actions.

Even if Henry could prove a *prima facie* case of retaliation concerning his 2005 mid-year review and the PIP, Wyeth's articulated reasons for these actions are more than sufficient to satisfy its burden. Katz and Espejo both had problems with Henry's performance, and particularly its timeliness, in the first half of 2005. Moreover, Henry's failure to make timely submissions of Weekly Maintenance Zone Checklists in 2005 caused a formal compliance investigation to be needed and exposed Wyeth to potential regulatory compliance problems, and his failure to complete Preventive Maintenance Order Reviews on time as directed also had potential regulatory compliance consequences for Wyeth. There is no evidence that Katz's or Espejo's judgment and conclusions about these matters were pretextual or other than in good

faith and genuine, and there is no evidence that the underlying events about which they were concerned in Henry's performance did not happen. As a result, Henry cannot meet his ultimate burden to prove by a preponderance of the evidence that either of these employment actions was retaliatory because of his discrimination complaint.

C.      **The events claimed to be actionable are disconnected and unrelated.**

What is claimed to be actionable here is a hodgepodge of failed attempts at promotion, for different jobs at different times and in different department, under different supervisors, with no decision-makers in common. The additional claims are about performance reviews and counseling, also lacking commonality except in their fairly consistent conclusion by different evaluators that Henry was an average performer who had shortcomings and who could benefit from improvement. Nothing is even claimed to have been discriminatory before the Project Engineer opening in December 2001. But the claims concerning that position, the July 2002 Production Coordinator position, the April 2003 temporary fill-in for DeFeciani, the November 2003 Process Engineer position, and the January 2004 Staff Engineer I position are a chimera: Henry either flatly or all but admits he does not believe or has no evidence that he was denied these positions because of his race or color.

The first real events implicated in Henry's discrimination claims are his performance reviews in 2003 and his assignment to the Packaging Supervisor position as a result of the Organizational Cascade in December 2003. The 2003 performance reviews involved principally Wardrop, who was not at all involved in the earlier actions Henry nominally claims were discriminatory, nor were any of the decision-makers in those actions involved in Henry's 2003 performance evaluations or the assignment to the Packaging Supervisor position in the Organizational Cascade. Wardrop and McDermott are involved, along with Schaschl, Rose and Bigelow, in the attempts in early 2004 to work out a resolution to Henry's complaints about the

2003 reviews and the Packaging Supervisor assignment, but none of those individuals is involved in the later actions claimed to have been retaliatory; i.e., the Manager Manufacturing Support position in September 2004, and the performance evaluation and PIP in June 2005. By the time those events occurred, Wardrop and McDermott had long since moved on to other responsibilities, and there is no evidence the other people previously involved in attempting to resolve Henry's complaints were any longer involved. Nor is there any evidence that Espejo and Katz, the principal decision-makers in the later actions, were involved with Henry's 2003 performance reviews, the Packaging Supervisor episode, or the attempts to resolve Henry's complaints about those matters.

Each of these events, therefore, is a discrete act or single occurrence that took place at a particular point in time, with no evidence to show a continuing influence from one event to another. Therefore, they must be evaluated separately on their own facts to determine whether they are discriminatory or retaliatory. *See Ledbetter v. Goodyear Tire & Rubber Co.*, 127 S. Ct. 2162, 2169, 2175 (2007); *Nat'l R.R. Passenger Corporation v. Morgan*, 536 U.S. 101, 110-11, 114, 122 S. Ct. 2061, 2070-72 (2002). As the Second Circuit said in similar circumstances: "As many of the pieces of evidence do not allow for the reasonable inference of discrimination, they assume in this case no super-inferential powers when viewed together." *Bickerstaff, supra*, 196 F.3d at 458 n.8.

### D.    The statute of limitations bars some of these claims.

This action was filed on September 20, 2005. The longest statute of limitations relevant here is that applicable to Henry's claims under Section 1981. Under that statute, claims arising more than four years before the Complaint was filed would be barred. 28 U.S.C. § 1658; *Jones v. R.R. Donnelley & Sons, Co.*, 541 U.S. 369, 382-82, 124 S. Ct. 1836, 1845-46 (2004). Defendants do not contend that any of Henry's claims enumerated above are untimely under

27

Section 1981. However, under the New York State Human Rights Law, the applicable statute of limitations is three years. N.Y. CPLR § 214(2); *Van Zant v. K.L.M. Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996). Claims arising prior to September 2002, therefore, would be barred under the New York statute. Hence, Henry may not recover under New York law for his claims concerning denial of promotion to the project engineer position in December 2001 or the production coordinator position in July 2002. In addition, the statute of limitations for Henry's claims under Title VII is determined by the date of filing of his charge(s) of discrimination, and claims not included in such a charge may not be maintained. 42 U.S.C. § 2000e-5(e); *Butts v. The City of New York*, 990 F.2d 1397, 1401-03 (2d Cir. 1993) (only exceptions to charge filing requirement are claims "reasonably related" to those in the charge, claims of retaliation for filing an EEOC charge, and further incidents of discrimination carried out in precisely the same manner). Exceptions do not apply "to discrete, completed employment actions such as transfers, failures to promote, demotions, or inadequate wages." *Sunderam v. Brookhaven National Laboratories*, 424 F. Supp. 2d 545, 560 (E.D.N.Y. 2006) (continuing violation doctrine inapplicable in such circumstances). Here, claims of discrimination under Title VII would be barred if arising prior to November 29, 2003 – more than 300 days prior to the filing of Henry's initial charge on September 24, 2004.[13] Moreover, that charge contained no claims of retaliation. Henry's first charge of retaliation was not filed until October 18, 2005. Accordingly, claims of retaliation accruing prior to December 22, 2004, would likewise be barred.

