UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

HOWARD HENRY,                                    :

                              Plaintiff,         :          NO. 05-CV-8106 (WCC)

                                                 :

            v.                                   :

                                                 :

WYETH PHARMACEUTICALS, INC.,                     :
WALTER WARDROP, ANDREW SCHASCHL,                 :
AND MICHAEL MCDERMOTT                            :

                                                 :

                              Defendants.        :

-----------------------------------------------------------X


**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION FOR RECONSIDERATION**


Michael Delikat
James H. McQuade
ORRICK, HERRINGTON & SUTCLIFFE LLP
666 Fifth Avenue
New York, New York 10103
Telephone: (212) 506-5000

Attorneys for Defendants Wyeth Pharmaceuticals, a Division
of Wyeth, Walter Wardrop, and Michael McDermott

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................... 1

ARGUMENT .................................................................................................. 2

I.    THE COURT OVERLOOKED A NUMBER OF MATTERS WITH RESPECT TO HENRY'S DISCRIMINATION CLAIMS AND SUMMARY JUDGMENT SHOULD BE GRANTED WITH RESPECT TO THOSE CLAIMS ............................................................................ 3

    A.    Henry Cannot Meet His Burden Of Proof With Respect To His Promotion Claims ............................................................ 4

        1.    The Project Engineer Position in 2001 ......................... 4

        2.    Production Coordinator Position in 2002 ..................... 6

        3.    "Filling In" As Production Coordinator in 2003 ............ 8

    B.    Henry Cannot Meet His Burden Of Proof With Respect To His 2003 Performance Reviews ....................................... 9

    C.    Henry Cannot Meet His Burden Of Proof On His Alleged Demotion Claim .......................................................... 13

    D.    Henry's Purported Statistical Evidence, Anecdotal Evidence, And Stray Remarks Cannot Create An Inference Of Discrimination.............. 15

II.    THE COURT OVERLOOKED A NUMBER OF MATTERS WITH RESPECT TO HENRY'S RETALIATION CLAIMS AND SUMMARY JUDGMENT SHOULD BE GRANTED WITH RESPECT TO THOSE CLAIMS ............................................................................ 17

III.    THE CLAIMS AGAINST MCDERMOTT AND WARDROP SHOULD BE DISMISSED ............................................................. 19

CONCLUSION............................................................................................. 21

## PRELIMINARY STATEMENT

Defendants Wyeth Pharmaceuticals, a Division of Wyeth, Walter Wardrop, and Michael McDermott (together "Defendants") respectfully submit this memorandum of law in support of their motion, pursuant to Local Civil Rule 6.3, for reconsideration of that part of the Decision and Order of the Honorable Coleen McMahon that denied Defendants' motion for summary judgment.

Plaintiff Howard Henry ("Henry"), a former employee of Defendant Wyeth Pharmaceuticals, a Division of Wyeth ("Wyeth"), commenced this action against Wyeth, Walter Wardrop, one of his former supervisors at Wyeth, and Michael McDermott, the former Managing Director of Wyeth's Pearl River facility, asserting claims for discrimination based on his race and color under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981, and the New York State Human Rights Law, Exec. Law § 290 *et seq.* Henry bases his discrimination claim on: (1) several promotions or transfers that Henry sought over the course of his career, but that he did not receive; (2) his 2003 mid-year performance review and year-end performance review, in which Henry was rated a "solid performer"; and (3) an assignment Henry received as part of a facility-wide corporate reorganization, which never was effectuated because Henry had refused to be reassigned. Henry also asserts clams for retaliation based on: (1) one promotion he claims he sought and did not receive; (2) his mid-year 2005 performance review; and (3) a performance improvement plan (the "PIP") he received as a result of his performance problems.

This action initially was assigned to the Honorable Richard Conway Casey. On December 4, 2006, Defendants filed a motion for summary judgment seeking to have Henry's Complaint dismissed in its entirety on a number of independent grounds. In May 2007, with

Defendants' motion for summary judgment still pending, the case was transferred to the Honorable Colleen McMahon. By Memorandum Decision and Order, dated July 26, 2007 (the "Decision"), the Court granted Defendants' motion for summary judgment with respect to two of Henry's promotion discrimination claims, denied the motion for summary judgment with respect to all other claims, and reassigned the action to White Plains. The Decision was entered on the Court's docket on July 31, 2007.

As explained below, in denying, in part, Defendants' motion for summary judgment, the Court overlooked crucial undisputed evidence, incorrectly determined that there were disputed issues of material fact, overlooked a number of Defendants' arguments and controlling case law, and made a number of clear errors in analyzing the evidence in this case. Accordingly, this Court should grant Defendants' motion for reconsideration and should grant Defendants' motion for summary judgment in its entirety.

