UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
HOWARD HENRY,                                :
                                                                     :    NO. 05-CV-8106 (WCC)
                       Plaintiff,        :
                                        :
               v.                :
                                        :
WYETH PHARMACEUTICALS, INC.,            :
WALTER WARDROP, ANDREW SCHASCHL,    :
AND MICHAEL MCDERMOTT                :
                                        :
                     Defendants.        :
------------------------------------------------------------X

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE OF STRAY REMARKS

Michael Delikat
James H. McQuade
ORRICK, HERRINGTON & SUTCLIFFE LLP
666 Fifth Avenue
New York, New York 10103
Telephone: (212) 506-5000

Attorneys for Defendants Wyeth Pharmaceuticals, a Division
of Wyeth, Walter Wardrop, and Michael McDermott

OHS East:160358168.2

## TABLE OF CONTENTS

**Page**

I. FACTS ........................................................................................................................... 1
    A. The issues in this lawsuit ................................................................................... 1
    B. The alleged discriminatory animus expressed by supervisors ............................ 3
II. ARGUMENT ................................................................................................................. 6
    A. Evidence of the purported comments is not relevant ......................................... 6
    B. The proffered stray remarks should be excluded under Rule 403 .................... 10
III. CONCLUSION ............................................................................................................ 12

Defendants Wyeth Pharmaceuticals, a Division of Wyeth ("Wyeth"), Walter Wardrop ("Wardrop") and Michael McDermott ("McDermott") (referred to collectively as "Defendants") respectfully submit this motion *in limine* to preclude plaintiff Howard Henry ("Plaintiff" or "Henry") from offering any evidence, including documents or eliciting testimony, of alleged racially discriminatory remarks testified to by former Wyeth employees Daisy Early and Newton Paul. The testimony concerning these incidents is, at best, ambiguous on its face concerning any racial content or intent, and the incidents are widely unrelated in time to any of the events Henry claims were discriminatory or retaliatory as to him and have no subject-matter connection to any employment decision concerning Henry. Any evidence, testimony or argument referring to them, therefore, must be excluded. Any such evidence, testimony or argument is not relevant to any issues in this case and poses a substantial risk of unfairly prejudicing Defendants, confusing or misleading the jury, inflaming the jury's emotions, biasing the jury against Defendants, and delaying the trial, because Defendants would be forced to prove that any implied claims concerning such incidents are without merit.

I.  **FACTS**

   A.  **The issues in this lawsuit.**

Henry is African-American and a former employee of Wyeth who maintains this action against Wyeth, Walter Wardrop, his supervisor at Wyeth from August 2000 to January 2004, and Michael McDermott, the Managing Director of Wyeth's Pearl River facility from 2002 through February 2004.[1] McQuade Decl. Ex. 3, at 1. Henry asserts claims for discrimination based upon his race and color under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*,

---

[1] The facts herein are taken from those found by the Court to be undisputed in its Memorandum Decision and Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment and Reassigning the Action to White Plains Pursuant to Local Rule 22, filed herein July 30, 2007 (the "Order"). A copy of the Order is attached as Exhibit 3 to the Declaration of James H. McQuade, ("McQuade Decl."), dated December 19, 2007, and filed herewith.

under 42 U.S.C. 1981, and under the New York State Human Rights Law, Exec. Law § 290 *et seq.*

Henry bases his discrimination claims on allegations that he suffered discrimination on account of his race on several occasions between December 2001 and July 2005 when he did not receive certain promotions, was given performance evaluations that he disagreed with, was transferred to a position as part of a corporate reorganization that he alleges constituted an effective demotion, and was placed on a performance improvement plan. McQuade Decl. Ex. 1, at 1. He also claims that he suffered retaliation for complaining of the discriminatory treatment he experienced. *Id.*

The promotions or transfers Henry claims he was discriminatorily denied occurred at different times, and the decisions concerning them were made by different decision-makers who were in different decision-making hierarchies. *Id.* at 5-12, 18-21, 31-33.

