UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

| | |
|---|---|
| HOWARD HENRY,<br><br>               Plaintiff,<br><br>          v.<br><br>WYETH PHARMACEUTICALS, INC.,<br>WALTER WARDROP, ANDREW SCHASCHL,<br>AND MICHAEL MCDERMOTT<br><br>               Defendants. | NO. 05-CV-8106 (WCC) |

------------------------------------------------------------X


# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION IN LIMINE NO. 2 TO EXCLUDE "ME-TOO" EVIDENCE OF OTHER DISCRIMINATION CLAIMS


Michael Delikat
James H. McQuade
Heather Glatter
ORRICK, HERRINGTON & SUTCLIFFE LLP
666 Fifth Avenue
New York, New York 10103
Telephone: (212) 506-5000

Attorneys for Defendants Wyeth Pharmaceuticals, a Division
of Wyeth, Walter Wardrop, and Michael McDermott

# TABLE OF CONTENTS

**Page**

I.    FACTS ....................................................................................................... 2

    A.    The issues in this lawsuit ................................................................. 2

    B.    The purported evidence of racial discrimination by other employees ................... 4

II.   ARGUMENT ............................................................................................ 6

    A.    The proffered "me-too" evidence is not relevant ............................... 6

    B.    Even if marginally relevant, the evidence is excludable under Rule 403 .............. 9

III.  CONCLUSION ........................................................................................ 11

Defendants Wyeth Pharmaceuticals, a Division of Wyeth ("Wyeth"), Walter Wardrop ("Wardrop") and Michael McDermott ("McDermott") (referred to collectively as "Defendants") respectfully submit this motion *in limine* to preclude plaintiff Howard Henry ("Plaintiff" or "Henry") from offering any evidence, including documents or eliciting testimony, by employees or former employees of Wyeth claiming that they experienced racial discrimination or retaliation in their own employment at Wyeth. Defendants anticipate that Henry will attempt to testify about race discrimination claims or lawsuits brought by other employees against Defendants or will attempt to introduce evidence from a number of employees and former employees of Wyeth, claiming that they, in their several and distinct employments with Wyeth, experienced racial discrimination or retaliation for making claims of racial discrimination, or that they observed other employees, other than Henry, experiencing such discrimination or retaliation. Significantly, Henry has not asserted that *any* of these potential witnesses has any first-hand knowledge of the events or surrounding circumstances he claims to have been racially discriminatory or retaliatory as to him. Thus, the introduction of such testimony and other evidence would transform the trial of this case into a series of separate mini-trials with respect to the harm allegedly suffered individually and personally by the proposed witnesses or the individuals they would testify about, without the benefit of furthering the jury's understanding of whether Henry was discriminated against.

Any evidence, testimony or argument referring to such other claims, lawsuits, or witnesses, therefore, must be excluded. Any such evidence, testimony or argument is not relevant to any issues in this case and poses a substantial risk of unfairly prejudicing Defendants, confusing or misleading the jury, inflaming the jury's emotions, biasing the jury against

Defendants, and delaying the trial, because Defendants would be forced to go on diversionary excursions to prove that any claims concerning such discrete incidents are without merit.

## I.     FACTS

### A.     The issues in this lawsuit.

Henry is African-American and a former employee of Wyeth who maintains this action against Wyeth, Walter Wardrop, his supervisor at Wyeth from August 2000 to January 2004, and Michael McDermott, the Managing Director of Wyeth's Pearl River facility from 2002 through February 2004.[1] McQuade Decl. Ex. 4, at 1. Henry asserts claims for discrimination based upon his race and color under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, under 42 U.S.C. § 1981, and under the New York State Human Rights Law, Exec. Law § 290 *et seq.*

Henry bases his discrimination claims on allegations that he suffered discrimination on account of his race on several occasions between December 2001 and July 2005 when he did not receive certain promotions, was given performance evaluations that he disagreed with, was transferred to a position as part of a corporate reorganization that he alleges constituted an effective demotion, and was placed on a performance improvement plan. *Id.*, at 1. He also claims that he suffered retaliation for complaining of the discriminatory treatment he experienced. *Id.*

The promotions or transfers Henry claims he was discriminatorily denied occurred at different times, and the decisions concerning them were made by different decision-makers who were in different decision-making hierarchies. *Id.* at 5-12, 18-21, 31-33.

