UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
HOWARD HENRY,                                   :
                                                :          NO. 05-CV-8106 (WCC)
                    Plaintiff,                  :
                                                :
        v.                                      :
                                                :
WYETH PHARMACEUTICALS, INC.,                    :
WALTER WARDROP, ANDREW SCHASCHL,                :
AND MICHAEL MCDERMOTT                           :
                                                :
                    Defendants.                 :
-----------------------------------------------------------X

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION IN LIMINE NO. 3 TO EXCLUDE PLAINTIFF'S PURPORTED STATISTICAL EVIDENCE**

Michael Delikat
James H. McQuade
Heather A. Glatter
ORRICK, HERRINGTON & SUTCLIFFE LLP
666 Fifth Avenue
New York, New York 10103
Telephone: (212) 506-5000

Attorneys for Defendants Wyeth Pharmaceuticals, a Division
of Wyeth, Walter Wardrop, and Michael McDermott

Defendants Wyeth Pharmaceuticals, a Division of Wyeth ("Wyeth"), Walter Wardrop ("Wardrop") and Michael McDermott ("McDermott") (referred to collectively as "Defendants") respectfully submit this motion *in limine* to preclude plaintiff Howard Henry ("Plaintiff" or "Henry") from offering purported statistical evidence of promotions in relation to race at Wyeth. Any such evidence, testimony or argument is not relevant to any issues in this case and poses a substantial risk of unfairly prejudicing Defendants, confusing or misleading the jury, inflaming the jury's emotions, biasing the jury against Defendants, and delaying the trial.

## I.    FACTS.

### A.    The issues in this lawsuit.

Henry is African-American and a former employee of Wyeth who maintains this action against Wyeth, Walter Wardrop, his supervisor at Wyeth from August 2000 to January 2004, and Michael McDermott, the Managing Director of Wyeth's Pearl River facility from 2002 through February 2004.[1]  McQuade Decl., Ex. 2, at 1.  Henry asserts claims for discrimination based upon his race and color under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, under 42 U.S.C. § 1981, and under the New York State Human Rights Law, Exec. Law § 290 *et seq.*

Henry bases his discrimination claims on allegations that he suffered discrimination on account of his race on several occasions between December 2001 and July 2005 when he did not receive certain promotions, was given performance evaluations that he disagreed with, was transferred to a position as part of a corporate reorganization that he alleges constituted an effective demotion, and was placed on a performance improvement plan.  McQuade Decl. Ex. 2,

---

[1] The facts herein are taken from those found by the Court to be undisputed in its Memorandum Decision and Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment and Reassigning the Action to White Plains Pursuant to Local Rule 22, filed herein July 30, 2007 (the "Order").  A copy of the order is attached as Exhibit 1 to the Declaration of James H. McQuade ("McQuade Decl."), dated December 19, 2007, and filed herewith.

at 1. He also claims that he suffered retaliation for complaining of the discriminatory treatment he experienced. *Id.*

The promotions or transfers Henry claims he was discriminatorily denied occurred at different times, and the decisions concerning them were made by different decision-makers who were in different decision-making hierarchies. *Id.* at 5-12, 18-21, 31-33.

Wardrop had promoted Henry to the position of Production Engineer in Wyeth's Consumer Health Division in August 2000 and gave him his performance evaluations for 2000, 2001, 2002 and 2003. Order, at 4. For 2000, Wardrop gave Henry an overall rating of "3" out of 5. *Id.* For 2001 and 2002, Wardrop gave Henry an overall rating of "4" out of 5. *Id.* Wardrop also gave Henry an overall rating of "3" out of 5 in 2003, which Henry claims were discriminatory. *Id.* In January 2004, as part of a reorganization of the Pearl River site, Wardrop was assigned to a new position and was no longer in a line of supervision over Henry. *Id.* at 30. Henry's performance evaluations after that time were done by other managers, Andrew Espejo and Max Katz. *Id.* at 30, 33-40. In that same reorganization, Henry was reassigned to, though not ultimately placed in, a position as Packaging Supervisor, which he regarded as a demotion. *Id.* at 30.