---

[13] Under this rule, Henry's claims of discrimination concerning the December 2001 project engineer position, the July 2002 production coordinator position, the April 2003 temporary fill-in as production coordinator, and the November 2003 process engineer position would be barred under Title VII. Likewise, the September 2004 decision for the manager manufacturing support position would be barred as a retaliation claim under Title VII.

### E.    There is no basis for individual liability.

Henry's claims against the individual defendants, Wardrop and McDermott, are asserted only for claimed aiding and abetting Wyeth's alleged discrimination under the New York State Human Rights Law. There is, however, no evidence that either Wardrop or McDermott was involved in any of the actions Henry claims to have been retaliatory for his raising a claim of racial discrimination. Moreover, Wardrop's involvement in the actions claimed to have been discriminatory is limited to Henry's mid-year and year-end performance evaluations in 2003 and to whatever involvement he had in Henry's selection in the Organizational Cascade for the Packaging Supervisor position. McDermott's involvement in the actions claimed by Henry to have been discriminatory against him is limited to McDermott's overall approval as Pearl River Site Managing Director of the results of the Organizational Cascade and his efforts, along with others, to attempt to find resolution at the very beginning of 2004 to Henry's unhappiness with his 2003 annual performance evaluation and his proposed assignment to the Packaging Supervisor position. After that, McDermott moved on to other responsibilities.

Such claims require direct personal involvement and actual personal participation in the discriminatory conduct for liability to attach. *Cerrato v. Durham*, 941 F. Supp. 388, 396 (S.D.N.Y. 1996) (aiding and abetting liability requires actual participation); *Whidbee v. Gazarelli Food Specialties, Inc.*, 223 F.3d 62, 74-75 (2d Cir. 2000) (liability must be predicated on actor's personal involvement). As noted, Wardrop's involvement in actions alleged to be discriminatory was minimal, and he was not involved in anything alleged to have been retaliatory. McDermott was involved only in efforts to resolve Henry's complaints about his 2003 annual performance review and his Organizational Cascade assignment. In any event, the evidence will demonstrate that none of these events was racially discriminatory or retaliatory, and so there is no basis to find Wardrop or McDermott personally liable for anything.

**F.    Henry can demonstrate no damages.**

Lost earnings and benefits and compensatory and punitive damages are available under
Title VII and Section 1981.  42 U.S.C. § 1981a; 42 U.S.C. § 2000e-5(g).  Compensatory and
punitive damages are subject to an overall limit of $300,000 under Title VII.  42 U.S.C. §
1981a(b)(3).  Punitive damages are not available under the New York State Human Rights Law.
N.Y. Exec. Law § 290.1(a).  The plaintiff must demonstrate each amount to which he claims
entitlement. *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 371, 97 S. Ct. 1843,
1873 (1977).  The plaintiff must prove by a preponderance of the evidence that there is a cause
and effect connection between the alleged unlawful acts and the damages sought.  *Saulpaugh v.
Monroe Community Hosp.*, 4 F.3d 134, 145 (2d Cir. 1991); *Ragin v. Harry Macklowe Real
Estate Co.*, 6 F.3d 898, 908 (2d Cir. 1993); *Arroyo Lopez v. Nuttal*, 25 F. Supp.2d 407, 410
(S.D.N.Y. 1998).  The plaintiff has a duty to mitigate his damages and minimize his losses.
*Padilla v. Metro-North Commuter R.R.*, 92 F.3d 117, 125 (2d Cir. 1996); *Dominic v.
Consolidated Edison Co.*, 822 F.2d 1249, 1258 (2d Cir. 1987); *Reilly v. Cisneros*, 835 F. Supp.
96, 99 (W.D.N.Y. 1993).  Compensatory damages must be based upon common sense and
reasonable inferences from facts in evidence. *Johnson v. Al Tech Specialties Steel Corp.*, 731
F.2d 143, 147 (2d Cir. 1984); *Binder v. Long Island Lighting Co.*, 847 F. Supp. 1007, 1027-28
(E.D.N.Y. 1994); *Rivera v. Baccarat, Inc.*, 10 F. Supp. 2d 318, 331-32 (S.D.N.Y. 1998).
Punitive damages are not favored in the law and are available only for conduct that is done with
deliberate intent to injure or out of hatred, ill will or spite, or with willful, wanton or reckless
disregard of another's rights.  *Kolstad v. American Dental Association*, 527 U.S. 526, 119 S. Ct.
2118 (1999); *Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898, 909 (2d Cir. 1993).

The only damages there could be any basis for Henry to show in this case are lost
earnings and benefits specifically attributable to the acts he claims to have been discriminatory or

retaliatory; i.e., the claimed lost promotions and "negative" performance criticism, and reasonable and ordinate compensatory damages based upon the same incidents. The evidence, of course, will not demonstrate any such discrimination or retaliation, but, in any event, there is no evidence to support significant compensatory damages, and none whatsoever to justify punitive damages, since the only conduct claimed to have been wrongful here is employment decisions taken in the ordinary and routine course of business judgment and personnel management.

## IV.    CONCLUSION.

For the foregoing reasons, judgment should be for the Defendants on all claims.

Dated:  July 30, 2007.

By: _____
Michael Delikat
James H. McQuade
ORRICK, HERRINGTON & SUTCLIFFE LLP
666 Fifth Avenue
New York, New York 10103
Telephone:  (212) 506-5000

Attorneys for Defendants Wyeth Pharmaceuticals, a Division of Wyeth, Walter Wardrop, and Michael McDermott

31