## ARGUMENT

This Court has authority to reconsider the denial of summary judgment under Local Civil Rule 6.3, or alternatively under the theory that this Court has discretion to reconsider issues in a reassigned case where the prior decision was made by a different judge. *See Mayer v. Cornell Univ.*, 909 F. Supp. 81, 82-83 (N.D.N.Y. 1995), *aff'd*, 107 F.3d 3 (2d Cir. 1997); *Steinborn v. Daiwa Securities America Inc.*, 1995 WL 761286, *7, n.1 (S.D.N.Y. Dec. 26, 1995) (citing cases), *aff'd*, 14 F.3d 351 (2d Cir. 1996). In determining a motion for reconsideration, the court should consider, among other things, "whether there is a need to correct a clear error or prevent manifest injustice." *U.S. v. All Funds,* 2007 WL 2114670, *2 (E.D.N.Y. July 16, 2007). "The purpose of a motion to reconsider is to allow the court to correct its own mistake, by calling to its attention a factual matter or controlling precedent previously advanced by the parties, but

overlooked by the court." *Id.*

I.   **THE COURT OVERLOOKED A NUMBER OF MATTERS WITH RESPECT TO HENRY'S DISCRIMINATION CLAIMS AND SUMMARY JUDGMENT SHOULD BE GRANTED WITH RESPECT TO THOSE CLAIMS**

It is hornbook federal employment law that multiple failure to promote claims are separate and discrete employment decisions that must be analyzed on their own facts. *See Ledbetter v. Goodyear Tire & Rubber Co.*, 127 S. Ct. 2162, 2175 (May 29, 2007); *National Railroad Passengers Corp. v. Morgan*, 536 U.S. 101, 113, 122 S. Ct. 2061 (2002). In support of their motion for summary judgment, Defendants advanced legitimate non-discriminatory reasons for each of the separate and discrete alleged discriminatory employment decisions and presented substantial undisputed evidence showing that none of these decisions were motivated by race.[1]

Instead of analyzing each of these separate and discrete employment decisions separately in its legal discussion, the Court lumped all of the decisions together in performing its legal analysis and found that there were disputed issues of material fact "concerning the plaintiff's qualifications for the positions he applied for, the quality of the plaintiff's job performance in his capacity as a Production Engineer, and the truthfulness of the defendants' representations concerning the plaintiff's job performance in his evaluations." Decision, at 54. Using this "lumping" approach, the Court jumped to the conclusion that with respect to all of these claims Henry "adduced specific facts from which a reasonable jury could infer that the reasons propounded by the defendants were not their true reasons, and from this, that the defendants are 'dissembling to cover up a discriminatory purpose.'" *Id.*, at 55. The Court then pointed to Henry's purported statistical analyses, anecdotal evidence, and certain alleged stray remarks as evidence of intentional discrimination with respect to all of these claims. *Id.*, at 56. For these

---

[1]  Defendants respectfully refer the Court to the papers filed by the parties in connection with Defendants' motion for summary judgment.

reasons, the Court denied Defendants' motion for summary judgment with respect to all but two of Henry's discrimination claims.

By lumping all of Henry's separate and discrete employment decisions together as if they comprised one employment decision, the Court overlooked crucial undisputed evidence, incorrectly determined that there were issues of material fact, and incorrectly concluded that Henry had met his burden of proving pretext and intentional discrimination with respect to each of the employment decisions at issue.  As explained below, and as set forth in Defendants' summary judgment papers, a separate analyses of each alleged discriminatory employment decision confirms that there are no genuine issues of material fact and Henry has not met his burden of establishing that Defendants' reasons for each of the employment decisions were false and that the real reason for each of the decisions was intentional discrimination.  Moreover, as discussed below, the Court improperly relied on Henry's purported statistical evidence, anecdotal evidence, and stray remarks, all of which is either incompetent or inadmissible and should not have been considered on this motion for summary judgment.

A.  **Henry Cannot Meet His Burden Of Proof With Respect To His Promotion Claims**

1.  **The Project Engineer Position in 2001**

As set forth in Defendants' motion papers, Kevin Costello hired Cara Muscolo for the Project Engineer Position in December 2001, because he felt she was the best candidate for a number of reasons, including: (1) Muscolo had done her job very well for Costello in the past in a different position, and they had worked well together; and (2) Muscolo had significant experience in the packaging area, which was something Costello was seeking for the position. (12-15).[2]  Costello testified that Henry had no packaging experience, had not gained Costello's

---

[2] The numbered references are to the paragraphs of Defendants' Rule 56.1 Statement.

confidence as Muscolo had, had difficulties multi-tasking, and had not impressed Costello with his overall job performance. *Id.* This evidence was undisputed. Based ***solely*** on the allegation in Henry's affidavit that, at some unspecified time and in some unspecified context, Costello told Henry he had "complete confidence" in his work and was not concerned that Henry could not complete tasks on time, the Court denied Defendants' motion for summary judgment with respect to this promotion claim. Decision, at 5-6. This isolated allegation is insufficient as a matter of law to establish that Costello's reason for selecting Muscolo was false and is insufficient to create a material issue of fact as to whether Costello believed that Muscolo was the best candidate for the position.