Wardrop had promoted Henry to the position of Production Engineer in Wyeth's Consumer Health Division in August 2000 and gave him his performance evaluations for 2000, 2001, 2002 and 2003. Order, at 4. For 2000, Wardrop gave Henry an overall rating of "3" out of 5. *Id.* For 2001 and 2002, Wardrop gave Henry an overall rating of "4" out of 5. *Id.* Wardrop also gave Henry an overall rating of "3" out of 5 in 2003, which Henry claims were discriminatory. *Id.* In January 2004, as part of a reorganization of the Pearl River site, Wardrop was assigned to a new position and was no longer in a line of supervision over Henry. *Id.* at 30. Henry's performance evaluations after that time were done by other managers, Andrew Espejo and Max Katz. *Id.* at 30, 33-40. In that same reorganization, Henry was reassigned to, though not ultimately placed in, a position as Packaging Supervisor, which he regarded as a demotion. *Id.* at 30.

McDermott did not have any encounters with Henry until January 2004, when Henry had two meetings with him to discuss his complaints about his assignment to the Packaging Supervisor position and his 2003 performance evaluations. *Id.* at 24-25. McDermott had no involvement in making specific assignments in the December 2003 reorganization below the level of several director positions reporting directly to him – far above Henry's level in the organization. *Id.* at 19. Henry claims that, in the course of these conversations with McDermott, McDermott made a disputed comment about diversity. *Id.* at 25. As of February 2004, McDermott moved out of the Consumer Health Division to the Vaccine Division and no longer had any responsibility for the division in which Henry worked. *Id.* Subsequent discussions with Henry about the Packaging Supervisor assignment and his 2003 performance evaluations took place with other managers, as did the evaluation of his performance in 2004 and 2005. *Id.* at 21-31, 33-39.

Henry filed a charge of discrimination with the New York State Division of Human Rights on or about September 24, 2004, alleging that he had been denied certain promotions and had received a transfer to the Packaging Department because of his race. *Id.* at 42. On or about October 15, 2005, Henry filed a second charge of discrimination with the EEOC, alleging retaliation for filing his first charge of discrimination. *Id.*

Henry took a medical leave of absence from his Wyeth employment on August 5, 2005, and did not return to work at Wyeth thereafter. *Id.* at 41. On February 6, 2006, because Henry had chosen not to submit the requisite medical documentation to support a continued medical leave, his employment with Wyeth was terminated. *Id.*

### B. The alleged discriminatory animus expressed by supervisors.

Henry cites several incidents involving alleged racially discriminatory remarks made by Wyeth employees.

First, there has been testimony that, in the spring of 2001, Daisy Early, an African-American employee, complained to Robert Bracco, a manager, that her request for a shift change was denied unfairly, and that he responded: "So sue me. All my supervisors are black so you can't prove discrimination." McQuade Decl. Ex. 1, at ¶ 3; Ex. 3 at 42. There was further testimony that, a few weeks after this incident, Bracco became ill and made several comments to Jennifer Hallock, a Wyeth employees, suggesting that "Daisy tried to put voodoo on [him]." *Id.* Bracco was not in a line of supervision over Henry at the time, and the comments occurred, if they occurred at all (these alleged comments would be disputed at trial), at least six months before the first event constituting a discriminatory denial of promotion claimed by Henry in December 2001 – to a Project Engineer position. Moreover, Bracco did not make any of the employment decisions that Henry claims were discriminatory or retaliatory in this action.

Second, Early testified that, on a morning after the first incident with Bracco, and presumably after Bracco had become ill, Defendant Wardrop stopped Early on her way to work and said: "Daisy, what are you doing at home? Sticking pins in a doll?" What have I ever done to you?" McQuade Decl. Ex. 1, at ¶ 5; Ex. 3, at 42. Wardrop denies making these comments. Again, the incident, if it occurred, was months before the first event constituting a discriminatory denial of promotion claimed by Henry in December 2001. *Id.*, Ex. 3, at 5. Moreover, the hiring manager for that December 2001 promotion decision was not Wardrop, but Kevin Costello, who hired Cara Muscolo for the Project Engineer position open at that time because he believed she was the best candidate for the job, and Henry himself had testified that he could state no basis for believing that he was not selected for this position because of his race or color, other than the fact that he was denied promotions on future occasions involving different decision-makers at Wyeth. *Id.* at 5-6.