---

[1] The facts herein are taken from those found by the Court to be undisputed in its Memorandum Decision and Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment and Reassigning the Action to White Plains Pursuant to Local Rule 22, filed herein July 30, 2007 (the "Order"). A copy of the Order is attached as Exhibit 4 to the Declaration of James H. McQuade, ("McQuade Decl."), dated December 19, 2007 and filed herewith.

Wardrop had promoted Henry to the position of Production Engineer in Wyeth's Consumer Health Division in August 2000 and gave him his performance evaluations for 2000, 2001, 2002 and 2003. Order, at 4. For 2000, Wardrop gave Henry an overall rating of "3" out of 5. *Id.* For 2001 and 2002, Wardrop gave Henry an overall rating of "4" out of 5. *Id.* Wardrop also gave Henry an overall rating of "3" out of 5 in 2003, which Henry claims were discriminatory. *Id.* In January 2004, as part of a reorganization of the Pearl River site, Wardrop was assigned to a new position and was no longer in a line of supervision over Henry. *Id.* at 30. Henry's performance evaluations after that time were done by other managers, Andrew Espejo and Max Katz. *Id.* at 30, 33-40. In that same reorganization, Henry was reassigned to, though not ultimately placed in, a position as Packaging Supervisor, which he regarded as a demotion. *Id.* at 30.

McDermott did not have any encounters with Henry until January 2004, when Henry had two meetings with him to discuss his complaints about his assignment to the Packaging Supervisor position and his 2003 performance evaluations. *Id.* at 24-25. McDermott had no involvement in making specific assignments in the December 2003 reorganization below the level of several director positions reporting directly to him – far above Henry's level in the organization. *Id.* at 19. Henry claims that, in the course of these conversations with McDermott, McDermott made a disputed comment about diversity. *Id.* at 25. As of February 2004, McDermott moved out of the Consumer Health Division to the Vaccine Division and no longer had any responsibility for the division in which Henry worked. *Id.* Subsequent discussions with Henry about the Packaging Supervisor assignment and his 2003 performance evaluations took place with other managers, as did the evaluation of his performance in 2004 and 2005. *Id.* at 21-31, 33-39.

Henry filed a charge of discrimination with the New York State Division of Human Rights on or about September 24, 2004, alleging that he had been denied certain promotions and had received a transfer to the Packaging Department because of his race. *Id.* at 42. On or about October 15, 2005, Henry filed a second charge of discrimination with the EEOC, alleging retaliation for filing his first charge of discrimination. *Id.*

Henry took a medical leave of absence from his Wyeth employment on August 5, 2005, and did not return to work at Wyeth thereafter. *Id.* at 41. On February 6, 2006, because Henry had chosen not to submit the requisite medical documentation to support a continued medical leave, his employment with Wyeth was terminated. *Id.*

**B.    The purported evidence of racial discrimination by other employees.**

Henry has identified 39 proposed witnesses in an amendment to the Joint Pre-trial Order he says he may call as part of his case in chief. McQuade Decl., ¶ 5. While the subject matter to which these witnesses may testify is not identified by Henry, two of them, Daisy Early and Newton Paul, are plaintiffs in other race discrimination actions against Wyeth and/or Wardrop and have submitted affidavits in support of Henry's claims in this case. McQuade Decl., ¶¶ 3-5 and Exs. 2 and 3. In addition, Henry has identified three other witnesses (Manuel Rivera, Christopher Snell, and Jose Torres) that, according to Henry, may testify that they felt that had been discriminated or retaliated against during their employment at Wyeth. McQuade Decl., Ex. 1. In addition, others on Henry's amended proposed witness list may be proffered to testify about their own purported experiences of race discrimination or retaliation or such discrimination or retaliation they claim to have witnessed against other individuals, but not Henry. These individuals have  no personal knowledge of the employment actions or decisions taken concerning Henry, and they worked in various areas, under different supervisors, at various times. Their testimony can be expected to focus upon how, from their respective subjective

viewpoints, Wyeth discriminated or retaliated against them or employees other than Henry. Their competent testimony can be expected to focus entirely upon their own personal experiences, or upon the individual experiences of employees other than Henry.