McDermott did not have any encounters with Henry until January 2004, when Henry had two meetings with him to discuss his complaints about his assignment to the Packaging Supervisor position and his 2003 performance evaluations. *Id.* at 24-25. McDermott had no involvement in making specific assignments in the December 2003 reorganization below the level of several director positions reporting directly to him – far above Henry's level in the organization. *Id.* at 19. Henry claims that, in the course of these conversations with McDermott, McDermott made a disputed comment about diversity. *Id.* at 25. As of February 2004, McDermott moved out of the Consumer Health Division to the Vaccine Division and no longer had any responsibility for the division in which Henry worked. *Id.* Subsequent discussions with

Henry about the Packaging Supervisor assignment and his 2003 performance evaluations took place with other managers, as did the evaluation of his performance in 2004 and 2005. *Id.* at 21-31, 33-39.

Henry filed a charge of discrimination with the New York State Division of Human Rights on or about September 24, 2004, alleging that he had been denied certain promotions and had received a transfer to the Packaging Department because of his race. *Id.* at 42. On or about October 15, 2005, Henry filed a second charge of discrimination with the EEOC, alleging retaliation for filing his first charge of discrimination. *Id.*

Henry took a medical leave of absence from his Wyeth employment on August 5, 2005, and did not return to work at Wyeth thereafter. *Id.* at 41. On February 6, 2006, because Henry had chosen not to submit the requisite medical documentation to support a continued medical leave, his employment with Wyeth was terminated. *Id.*

## B.    The purported statistical evidence.

Defendants understand that Henry will attempt to introduce evidence of unsystematically, unscientifically collected or analyzed promotion information he collected on an *ad hoc* basis between March 2004 and October 2005. Henry maintains, subject to dispute by Defendants, that Wyeth makes an announcement by email whenever an individual is promoted at Pearl River. Based upon "the 53 announcements between March 2004 and October 2005 *that plaintiff has been able to retain in his records and tabulate to date*, three promotions were given to black employees, and one promotion was given to a Hispanic employee." McQuade Decl. Ex. 1, at § 58; Ex. 2, at 43-44. Henry contends that these data mean that only 7.54% of the promotions in that period were given to Hispanic employees, and none to black employees "into upper management." *Id.* Further, Henry appears to intend to contend that, during the reorganization in January 2004 (the "Organizational Cascade") in which he was offered the position of Packaging Supervisor, "none of the new management positions created in his division was awarded to a

black employee," and that, in a subsequent reorganization in October 2005, none of the 17 management positions made available was given to a black employee. *Id.* at 44.

There is no indication that the seventeen-month period covered by these "data" are representative of anything. There is no indication that the information Henry purports to have statistical significance is a complete picture of the promotional landscape in the period to which it refers; it is simply the information "that plaintiff has been able to retain in his records and tabulate to date." There is no indication of the criteria used to identify the positions involved in this information as promotional opportunities, "management positions", or "promotions into upper management." There is no information about the qualifications required for these various positions. There is no information about the availability of individuals, by race or otherwise, having the qualifications required for these positions. There is no information about the interest persons otherwise qualified for these positions may have had in being appointed or promoted to them. There is no evidence of Henry's qualifications or interest in relation to the requirements and duties of these promotional opportunities. There is, in short, no evidence that Henry was similarly situated to anyone who was a candidate or potential for any of these positions. The information Henry intends to proffer as statistical evidence is entirely anecdotal, second-hand, unrepresentative and of conjectural significance. Indeed, this Court itself observed that this purported statistical analysis and anecdotal evidence "suffer from a lack of comparative data." *Id.* at 56.