Moreover, there is absolutely no evidence of discrimination with respect to this claim. The Court even pointed out that Henry had "testified that he could state no basis for believing that he was not selected for this position because of his race or color, other than the fact that he was denied promotions on future occasions, involving different decision makers at Wyeth." Decision, at 6. The mere fact that other Wyeth decision makers turned Henry down for unrelated promotions years in the future does not suggest in any way that Costello chose Muscolo over Henry in 2001 because of Henry's race. Further, Costello was the only decision maker with respect to this promotion decision, and none of the alleged stray remarks cited by Henry were made by Costello or relate to Costello in any way. Therefore, they cannot be considered as evidence of discrimination with respect to this promotion claim. In addition, even if Henry's purported statistical evidence were competent and admissible, which it is not, *see infra,* Section I.D, those statistics cover the time period 2004 through 2005, not the time period at issue with respect to this promotion claim (2001), and there is nothing to indicate that Costello made any of

the promotion decisions that were included in Henry's purported statistical survey. Therefore, these alleged statistics add nothing to this particular promotion claim.

In sum, there is no evidence to suggest that Costello's reason for selecting Muscolo was false or that Costello selected Muscolo over Henry because of Henry's race. Henry's affidavit on this point is insufficient as a matter of law to create a material issue of fact. Accordingly, Henry's claim based on the Project Engineer position should be dismissed.

### 2.    Production Coordinator Position in 2002

As set forth in Defendants' motion papers, in July 2002, Andrew Schaschl hired Chris DeFeciani for a Production Coordinator position because he believed that DeFeciani was the most qualified for the position for several reasons, including: (1) DeFeciani had excellent multi-tasking skills, which was a critical job requirement; (2) DeFeciani had completed his Apics certification for logistic planning; (3) DeFeciani had a very good cross-functional background and excellent knowledge of manufacturing operations, which he believed were important for this position; (4) DeFeciani had proven himself to Schaschl as an excellent performer and a very capable employee; and (5) Schaschl believed DeFeciani had performed very well when he had filled in as production coordinator in the past. (19-23).

The Court cited a number of allegations contained in Henry affidavit to support its conclusion that Henry had advanced sufficient evidence to establish that Schaschl's reason for selecting DeFeciani was false and/or created a material issue of fact. Decision, at 7-8. Yet none of these allegations would establish Henry's claim. Set forth below in bullet points are the allegations from Henry's affidavit, followed by the explanation as to why they are insufficient to create a material issue of fact:

- Henry alleged that Schaschl's predecessor, Bracco, had offered to give Henry the production coordinator position when it became available because DeFeciani, "who admittedly was Bracco's first choice," was not interested in this position. *Id.* at 7.

This allegation that DeFeciani was Bracco's first choice further supports Schaschl's statement that he (Schaschl) believed DeFeciani was the most qualified candidate, rather than demonstrating that Schaschl's belief that DeFeciani was the most qualified was false.

- Henry alleged that Wardrop encouraged him to take the position if it were offered to him. *Id.*

This allegation does not suggest that Schaschl's reason for selecting DeFeciani was false.

- Henry alleged that Schaschl had not selected him to fill in on a temporary basis as a Production Coordinator, as Schaschl had with DeFeciani, and therefore he was denied an opportunity to develop the full knowledge of the position. *Id.*

This allegation does not suggest that Schaschl's reason for selecting DeFeciani was false.

- Henry speculates that DeFeciani's high performance ratings were not a legitimate reason for the hiring decision because they were the product of a close friendship between Wardrop and DeFeciani. *Id.* at 8.

This allegation does not suggest that Schaschl's belief that DeFeciani was the best candidate for the position was false. Indeed, Schaschl never stated that he had selected DeFeciani because of his high performance ratings. Moreover, Henry's allegation that DeFeciani's performance ratings were the result of a close relationship between Wardrop and DeFeciani are based on nothing more than rank speculation and cannot be used to create an issue of fact.

- Henry attempted to dispute Schaschl's opinion that Henry had trouble multi-tasking by pointing to one comment in his 2001 performance review that Henry "found ways to minimize downtime through creative scheduling and multitasking" and one comment in his 2002 performance review that stated that "Howard collaborated very well with a variety of disciplines to start up and optimize the CTC." *Id.*

These statements are insufficient to create an issue of fact, as the comment in the 2001 performance review refers to one manager's opinion of Henry's work in one of eleven categories

during an entirely different time period, and the one comment in the 2002 performance review does not suggest that Henry had strong multi-tasking skills.

- Henry testified that Schaschl "appeared truculent" when asked why DeFeciani had been selected for the position and stated that DeFeciani was selected because he had done the job for a while. *Id.*

Henry's opinion that Schaschl "appeared truculent" cannot create an issue of fact, nor can Schaschl's alleged statement that DeFeciani was selected because he had done the job for a while create an issue of fact, as this clearly was part of Schaschl's rationale for selecting DeFeciani.