Next, after a gap of three years, Henry elicited testimony that, in February 2004, Newton Paul, a Haitian-American, witnessed Joe Vitanza (then current Managing Director of plaintiff's division and Wardrop's immediate supervisor) refer to a malfunctioning alarm system as a "tar baby that I just can't get off my back[2]," in response to which Paul testified that he was deeply offended. *Id.*, Ex. 2, at ¶ 3; Ex. 3, at 43. Vitanza would testify at trial that, when an employee told Vitanza she was offended by his use of the term, he looked it up in the dictionary, and the definition provided in the dictionary did not include any reference to a racial connotation, but instead defined the term as a difficult situation from which one has a hard time extricating himself. Nevertheless, Vitanza apologized to the employee for using the term, and told her he would be glad to speak to anyone else who had been offended.

As of February 2004, Wardrop no longer had supervisory responsibility for Henry, having been moved to a different assignment in the reorganization implemented in December 2003. *Id.*, Ex. 3, at 30. In addition, Newton Paul claims that, in the "winter" of 2004 [not specified as at the beginning or end of 2004] Paul had "witnessed" Wardrop making fun of Manny Rivera, a Hispanic employee, by pulling his [Wardrop's] pants down so that the waistband was around his thighs, supposedly imitating the dress of hip-hop youth culture, and making other gestures reflecting his perception of the behavior of Hispanic youth and saying, "Is Manny the kind of guy to war his pants hanging down like this?" *Id.*, Ex. 2, at ¶ 5. At this point, whether it was at the beginning or end of 2004, because of the facility-wide reorganization, Wardrop was no longer in a line of supervision over Henry. Wardrop denies that he made any gestures reflecting his perception of the behavior of Hispanics. *Id.*, Ex. 3, at 30.

---

[2] Paul also testified to his application for the position of Compliance Manager, for which he asserted he was qualified, and that he was never interviewed for it, and that the position was eventually given to a white employee who purportedly had less experience and less impressive qualifications. This claim will be addressed in Defendants' separate motion in limine concerning "me-too" evidence.

The foregoing appears to be the sum total of collateral evidence Henry has to present in support of his claim that the management of Wyeth demonstrated discriminatory or retaliatory animus based upon his African-American race.

## II. ARGUMENT

Henry should be precluded from presenting testimony or other evidence or arguments concerning the testimony of Early or Paul, or anyone else testifying to the same effect. This evidence must be excluded because:

1. It is not relevant and so are inadmissible under Rules 401 and 402 of the Federal Rules of Evidence.

2. It concerns wholly collateral issues and any minimal probative value of evidence or testimony regarding these remarks is substantially outweighed by the danger of unfair prejudice and the risk of delay, confusion and waste, and is thus excludable under Rule 403 of the Federal Rules of Evidence.

### A. Evidence of the purported comments is not relevant.

Evidence of these stray remarks must be excluded under Rules 401 and 402 of the Federal Rules of Evidence. Rule 401 provides: "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 402 provides, in relevant part: "Evidence which is not relevant is not admissible."

"Implicit in [the] definition [of Rule 401] are two distinct requirements: (1) the evidence must be probative of the proposition it is offered to prove, and (2) the proposition to be proved must be one that is of consequence to the determination of the action." *United States v. Hall*, 653 F.2d 1002, 1005 (5th Cir. 1981) (citations omitted). This Court, therefore, has broad discretion regarding the admission of evidence and its evaluation of relevance and its evidentiary

decisions are entitled to substantial deference. *See Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 150 (2d Cir. 1997). The Second Circuit has stated that district courts must be vigilant in excluding evidence which does not relate to the issues presented in a discrimination case. *See Annis v. County of Westchester*, 136 F.3d 239, 247 (2d Cir. 1998) (once evidence was admitted, "the well had been poisoned and, despite the court's best efforts, there was no way to decontaminate it"); *see also Schrand v. Federal Pac. Elec. Co.*, 851 F.2d 152, 156 (6th Cir. 1988) (evidence did not meet standards of Rules 401 and 402 since "there was no evidence from which the alleged statements of witnesses could logically or reasonably be tied to the decision to terminate [plaintiff]"); *Goff v. Continental Oil Co.*, 678 F.2d 593, 596-97 (5th Cir. 1982) (witness testimony irrelevant where they "could not testify as to [the defendant's] motive, intent, or purposefulness * * *. Because this testimony would not have related to the issue of whether [plaintiff] suffered discrimination, the court did not err in refusing to admit this testimony").