The claims of Newton Paul, summarized in the Court's Order, typify the kinds of testimony to be expected from these witnesses. In May 2005, Paul applied for the position of Compliance Manager in the Vaccine Group. McQuade Decl. Ex. 4, at 43. He made his application to Maura Corcoran there. *Id.* He maintains he was qualified for the position but never received a response to his application and was never interviewed for it, and that it was eventually given to Mike Curry, a white employee, who purportedly had less experience and less impressive qualifications. *Id.* Henry did not work in the Vaccine Group, and there is no indication he ever had any dealings with Corcoran or had any interest in, qualification for or interaction with the Compliance Manager position or any of the people who were involved in or candidates for the position Paul says he applied for and did not get. *Id.* The facts to which Paul can be expected to testify could only possibly have relevance to Henry's claims if those facts were first demonstrated to be true, and, even then, there would be questions to be answered about the relationship of requirements for the job to Paul's qualifications, the nature of and identity of the participants in the decision-making process, and a whole host of other questions to determine whether Paul's experience was unique or discrete or had any relationship to what Henry claims happened to him. *Id.* In short, in order to determine the validity and relevance of Paul's claims to Henry's, the Court would have to conduct a trial within a trial of Paul's claims. There is no reason to believe that the same cannot be expected of most, if not all, of the claims of the remainder of Henry's proposed army of collateral witnesses. Such attempted proofs would materially delay the trial and divert attention from the facts of Henry's claims.

## II.    ARGUMENT.

Henry should be precluded from presenting documents, testimony or other evidence or arguments of such "me-too" claims by the proposed witnesses identified above and others he may attempt to call who have no first-hand knowledge of the facts of Henry's claims. These matters must be excluded because:

1.      They are not relevant and so are inadmissible under Rules 401 and 402 of the Federal Rules of Evidence.

2.      They are collateral issues that would delay and confuse the trial of this case by a lengthy series of separate mini-trials with respect to the harm allegedly experienced or witnessed by the proposed witnesses, without the benefit of furthering the jury's understanding of whether Henry was discriminated or retaliated against. Any minimal probative value of evidence or testimony that might surface from such presentations would be substantially outweighed by the danger of unfair prejudice and the risk of delay, confusion and waste, and is thus excludable under Rule 403 of the Federal Rules of Evidence.

### A.    The proffered "me-too" evidence is not relevant.

"Me-too" evidence of discrimination or retaliation claims by witnesses who have no first-hand knowledge of the circumstances and facts surrounding the Plaintiff's claims is irrelevant and must be excluded under Rules 401 and 402 of the Federal Rules of Evidence.[2] Rule 401 provides: "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable

---

[2] The issue of the admissibility of "me-too" evidence is presently before the Supreme Court of the United States in *Sprint/United Management Company v. Mendelsohn*, No. 06-1221. Oral argument was heard on December 3, 2007, and a decision is expected this term. The case arises on certiorari to the Tenth Circuit. Until there is further guidance from the Supreme Court, Defendants respectfully submit that the Court should follow Second Circuit law.

than it would be without the evidence." Rule 402 provides, in relevant part: "Evidence which is not relevant is not admissible."