## II.    ARGUMENT.

Henry should be precluded from presenting his purported quasi-statistical or anecdotal information. It "suffers from serious flaws because it is not supported by expert analysis and consists of a very small sample group." *Jenkins v. Metro. Opera Ass'n, Inc.*, No. 96 Civ. 6665 (JFK), 1999 WL 147745, at *7 (S.D.N.Y. Mar. 18, 1999), *aff'd*, 213 F.3d 626 (2d Cir. 2000), *cert. denied*, 531 U.S. 1091 (2001). *See also Zahorik v. Cornell Univ.*, 729 F.2d 85, 95 (2d Cir.

1984) (criticizing plaintiff's statistical evidence where it was culled from a broader sample, relied upon estimates, and failed to provide a departmental breakdown in an entity with decentralized decision-making). It is thus threatens an unacceptable level of prejudice, confusion of the issues and misleading of the jury in relation to any probative value it might have and so should be excluded under Rule 403 of the Federal Rules of Evidence. Further, even if Henry's purported statistical data were valid to support the contention that, for a limited period of time, not even coterminous with his own attempts to obtain promotion, African-Americans were underrepresented in promotions to whatever Henry is classifying as "management" at Wyeth, it is well settled that "statistical evidence [such as Henry intends to offer herein] of an employer's general hiring practices is insufficient to prove that a particular plaintiff was discriminated against." *Zenni v. Hard Rock Cafe Int'l Inc.*, 903 F. Supp. 644, 654 (S.D.N.Y. 1995) (citing *Zahorik*, 729 F.2d at 95 (evidence that a greater percentage of male candidates than female candidates were granted tenure is insufficient to show individual plaintiff was discriminated against)). *See also Jenkins*, 1999 WL 147745, at *7 (statistical evidence of general hiring practices insufficient to establish *prima facie* case of discrimination).

This is particularly true where, as here, the evidence Defendants anticipate Henry will offer is an anecdotal and unreliable ad hoc collection of promotions from a seventeen-month period of time only and the purported race of the persons promoted, with no further information about the circumstances of those promotions. In a case involving alleged discriminatory denials of promotion, data that simply show the absence of African-Americans in certain positions to which promotions were made in a limited period of time, without further analysis, has no probative value. As such, it is also inadmissible under Rules 401 and 402 of the Federal Rules of Evidence.

To have any probative value, statistical evidence must compare the composition of the at-issue jobs in the employer's work force to the composition of the qualified applicant or candidate

pools for those jobs. *See Williams v. McCausland*, 782 F. Supp. 272, 278-79 (S.D.N.Y. 1992) (racial imbalances in segment of employer's work force do not prove discrimination; rather, to extent such evidence is relevant, "[t]he 'proper comparison [is] between the racial composition of the [at-issue jobs] and the racial composition of the qualified * * * population in the relevant labor market'") (citation omitted); *Halbrook v. Reichhold Chems.*, 766 F. Supp. 1290, 1301-02 (S.D.N.Y. 1991) (statistic that only 15% of managers in company are female "prove[s] nothing" absent comparative evidence showing incidence of women in other companies in industry), *aff'd*, 956 F.2d 1159 (2d Cir. 1992); *Grant v. Morgan Guar. Trust Co. of N.Y.*, 638 F. Supp. 1528, 1536 n.11 (S.D.N.Y. 1986) (statistics concerning positions held by black females were not "meaningful because there was no 'evidence regarding the presence of qualified blacks or females in the relevant markets'") (citation omitted).