None of this evidence cited by the Court can, as a matter of law, establish that Schaschl's reasons for selecting DeFeciani were false or that the real reason that Schaschl selected DeFeciani instead of Henry was because of Henry's race. Henry himself admits that he has no basis for believing that he was not selected for this position because of his race or color. (23). Moreover, the mere fact that other Wyeth decision makers turned Henry down for unrelated promotions in other years does not suggest in any way that Schaschl chose DeFeciani over Henry because of Henry's race. Further, Schaschl was the only decision maker with respect to this promotion decision, and none of the alleged stray remarks cited by Henry were made by Schaschl or relate to Schaschl in any way, and therefore, are not evidence of discrimination with respect to this promotion claim.

In addition, Henry's purported statistical evidence covers the time 2004 through 2005, not the time period at issue with respect to this promotion claim (2002), and there is no evidence to suggest that Schaschl made any of the promotion decisions included in Henry's purported statistical analysis. Therefore, Henry's purported statistics add nothing to this particular promotion claim. Accordingly, the Court should grant Defendants' motion for summary judgment with respect to this promotion claim.

3.    **"Filling In" As Production Coordinator in 2003**

In their moving papers, Defendants set forth Schaschl's legitimate non-discriminatory reason for selecting Richard Morgan to fill in for DeFeciani on a temporary basis when DeFeciani went out on a medical leave on one occasion in April 2003. (24-30). Henry presented no evidence whatsoever to suggest that Schaschl's legitimate non-discriminatory reason was false or that Henry's race played any role in the decision. Indeed, Henry specifically admitted that his only basis for believing that he was not selected to fill in for DeFeciani because of his race was that he had not been selected – which clearly is not evidence of pretext or race discrimination. (30). Moreover, the Court did not specifically find, and cited no evidence suggesting, that Schaschl's stated reason for selecting Morgan was pretextual, or that there were any material issues of fact in connection with this claim.

Further, none of the alleged stray remarks cited by Henry were related to Schaschl or related to this position in any way, and therefore, could not be viewed as evidence of discrimination with respect to this promotion claim. In addition, Henry's purported statistical evidence covers the time period 2004 through 2005, not the time period at issue with respect to this promotion claim (2003). Moreover, there is no evidence to suggest that Schaschl made any of the promotion decisions included in Henry's purported statistical analysis. Therefore, Henry's purported statistics add nothing to this particular promotion claim. Accordingly, the Court should grant Defendants' motion for summary judgment with respect to this promotion claim.

B.    **Henry Cannot Meet His Burden Of Proof With Respect To His 2003 Performance Reviews**

The Court overlooked significant portions of the record in reaching its conclusion that Henry had satisfied his burden of proof with respect to his mid-year and annual 2003 performance reviews. In 2003, Walter Wardrop prepared Henry's mid-year and annual

performance reviews, giving Henry an overall rating of "3" or "solid performer" and providing a detailed assessment of Henry's performance in approximately a dozen different categories. (44-57). To the extent these reviews identified any areas for improvement, such as completing assignments in a timely fashion, Henry attempted to oppose Defendants' motion for summary judgment by simply disagreeing with Wardrop's overall rating and denying any shortcoming in those areas. Henry also disputed a number of non-material issues with respect to these reviews, such as when he received the reviews. Based solely on this, the Court found that Henry had created a material issue of fact and/or had satisfied his burden of proof with respect to his claim. If such a showing were sufficient to withstand a motion for summary judgment, any employee who received a favorable performance evaluation such as "solid performer" could assert a claim of discrimination based on his mere disagreement with his supervisor's assessment of his performance. *See, e.g., Ponniah Das v. Our Lady of Mercy Med. Ctr.*, 2002 WL 826877, at *9 (S.D.N.Y. April 2002) ("The fact that an employee disagrees with an employer's evaluation of him does not prove pretext.").

Moreover, there is no evidence of discrimination with respect to Henry's 2003 performance reviews. Although the Court refers to two alleged remarks made by Wardrop,[3] these alleged remarks are insufficient to create an inference of discrimination. Indeed, although the Court specifically noted that these comments were "akin to 'stray remarks,'" the Court apparently relied upon on remarks as competent evidence of intentional discrimination. Decision, at 56. In doing so, the Court erred. First, the two remarks allegedly made by Wardrop, even if true, were stray remarks that cannot support an inference of discrimination. *See, e.g.,*

---

[3] These alleged comments included asking another African-American employee at some unspecified time whether she was "sticking pins in a doll" and by asking a Hispanic employee at some unspecified time in the winter of 2004 if he was "the kind of guy to wear his pants hanging down like this." Plaintiff's Rule 56.1 Statement, ¶¶ 139, 141. Neither of these alleged comments were witnessed by Henry.