The purported comments testified to by Early and Paul are, first of all, vague, opaque and not apparently racially discriminatory or retaliatory on their face. *See Phipps v. Comprehensive Comm. Dev. Corp.*, 2005 WL 287413, at *18-19 (S.D.N.Y. Feb. 4, 2005) (statements by supervisor that "they were all Jamaicans" and "we are having all these problems because of these people" are too vague to be considered explicitly discriminatory epithets). Second, they have absolutely nothing whatsoever to do with any of the decisions or actions Henry claims to have been racially discriminatory or retaliatory. In the first place, the comments attributed to Early occurred, if they occurred, at least six months before the first incident Henry claims to have been discriminatory, and they simply do not relate to him or to any employment decisions concerning him in any respect. Indeed, the first comment testified to by Early was purportedly by Bracco, and there is no evidence that Bracco ever had any direct involvement in any employment

decision concerning Henry. The comments volunteered by Paul are equally racially opaque; they occur, if they occurred, three years after the comments reported by Early, with nothing in the meantime to link the two episodes of comments; and they also have no apparent relationship to any employment decision concerning Henry, if indeed they were made while Wardrop was still Henry's supervisor – which the testimony and evidence in the record does not establish.

These statements, if made, are classic examples of "stray remarks" that are remote in time and have no nexus to the incidents claimed to ground Henry's promotion or retaliation claims. As such, they have no probative value and should be excluded form evidence under Rules 401 and 402.

The law is clear "'that stray remarks in the workplace, by themselves, and without a demonstrated nexus to the complained of personnel actions'" cannot be used to prove discrimination. *Bern v. United Mercantile Agencies, Inc.*, 942 F. Supp. 217, 220 (S.D.N.Y. 1996) (quoting *O'Connor v. Viacom, Inc.*, No. 93 Civ. 2399 (LMM), 1996 WL 194299, at *5 (S.D.N.Y. Apr. 23), aff'd, 104 F. 3d 356 (2d Cir. 1996)). Indeed, "[s]tray remarks [alone], even if made by a decisionmaker, do not constitute sufficient evidence [to support] a case of employment discrimination." *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998). *See also Muse v. New York City Dep't of Housing Preservation*, No. 96-CV-62221 (FB) (ASC), 2000 WL 1209427, at *4 (E.D.N.Y. Aug. 22, 2000) ("'[s]tray remarks by non-decision-makers or by decision-makers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision'") (citation omitted), *aff'd*, 8 Fed.Appx. 80 (2d. Cir. 2001); *Marks v. New York Univ.*, 61 F. Supp. 2d 81, 99-100 (S.D.N.Y. 1999) (stray sexist remarks are insufficient to survive summary judgment on sex discrimination claim); *Ngwu v. Salvation Army*, No. 96 Civ. 0058 (DAB), 1999 WL 2873, at *5 (S.D.N.Y. Jan

4, 1999) (supervisor's comments that "Nigerians came to American and take away their jobs" and calling plaintiffs "fucking Nigerians" insufficient to create inference of national origin discrimination); *O'Connor,* 1996 WL 194299, at *5 (supervisor comparing Irish to animals and decision-maker uttering word "mick" on two occasions insufficient to demonstrate causal nexus to plaintiff's termination).

This is particularly true where, as here, none of the statements were proximate in time to any of the events claimed by Henry to have been discriminatory or retaliatory. The alleged remarks purportedly heard by Early occurred at least six months prior to the first promotional decision claimed by Henry to have been discriminatory; the decision itself was made not by Wardrop, who was implicated by Early in one of the opaque comments, but by Kevin Costello, a different supervisor; and the other manager implicated in the Early comments, Bracco, is not shown to have been involved in any employment decision concerning Henry at all. As for the opaque comments reported by Paul, they did not occur, if they occurred at all, until the "winter of 2004", when Wardrop may no longer have had any supervisory responsibility for Henry, and they are not linked in any way to any employment decision concerning him. Under such circumstances, courts hold that such adventitious evidence is not relevant. *See Spence v. Maryland Cas Co.*, 803 F. Supp. 649, 668 (W.D.N.Y. 1992); *aff'd*, 995 F. 2d 1147 (2d Cir. 1993) (isolated and ambiguous remarks are irrelevant, prejudicial, and insufficient to establish discrimination); *Lenhoff v. Getty*, No. 97 Civ. 9458 (LMM), 2000 WL 977900, at *5 (S.D.N.Y. July 17, 2000) (comments by decision-maker, including "Hitler should have killed all the Jews" made at least six months before plaintiff's termination insufficient to establish discriminatory intent on religious discrimination claim).