"Implicit in [the] definition [of Rule 401] are two distinct requirements: (1) the evidence must be probative of the proposition it is offered to prove, and (2) the proposition to be proved must be one that is of consequence to the determination of the action." *United States v. Hall*, 653 F.2d 1002, 1005 (5th Cir. 1981) (citations omitted). This Court, therefore, has broad discretion regarding the admission of evidence and its evaluation of relevance and its evidentiary decisions are entitled to substantial deference. *See Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 150 (2d Cir. 1997). The Second Circuit has stated that district courts must be vigilant in excluding evidence which does not relate to the issues presented in a discrimination case. *See Annis v. County of Westchester*, 136 F.3d 239, 247 (2d Cir. 1998) (once evidence was admitted, "the well had been poisoned and, despite the court's best efforts, there was no way to decontaminate it"); *see also Schrand v. Federal Pac. Elec. Co.*, 851 F.2d 152, 156 (6th Cir. 1988) (evidence did not meet standards of Rules 401 and 402 because different decision-makers were involved, leaving "no evidence from which the alleged statements of witnesses could logically or reasonably be tied to the decision to terminate [plaintiff]"); *Goff v. Continental Oil Co.*, 678 F.2d 593, 596-97 (5th Cir. 1982) (testimony by employees located in other departments and supervised by individuals other than defendant irrelevant because they "could not testify as to [the defendant's] motive, intent, or purposefulness" and therefore such "testimony would not have related to the issue of whether [plaintiff] suffered discrimination").

What is in issue in this case is employment decisions taken concerning Henry. It is axiomatic that an employment decision is made by the person who made it, by the decision-maker. The fact that someone else may harbor bias is not probative of claims by a plaintiff who

is not affected by it. The Second Circuit has squarely ruled that testimony regarding alleged discrimination from employees other than the plaintiff should be excluded because such testimony is irrelevant. *See, e.g., Haskell v. Kaman Corp.*, 743 F.2d 113, 121-22 (2d Cir. 1984) (district court erred in allowing six former officers of defendant corporation to testify about circumstances of their own terminations as well as four other former employees because such testimony was not relevant to question of whether Haskell was terminated for discriminatory reasons); *Nobler v. Beth Israel Med. Ctr.*, 735 F. Supp. 65, 67-68 (S.D.N.Y. 1990) (witness may not testify in support of plaintiff's claim of age discrimination where testimony related to alleged age discrimination at the hands of a different decision-maker); *Franco-Rivera v. Chairman of the Bd. of Directors*, 751 F. Supp. 13, 14 n.1 (D.P.R. 1990) (defendant's motion in limine to exclude testimony of other employees granted where "plaintiff intended to call [other employees] to testify about their own discriminatory complaints, inasmuch as it would be in a large measure legally irrelevant because they would not serve to support his own individual claims"); *Mareno v. Madison Square Garden, L.P.*, No. 98 Civ. 2719 (WHP) (JCF), 2000 U.S. Dist. LEXIS 13941, at **6-7 (S.D.N.Y. 2000) (for evidence of discrimination against other employees to be relevant, other employees must be similarly situated to the plaintiff "in all material respects," including being supervised by the same decision-maker) (relying upon *Norville v. Staten Island University Hospital*, 196 F.3d 89, 95 (2d Cir. 1999)).

There is no indication that any of the parade of proposed "me-too" witnesses Henry may proffer here experienced, or claims to have experienced, racial discrimination or retaliation by any of the supervisors or managers who were decision-makers in the promotions or other events Henry claims to have been discriminatory or retaliatory. There is no indication that any of these proposed witnesses is or was similarly situated to Henry with respect to any employment

decision.  There is no allegation or evidence of a pattern or practice of racial discrimination or retaliation at Wyeth in this case.  The testimony of such witnesses is, therefore, irrelevant and must be excluded under Rule 402.

**B.     Even if marginally relevant, the evidence is excludable under Rule 403.**

Evidence of the proposed "me-too" claims should also be excluded under Rule 403 of the Federal Rules of Evidence.  Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  The "me-too" evidence proposed to be proffered by Henry's train of witnesses threatens overwhelming delay, jury confusion and unfair prejudice.