While a plaintiff may present statistical findings as circumstantial evidence of intentional discrimination, "the statistical evidence must be sufficient to create an inference of discrimination." *Duggan v. Local 638*, 419 F. Supp. 2d 484, 491 (S.D.N.Y. 2005). But, "'[i]n order to demonstrate the specific racial motivation in a disparate treatment case * * * plaintiffs must control for multiple variables, to eliminate the likelihood that the employment action was the result of non-discriminatory factors.'" *Id.* at 492 (citation omitted). The evidence must tend to demonstrate that the plaintiff was treated differently from employees who were "similarly situated" to him. *Id.*; *Smith v. Xerox Corp.*, 196 F.3d 358, 370 (2d Cir. 1999). "Statistical evidence must adequately address the relevant statistical comparison and must account for other possible causes of the disparity." *Drake v. Delta Air Lines, Inc.*, 2005 U.S. Dist. LEXIS 14789, at *24 (E.D.N.Y. July 21, 2005), *aff'd*, 216 Fed. Appx. 95 (2d Cir. 2007). "[B]ecause 'a disparate treatment claim looks at how an individual was treated compared to her similarly situated coworker[,]' statistics are admissible when they 'compare coworkers who competed *directly* against each other to receive a benefit' and employ some form of regression analysis to

eliminate other possible bases for the disparity. *Id.* at **24-25 (emphasis by the court; citations omitted); *see Smith, supra*, 196 F.3d at 370 (because "a disparate treatment claim looks at how an individual was treated compared to her similarly situated coworkers * * * statistical analyses that compare coworkers who competed directly against each other * * * are appropriate"). Statistics and numbers offered "must be compared with a number of factors, including among other factors, the relevant labor market, including the qualified applicant pool, the relative numbers of [persons with differing characteristics] who were both qualified for and interested in management jobs." *Luciano v. Olsten Corp.*, 110 F.3d 210, 218 (2d Cir. 1997) (quoting the trial court's jury instructions).

The evidence Henry intends to offer herein does not consider the relevant qualified applicant or candidate pools for the jobs he summarizes, nor does it make any relevant comparison. Indeed, Henry does not intend to offer any analysis or evidence regarding the pool of qualified applicants from the relevant labor market either within or outside of Wyeth. His "statistical" presentation will be based entirely upon his own, *ad hoc* collection of information. Such unreliable presentations are legitimately excluded from evidence in disparate treatment cases where there is no relevant factual context to support their significance. *See Hollander v. American Cyanamid Co.*, 172 F.3d 192, 203-04 (2d Cir.) (information assembled by plaintiff from personnel directories to challenge defendant's contention that positions were eliminated excluded for unreliability because there was no showing the duties of the eliminated jobs and the directory jobs were the same and there was thus no factual context to make the information probative), *cert. denied*, 528 U.S. 965 (1999).

What Henry seeks to present here will be *ad hoc* data in a misleading and incomplete manner in the hope of raising the specter of discrimination. Any claimed connection between the number of African-Americans in the positions Henry is pointing to and racial discrimination "is little but an unsupported hypothesis providing no foundation for the assertion that there was

discrimination in [Wyeth's promotion] process. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 46 (2d Cir. 2000), *cert. denied*, 540 U.S. 811 (2003).

. Such an unsupported hypothesis is without any probative value and is highly prejudicial and thus should be excluded from evidence at trial under Rules 401, 402 and 403 of the Federal Rules of Evidence. *See Hollander, supra*, 172 F.3d at 202-03 (relevance); *Luciano*, 110 F.3d at 217 (relevance and prejudice).


## III.    CONCLUSION.

For the foregoing reasons, Defendants respectfully request that the Court enter an order precluding Henry from offering at trial all testimony, documents and other evidence relating to or reflecting his compilations of promotion data from announcements and other documents he collected and retained.

DATED:        New York, New York
              December 19, 2007

                            Respectfully submitted,

                            Michael Delikat
                            James H. McQuade
                            ORRICK, HERRINGTON & SUTCLIFFE LLP
                            666 Fifth Avenue
                            New York, New York  10103
                            Telephone:  (212) 506-5000


                            By _____
                                James H. McQuade

                            Attorneys for Defendants Wyeth Pharmaceuticals, a
                            Division of Wyeth, Walter Wardrop and Michael
                            McDermott