*Danzer v. Norden Sys., Inc.,* 151 F.3d 50, 56 (2d Cir. 1998) ("Stray remarks, even if made by a decision maker, do not constitute sufficient evidence [to support] a case of employment discrimination."); *Woroski v. Nashua Corp.*, 31 F.3d 105, 109-10 (2d Cir. 1994), *abrogated on other grounds* (holding that stray remark by supervisor is not sufficient to withstand motion for summary judgment); *Norris v. New York City Housing Auth.*, 2004 WL 1087600, at *13 n. 12 (S.D.N.Y. May 14, 2004) (assuming that supervisor made explicitly racist remark, such remark was inadequate to defeat summary judgment).  Indeed, neither of the alleged ambiguous remarks made by Wardrop evidence a discriminatory animus towards black employees; were made in the context of any employment decision relating to Henry or any other employee; or were made close to the time when Wardrop made the employment decisions at issue here.  Accordingly, Wardrop's alleged comments are "too isolated, ambiguous and attenuated" to create an inference of discrimination.  *Phipps v. Comprehensive Comm. Dev. Corp.,* 2005 WL 287413, at *18-19 (S.D.N.Y. Feb. 4, 2005) (statements by supervisor that "they were all Jamaicans" and "we are having all these problems because of these people" are too vague to be considered explicitly discriminatory epithets); *Argueta v. North Shore Long Island Jewish Health System, Inc.*, 2003 WL 22670915, at *8-9 (E.D.N.Y. Nov. 6, 2003) (holding that "stray remarks are not evidence of discrimination 'if they are not temporally linked to an adverse employment action'" and granting summary judgment because stray remarks made more than five months before adverse action are insufficient to establish a nexus between the comments and the adverse action); *Sergilus v. Covenant House Under 21,* 1999 WL 717274, at *2 (S.D.N.Y. Sept. 15, 1999) (holding that comments by Haitian plaintiff's supervisor—who assisted in plaintiff's termination—that plaintiff "smelled" and that "all Haitians smelled" were not made close enough in time to plaintiff's termination to be evidence of discrimination); *Campbell v. Daytop Village, Inc.,* 1999

WL 292576, at *3 (S.D.N.Y. May 7, 1999) (supervisor's racist remarks about black people generally did not have a "nexus" to reduction in force), *aff'd* 201 F.3d 430 (2d Cir. 1999); *Balut v. Loral Electronic Systems*, 988 F. Supp. 339, 348-49 (S.D.N.Y. 1998) (supervisor's comments that plaintiff's co-worker who was the same age as plaintiff was an "older engineer with health problems" was too ambiguous and isolated to attribute age discrimination as motivating factor in plaintiff's termination decision), *aff'd* 166 F.3d 1199 (2d Cir. 1998); *O'Connor v. Viacom Inc.*, 1996 WL 194299, at *5 (S.D.N.Y. April 23, 1996) (one isolated, ambiguous remark and two racial epithets by plaintiff's superior "without a demonstrated nexus to complained of personnel actions" were insufficient to defeat summary judgment), *aff'd*, 104 F.3d 356 (2d Cir. 1996).

Similarly, the alleged discriminatory remarks attributed to Vitanza and Bracco, two other Wyeth managers who did not directly supervise Henry, cannot create an inference of discrimination with respect to the performance reviews issued by Wardrop (or other challenged decisions in this case) because Vitanza and Bracco, did not issue the performance reviews (nor were Vitanza or Bracco responsible for the other employment decisions at issue in this action). *See, e.g., Minton v. Lennox Hill Hosp.*, 160 F. Supp. 2d 687, 695 (S.D.N.Y. 2001) (holding that remarks by employees who had no role in plaintiff's termination are "irrelevant"); *Sergilus*, 1999 WL 717274, at *2 ("The fact that co-workers called Plaintiff a 'fucking Haitian' and mimicked his speech is not evidence of discrimination because these comments were not made by people who had a role in the decision to terminate plaintiff"). Moreover, because none of these alleged remarks evidenced a discriminatory animus, were made in the context of any employment decision, or were made close in time to the employment decisions at issue, they cannot create an inference of discrimination. Further, Henry's purported statistical evidence relating to certain

undisclosed promotions cannot be used to support an inference of discrimination in connection with the performance reviews Wardrop gave Henry in 2003.