Moreover, Henry does not claim that Wardrop or any of the other Wyeth supervisors or managers communicated any racist or retaliatory sentiments to him, or to anyone involved in the employment decisions concerning him. *See Slathar v. Sather Trucking Corp.*, 78 F.3d 415, 419 (8th Cir.) (court excluded evidence of a stray remark by defendant's employee on relevance grounds because it was not causally related to employment decision), *cert. denied*, 519 U.S. 867 (1996).

Hence, the proffered testimony here of Early and Paul concerning opaque but conjecturally racially discriminatory remarks on episodic occasions unrelated to employment decisions concerning Henry is irrelevant and must be excluded pursuant to Rule 402.

### B. The proffered stray remarks should be excluded under Rule 403.

Evidence of the proffered testimony of Early and Paul should also be excluded under Rule 403 of the Federal Rules of Evidence. Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The evidence of purported remarks by Bracco and Wardrop has all of these doleful characteristics.

The facts of the testimony of remarks proffered from Early and Paul have relevance to Henry's claims – and only those of his claims that involve Wardrop – only insofar as they might tend to besmirch the character of Wardrop and generally smear him as a racist – although the purported remarks on their face do not imply such an orientation and are not focused upon African-Americans, discrimination against which is the gravamen of Henry's claims. Such an attempt at collateral character assassination is prohibited by Federal Rules of Evidence, Rule 404(b), which provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." It is, therefore,

a collateral attack that carries a greater danger of unfair prejudice, confusion and delay that outweighs any potential relevance. *See Orjias v. Stevenson*, 31 F.3d 995, 1008 (10th Cir.) (matter is collateral issue if it could not be introduced in evidence for any purpose other than for impeachment), *cert. denied,* 513 U.S. 1000 (1994).

The only reason that Henry would have for offering evidence of the comments proffered by Early and Paul would be to bias the jury against Defendants on the basis that Wardrop, who was clearly not involved in or responsible for all of the events which Henry claims to have been discriminatory or retaliatory, was biased against African-Americans in a generalized way, irrespective of the fairness or lack thereof of his decisions concerning Henry, and that, because of such imputed bias, all of the actions of Defendants toward Henry were motivated by discriminatory or retaliatory animus. Such a generalize attack would thereby have a prejudicial and confusing effect in leading the jury potentially to believe that, because Wardrop may on one or another occasion unrelated to any decision concerning Henry have expressed frustration or sarcasm that might, with imagination, be inferred to have been related to racial stereotyping, he – and every other Wyeth supervisor or manager involved in employment decisions concerning Henry, whether in concert with Wardrop or not – was motivated by discriminatory or retaliatory animus against Henry regardless of the facts of any particular employment decision or their involvement in it. This conclusion would be a grossly prejudicial *non-sequitur* and lead to an unfair verdict.

For these reasons, courts hold that, even if stray remarks are deemed marginally relevant, any slight probative value they may have is far outweighed by the danger of unfair prejudice and thus, that the statements should be excluded pursuant to Rule 403 of the Federal Rules of Evidence. *See Haskell v. Kamen Corp.*, 743 F.2d 113, 120 (2d Cir. 1984) (error to admit stray

remarks where none of the statements were relevant to question of whether plaintiff was terminated on account of his age because "substantial likelihood that they prejudiced the jury against the Company in [plaintiff's] favor").

The evidence of remarks proffered by Early and Paul, therefore, plausibly threatens jury confusion, improper conclusions, prejudice and an unfair verdict and unnecessary delay if such evidence were to be admitted.

For all of these reasons, the evidence of stray remarks proffered by Early and Paul should also be excluded as unfairly prejudicial, confusing and misleading and wasteful of time under Rule 403.

### III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter an order precluding Henry from offering at trial all testimony and evidence of any kind relating to or reflecting proffered testimony of Early and Paul concerning stray remarks purportedly evidencing racial or retaliatory animus on the part of Defendants or their agents.

Dated: New York, New York
December 19, 2007

Respectfully submitted,

Michael Delikat
James H. McQuade
Heather Glatter
ORRICK, HERRINGTON & SUTCLIFFE LLP
666 Fifth Avenue
New York, New York 10103
Telephone: (212) 506-5000

By: _____
James H. McQuade

Attorneys for Defendants Wyeth Pharmaceuticals, a Division of Wyeth, Walter Wardrop and Michael McDermott