Courts routinely exclude such collateral, distracting and marginally relevant evidence under Rule 403.  *See, e.g., Kinan v. City of Brockton*, 876 F.2d 1029, 1034-35 (1st Cir. 1989) (evidence of prior civil rights actions against police officer excluded because potential for confusion, waste of time, and prejudice outweighed any probative value); *Lanham v. Whitfield*, 805 F.2d 970, 972 (11th Cir. 1986) (evidence of litigation between defendant and other party excluded due to risk of confusion and prejudice).

Indeed, allowing evidence of the treatment of these individuals by Wyeth would be particularly prejudicial because Henry has no direct evidence that any of the decisions he complains about was based upon his race or upon retaliatory animus and is relying only upon circumstantial evidence.  *See Wyvill v. United Cas. Life Ins. Co.*, 212 F.3d 296, 304 (5th Cir.) ("[g]iven the plaintiffs' inability to offer any direct evidence of age discrimination, this parade of anecdotal witnesses, each recounting his own, entirely unrelated contention of age discrimination at the hands of the defendant, substantially prejudiced [the defendant]"), *reh'g en banc denied*, 232 F.3d 212 (5th Cir. 2000), *cert. denied*, 531 U.S. 445 (2001).  Similarly, the Second Circuit

has observed in an analogous age discrimination case that the "'strongest jury instructions could not have dulled the impact of a parade of witnesses, each recounting his contention that defendant had laid him off because of his age.'" *Haskell,* 743 F.2d at 122 (*quoting Moorhouse v. Boeing Co.,* 501 F. Supp. 390, 393 n.4 (E.D. Pa. 1980), *aff'd mem.*, 639 F.2d 774 (3d Cir.)).

In addition, courts routinely exclude evidence of other alleged acts of discrimination unrelated to the plaintiff because it improperly adds an emotional element to the plaintiff's case. *See Schrand*, 851 F.2d at 156 (testimonial evidence of discrimination or harassment of other individuals would improperly add emotional element to plaintiff's case). The danger that emotion could improperly taint a trial is specifically recognized in the Advisory Committee Notes to Rule 403: "'[u]nfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."

Moreover, excluding this evidence will ensure that the jury's decision will not be made upon an improper basis. *See Schrand*, 851 F.2d at 156 (reversing district court's admission of testimony from two other individuals who alleged discriminatory treatment because it "tended to confuse the issue by focusing the jury's attention on two totally unrelated events * * * [so that] there was a distinct danger that the jury would assume a connection that was never proven between * * * the two witnesses and [the plaintiff]").

The jury could well be tempted to find for Henry based upon ill feelings for Wyeth, or sympathy for a particular third-party witness, rather than upon any finding that Henry himself was treated adversely because of his race and that all Defendants violated the law with respect to Henry. In such a case, the evidence would be multiply pernicious, because it would carry over a taint from the jury's dislike to Wyeth arising from some or all of such testimony to the individual

defendants Wardrop and McDermott, who have had no involvement with any of Henry's "me-too" witnesses.

Finally, the introduction of the "me-too" evidence Henry contemplates would enormously delay the progress of the trial and divert attention from the significant elements of Henry's case.

For all of these reasons, the proposed "me-too" evidence should be excluded from the trial of this action under Rule 403.

## III.  CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter an order precluding Henry from offering at trial all testimony, documents and other evidence relating to or reflecting claims of discrimination by Daisy Early, Newton Paul, Manuel Rivera, Christopher Snell and Jose Torres or any other persons who were not similarly situated to Henry with respect to the events of his claims, who were not subject to employment decisions by the same decision-makers involved in the decisions Henry complains about, and who do not have personal knowledge of any of the events or circumstances involved in Henry's claims.

Dated: New York, New York
       December 19, 2007

Respectfully submitted,

Michael Delikat
James H. McQuade
Heather Glatter
ORRICK, HERRINGTON & SUTCLIFFE LLP
666 Fifth Avenue
New York, New York 10103
Telephone: (212) 506-5000

By: _____
     James H. McQuade

Attorneys for Defendants Wyeth Pharmaceuticals, a Division of Wyeth, Walter Wardrop and Michael McDermott