Moreover, the Court failed to recognize a number of undisputed facts that would negate any inference of discrimination, such as the fact that Wardrop had hired Henry to the Production Coordinator position in 2000 and had given him an overall rating of "4" out of "5" on his performance evaluation in each of the preceding two years – ratings that Henry described as "extremely positive." *See, e.g.*, *Pronin v. Raffi Custom Photo Lab, Inc.*, 383 F. Supp. 2d 628, 639 (S.D.N.Y. 2005) ("same actor" inference undermines plaintiff's claim of discrimination, especially when hiring and firing decisions were made within two years of each other); *Wayne v. Principli*, No. 01 Civ. 941, 2004 WL 389009, at *12 (S.D.N.Y. Mar. 3, 2004) (finding that fact that employer fired plaintiff less than two years after he hired her "strongly suggests that discrimination was not a motivating factor in his decision"); *Wolde-Meskel v. Argus Commc'n, Inc.*, No. 99 Civ. 10112, 2001 WL 883648, at *6 (S.D.N.Y. Aug. 7, 2001) (involvement of alleged wrongdoer in positive action on behalf of plaintiff "not only fails to give rise to but in fact detracts from an otherwise supportable inference of discrimination"). In addition, Henry was consistently rated as an average employee throughout his tenure with Wyeth, having received ratings exactly in the middle of the rating scale in 10 of 12 years, and having never been rated a "5" or the highest rating on the rating scale. Accordingly, Henry failed to meet his burden of proof with respect to this claim, and Defendants should be granted summary judgment with respect to this claim.

### C.     Henry Cannot Meet His Burden Of Proof On His Alleged Demotion Claim

As demonstrated in Defendants' motion papers, Henry's assignment to the Packaging Supervisor position occurred due to a massive corporate reorganization that affected all employees at the Pearl River facility. (64) Wyeth managers believed that the Packaging

Supervisor position would have been an excellent opportunity for Henry because he would be a team leader; he would have direct supervisory responsibilities for a number of employees, which could lead to future management opportunities; he would gain exposure to the packaging operations, which could help him obtain other positions in the future; he could learn new skills; and he could use his engineering background to make improvements in the packaging area. Decision, at 20.  Henry did not present any evidence, and the Court cited to no evidence, suggesting this legitimate, non-discriminatory reason was not the real reason for the assignment to the Packaging Supervisor position or that the real reason for this assignment was intentional racial discrimination.[4]

Moreover, the undisputed facts refute any claim of discrimination.  Henry's former supervisor, Wardrop, who also was reassigned as part of the Organizational Cascade, had an opportunity to select Henry for a position as an Engineer.  (62)  However, rather than selecting Henry for the position, Wardrop selected another individual, Jean Colas, because Wardrop believed he was a highly qualified engineer and a high performer.  (62)  Significantly, Jean Colas is an African-American.  *See Phillips v. Chertoff*, No. 03 Civ. 4266, 2005 WL 3466033 (S.D.N.Y. Dec. 16, 2005) (finding no inference of discrimination when plaintiff is replaced with someone in same protected class).  In sum, nothing in the record in this case, even viewed in the light most favorable to Henry, provides any indication that he was the victim of discrimination.

---

[4]  When Henry complained about his assignment to the Packaging Supervisor position, Peter Bigelow proposed two alternative positions for Henry.  (85)  However, Henry rejected both and suggested that he be transferred laterally to the position of Consumer Health Project Engineer.  (85)  Bigelow, however, permitted Henry to remain in the Production Engineer position, rather than move into the Project Engineer position or the Packaging Supervisor position.  (86).  Like his other claims, Henry failed to present any evidence of discrimination with respect to his request to Bigelow regarding a transfer to the Project Engineer position.

**D.    Henry's Purported Statistical Evidence, Anecdotal Evidence, And Stray Remarks Cannot Create An Inference Of Discrimination**

In his opposition to Defendants' motion for summary judgment, Henry included his own purported statistical analyses, anecdotal evidence, and a few stray remarks, which he claimed created an inference of discriminatory animus. Plaintiff's Rule 56.1 Statement, ¶¶ 140-145. The Court relied upon this purported evidence, despite the fact that this purported evidence was incompetent and inadmissible. More critically, the Court appears to have relied upon this purported evidence to support a finding of discriminatory animus with respect to each of the separate and discrete employment decisions at issue, despite the fact that the evidence did not suggest that the particular decision maker with respect to each of the employment decisions at issue harbored any discriminatory animus. In so doing, the Court committed a critical error.

For example, none of this alleged evidence related in any way to Henry's promotion claims discussed above, as none of the alleged stray remarks were made by any of the individuals who made the decisions on those promotions, and none of the alleged anecdotal evidence related in any way to those decision makers. *See, e.g.*, *Minton v. Lennox Hill Hosp.*, 160 F. Supp. 2d 687, 695 (S.D.N.Y. 2001) (holding that remarks by employees who had no role in plaintiff's termination are "irrelevant"); *Sergilus*, 1999 WL 717274, at *2 ("The fact that co-workers called Plaintiff a 'fucking Haitian' and mimicked his speech is not evidence of discrimination because these comments were not made by people who had a role in the decision to terminate plaintiff"). Moreover, none of the alleged statistical evidence relates to the time frame those decisions were made or relates to promotion decisions actually made by those

decision makers.[5]    Therefore, the purported statistical evidence adds nothing to Henry's promotion claims.

Henry's attempt to create an inference of discrimination by pointing to his own unreliable so-called statistical evidence and anecdotal recollections also is insufficient to meet his burden of proof on summary judgment.  *Zenni v. Hard Rock Café Int'l, Inc.*, 903 F. Supp. 644, 654 (S.D.N.Y. 1995) (granting summary judgment, finding employee's statistical and anecdotal evidence regarding promotions "insufficient" and "unpersuasive" to establish discrimination). Moreover, Henry's so-called statistical evidence is unreliable because his "statistics" are not based on such critical information as the number of employees who make up the pool of potential or actual applicants, the racial makeup of the pool of potential or actual applicants, the number of employees who actually applied for the relevant positions, the racial makeup of the actual applicants, the qualifications of the actual applicants, or that the same decision makers were involved in all of the decisions, among other vital information.  Plaintiff's Rule 56.1 Statement, ¶ 143.  Moreover, Henry admits that his purported statistical analyses is not even based on all promotional announcements, but instead, only those promotional announcements he was able to retain.  *Id.*  Based on these fundamental flaws, Henry's purported statistics are meaningless.  *See Coser v. Moore*, 739 F.2d 746, 750 (2d Cir. 1984) (statistical analyses must take into account the relevant pools of qualified applicants); *Zahorik v. Cornell University*, 729 F.2d 85, 95 (2d Cir. 1984) (where decisions are not made by a single authority, but are highly decentralized, gross statistics are "meaningless."); *Zenni*, 903 F. Supp. at 654 (holding that

---

[5]  Henry's promotion statistics are based entirely on those promotional announcements that he received from Wyeth during his employment and that "he has been able to retain in his records and tabulate to date, which cover the time period March 2004 through October 2005." Plaintiff's Rule 56.1 Statement, ¶ 143. Henry provides no details as to what positions these promotional announcements covered, who the hiring manager was for these positions, or where the positions fell within the Company's organizational structure.

statistics drawn from small samples are "untrustworthy" because "small changes in hiring may prompt dramatic statistical fluctuations").

For the same reasons, the conclusory and speculative claims by Daisy Early and Newton Paul that they believed that they had been treated unfairly because of their race adds nothing to Henry's claims, particularly because neither claims that any of the individuals who made the employment decisions that Henry complains of also had treated them unfairly. *See Wyvill v. United Co. Life Ins.*, 212 F.3d 296, 303 (2d Cir. 2000) ("mini-trials were not probative on issue of whether [plaintiffs] faced discrimination"); *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir. 1985) ("To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases.").

## II.   THE COURT OVERLOOKED A NUMBER OF MATTERS WITH RESPECT TO HENRY'S RETALIATION CLAIMS AND SUMMARY JUDGMENT SHOULD BE GRANTED WITH RESPECT TO THOSE CLAIMS

The Court overlooked a number of undisputed fact matters with respect to Henry's retaliation claims, which, had they been considered, would have mandated granting summary judgment on those claims. Henry's retaliation claims are based on (1) Andrew Espejo's decision to hire Max Katz to a Manager Manufacturing Support Position in December 2004; (2) Katz' decision to place Henry on a Performance Improvement Plan in June 2005; and (3) Katz' 2005 mid-year performance review of Henry. None of these three employment actions were made by individuals who made any of the employment decisions which are the subject of Henry's discrimination claims, including Wardrop, who no longer was in Henry's reporting structure.

In their motion papers, Defendants advanced a number of specific arguments and pointed to a number of undisputed facts demonstrating that Henry cannot prevail on his retaliation claims. However, the Court overlooked these arguments and undisputed facts and denied

Defendants' motion for summary judgment on all of the retaliation claims based solely on the following rationale:

> Since the same evidence must be presented to the jury on Henry's retaliation claims as would be required to prove his claims of disparate treatment race discrimination, the court finds that the proper course of action is to have a jury decide whether defendant's articulated reasons were pretextual, and if so, whether their real reasons for refusing to promote Henry to the Manager Manufacturing Support position, giving him a negative 2005 mid-year performance evaluation, and placing on the PIP were retaliatory or discriminatory.

By overlooking the fact that Henry has **not** asserted a discrimination claim based on the Manager Manufacturing Support position, his 2005 mid-year performance review, and the PIP, and by overlooking other arguments and facts as described below, the Court erred in denying Defendants' motion for summary judgment with respect to Henry's retaliation claims. Accordingly, Defendants' respectfully request that the Court consider the arguments set forth in Defendants' moving papers and grant Defendants' motion for summary judgment with respect to Henry's retaliation claims.

With respect to the Manager Manufacturing Support Position Henry applied for, Defendants offered substantial, undisputed evidence that Espejo had selected Katz for that position for legitimate non-discriminatory reasons. (96-104). Moreover, the only competent evidence Henry presented in an effort to show pretext was that Katz, unlike Henry, had no direct production experience in the area covered by the position. Decision, at 33; Henry Aff. 46.[6] However, Katz did not view this as a requirement of the job, and it in no way suggests that Katz

---

[6] Henry opined that the interview process was a sham because three of the people interviewing had been promoted over him in the past, but this is not evidence of pretext or retaliation. Moreover, Henry's allegations that these individuals "presumably" knew about his complaints of discrimination and that Espejo had asked others to participate in the panel interviews to make the process look objective are completely unsupported by any evidence in the record and are nothing more than Henry's own rank speculation. *See, e.g., Thornton v. Syracuse Savings Bank*, 961 F.2d 1042, 1046 (2d Cir. 1991) ("Once a moving party has made a showing that no material issues of fact are in dispute, mere conjecture or speculation by the party resisting summary judgment does not provide a basis upon which to deny the motion.").

was not qualified for the position. *See Petersen v. Utah Dep't of Correction*, 301 F.3d 1182, 1191 (10th Cir. 2003) (plaintiff's belief that he had "more relevant experience than other applicants is no more than [his] own subjective judgment" and cannot support finding of discrimination); *Warren v. North Shore Univ. Hosp.*, 03 Civ. 0019, 2006 WL 2844259, at *8 (E.D.N.Y. Sept. 29, 2006) ("Determining how to evaluate a candidate's . . . record and how to weigh various factors in making a promotion decision is precisely the sort of decision in which courts do not intervene without evidence that the employer's claimed reason was so lacking in merit as to call into question its genuineness."). Although the Court did not identify any material issues of fact with respect to this claim or explain how Henry met his burden of proof with respect to this claim, the Court inexplicably denied Defendants' motion for summary judgment with respect to this claim.

Similarly, the Court overlooked and did not address Defendants' arguments that Henry had failed to meet his burden of proof with respect to the PIP and mid-year performance evaluation he received in June 2005.[7] Accordingly, Defendants respectfully request that the Court reconsider the denial of summary judgment with respect to Henry's retaliation claims.

## III.    THE CLAIMS AGAINST MCDERMOTT AND WARDROP SHOULD BE DISMISSED

In its motion papers, Defendants argued that the New York State Division of Human Rights Law claims against McDermott and Wardrop should be dismissed because Henry cannot show that either of these individuals personally or directly engaged in any retaliatory or discriminatory act in connection with any of the claims asserted in the Complaint. The Court held that the Title VII claims against Wardrop and McDermott should be dismissed. Decision, at 53. However, Henry asserted no Title VII claims against the individuals. Accordingly, we

respectfully request that the Court consider Defendants' argument and dismiss the New York State Human Rights Law claims against Wardrop and McDermott.

Henry's claims against the individual defendants, Wardrop and McDermott, are asserted only for claimed aiding and abetting Wyeth's alleged discrimination under the New York State Human Rights Law. There is, however, no evidence that either Wardrop or McDermott was involved in any of the actions Henry claims to have been retaliatory for his raising a claim of racial discrimination. Moreover, Wardrop's involvement in the actions claimed to have been discriminatory is limited to Henry's mid-year and year-end performance evaluations in 2003 and to whatever involvement he had in Henry's selection in the Organizational Cascade for the Packaging Supervisor position. McDermott's involvement in the actions claimed by Henry to have been discriminatory against him is limited to McDermott's overall approval as Pearl River Site Managing Director of the results of the Organizational Cascade and his efforts, along with others, to attempt to find resolution at the very beginning of 2004 to Henry's unhappiness with his 2003 annual performance evaluation and his proposed assignment to the Packaging Supervisor position. After that, McDermott moved on to other responsibilities.

Such claims require direct personal involvement and actual personal participation in the discriminatory conduct for liability to attach. *Cerrato v. Durham*, 941 F. Supp. 388, 396 (S.D.N.Y. 1996) (aiding and abetting liability requires actual participation); *Whidbee v. Gazarelli Food Specialties, Inc.*, 223 F.3d 62, 74-75 (2d Cir. 2000) (liability must be predicated on actor's personal involvement). As noted, Wardrop's involvement in actions alleged to be discriminatory was minimal, and he was not involved in anything alleged to have been retaliatory. McDermott was involved only in efforts to resolve Henry's complaints about his 2003 annual performance

---

[7] The Court did address Defendants' argument that the PIP and performance evaluation did not constitute an adverse employment action for purposes of his retaliation claims.

review and his Organizational Cascade assignment. None of these events were racially discriminatory or retaliatory, and therefore, there is no basis to find Wardrop or McDermott personally liable.

## **CONCLUSION**

Based on the foregoing, the Court should reconsider the portion of the Decision denying Defendants' motion for summary and should grant Defendants' motion for summary judgment in its entirety.

Dated: New York, New York
      August 14, 2006

                    ORRICK, HERRINGTON & SUTCLIFFE LLP

                    By: _____
                        Michael Delikat
                        James H. McQuade
                        666 Fifth Avenue
                        New York, New York 10103
                        (212) 506-5000

                    Attorneys for Wyeth Pharmaceuticals, a Division
                    of Wyeth, Walter Wardrop, and Michael McDermott