# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X

HOWARD HENRY,

        Plaintiff,

- against -

WYETH PHARMACEUTICALS, INC.,
WALTER WARDROP, ANDREW SCHASCHL,
AND MICHAEL MCDERMOTT,

        Defendants.
---------------------------------------------------------X

05 CV 8106

COMPLAINT

Jury Trial Demanded

    Plaintiff, HOWARD HENRY, by and through his attorneys, Leeds Morelli & Brown, P.C., alleges, upon knowledge as to himself and his own actions and upon information and belief as to all other matters, as follows:

### JURISDICTION AND VENUE

    1.    This is a civil action based upon the defendants' violation of the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.; 42 U.S.C. § 1981; New York State Executive Law, Human Rights Law, § 290, et seq.; and any other cause of action that can be inferred from the facts set forth herein.

    2.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(3), 1343(4), 1367, and 2201, and § 290, et seq. of the Executive Law of the State of New York. The supplemental jurisdiction of the Court (28 U.S.C. § 1367) is invoked over state and local law causes of action.

    3.    Venue is proper pursuant to 28 U.S.C. § 1391.

    4.    All conditions precedent to maintaining this action were fulfilled. Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC")

and was issued a Notice of Right to Sue. A copy of the Right to Sue letter is annexed hereto and marked as Exhibit A. This action is filed within ninety (90) days of receipt.

## PARTIES

5.  Plaintiff, Howard Henry, at all times hereinafter mentioned, was and still is a resident of Rockland County, New York.

6.  Defendant, Wyeth Pharmaceuticals, Inc. ("Wyeth") is a foreign corporation doing business in the State of New York, located at, among other places, Pearl River, New York.

7.  Defendant, Walter Wardrop, the Associate Director of LCH Manufacturing at Wyeth, aided, abetted, compelled, and/or incited the unlawful treatment set forth below. Upon information and belief, Mr. Wardrop was and is responsible for the maintenance and operation of Wyeth's Pearl River location, including, but not limited to, the hiring, firing, promotion, and discipline of employees and all other employment related issues.

8.  Defendant, Andrew Schaschl, the Director of LCH Manufacturing at Wyeth, aided, abetted, compelled, and/or incited the unlawful treatment set forth below. Upon information and belief, Mr. Schaschl was and is responsible for the maintenance and operation of Wyeth's Pearl River location, including, but not limited to, the hiring, firing, promotion, and discipline of employees and all other employment related issues.

9.  Defendant, Michael McDermott, the Managing Director of Wyeth's Pearl River facility, aided, abetted, compelled, and/or incited the unlawful treatment set forth below. Upon information and belief, Mr. McDermott was and is responsible for the maintenance and operation of Wyeth's Pearl River location, including, but not limited to, the hiring, firing, promotion, and discipline of employees and all other employment related issues.

## PRELIMINARY STATEMENT

10. A culture of discrimination pervades Wyeth's Pearl River facility. Minorities remain in lower-level positions and are routinely denied opportunities for advancement. White management has developed a "good-old-boys club," through which they socialize together and save accolades and promotions for each another – all at the expense of their minority counterparts.

11. Despite receiving favorable reviews and repeated praise, Howard Henry is unable to advance at Wyeth. Currently, Mr. Henry is relegated to the role of production engineer, a position from which he has tried to advance for over five years. Mr. Henry is routinely denied promotion in favor of White employees who posses lesser qualifications and experience. Upon Mr. Henry's complaints of discrimination, he experienced swift retaliation.

## BACKGROUND

12. Howard Henry ("Howard") commenced his employment with American Cyanamid in 1992, on a temporary basis.

13. In 1993, American Cyanamid hired Howard on a permanent basis as a Chemist in its Chemical Process Research and Development Department based on his B.S. in physical science and his excellent work performance as a temporary employee.

14. In or around 1994, Wyeth-Ayerst, Inc., a subsidiary of American Home Products, Inc., bought American Cyanamid.

15. In 1997, Howard obtained a B.E. in chemical engineering and received a merit promotion, a corresponding five percent raise, and a Special Recognition Award for his work in chemical processing.

16. In or around 1999, Wyeth-Ayerst, Inc. changed its name to Wyeth Pharmaceuticals, Inc. ("Wyeth" or "Company").

17. In 2000, Howard received a promotion to his current position - Production Engineer in Wyeth's LCH Division.

18. Howard's supervisor, Walter Wardrop ("Wardrop"), White male Associate Director of LCH, gave Howard extremely positive and detailed performance evaluations for the years 2000, 2001, and 2002. In 2000, Howard received an overall rating of three on a scale of one through five, with five being the highest. In 2001 and 2002, Howard received overall ratings of four. The evaluations stated that Howard exceeded expectations, completed projects on time, had commendable multi-tasking skills, worked extra hours to complete assignments, and responded to calls for assistance during the night and on weekends.

19. The 2002 evaluation was signed by Wardrop and Andrew Schaschl ("Schaschl"), White male Director of LCH Manufacturing.

20. Throughout 2003, Howard received e-mails from Wardrop praising his performance and noting his quick responses to problems along with his quick turnaround on projects.

## SPECIFIC ALLEGATIONS

21. Despite Howard's success and experience, he has been unable to advance at Wyeth.

22. In December 2001, Howard applied for a position as a Project Engineer. Howard was rejected for the position in favor Cara Muscolo ("Muscolo"), a lesser-qualified White employee. Muscolo later received a promotion to a management position.

23. In July 2002, Howard applied for a position as a Production Coordinator in LCH. Howard was rejected for the position in favor of Chris DeFeciani, a lesser-qualified White employee who did not possess an engineering or science degree at the time of his promotion.

24. In April 2003, the Production Coordinator position became available on a temporary basis. Howard expressed interest in the opening; however, it was awarded to Richard Morgan ("Morgan"), a White employee without a degree. When Howard asked Wardrop about the denial of promotion, Wardrop stated it was a good opportunity for Morgan "to show what he can do." When Howard responded that he would like "to show what [he could] do," Wardrop dismissed the matter and stated that "they," referring to Schaschl and others, made the decision.

25. In the spring of 2003, Howard complained to Walter Wardrop regarding his denial of advancement opportunities.

26. In 2003, Howard received a mid-year performance evaluation. Wardrop asserted that there were times when Howard could not be reached on his pager. Howard responded that numerous Wyeth employees had experienced problems with their pagers. Wardrop next asserted that, on one occasion, Howard took too long to get a shot at the nurse's office. Additionally, on several occasions when Wardrop knew Howard was out sick, Wardrop would ask other employees if they knew where Howard was, in an effort to label Howard as a bad employee.

27. In December 2003, Howard received his fourth annual evaluation from Wardrop. Wardrop gave Howard an overall rating of three (3) and complained that Howard completed assignments late. Although Wardrop had been supervising Howard for four years, Wardrop stated that he had trouble evaluating Howard because he had not handed in a self-evaluation. Howard had been unable to complete the self-evaluation by its due date because he had to take on the job duties of two other employees and then was out of work on his honeymoon. When Howard returned, which was two months prior to the December 2003 performance evaluation and only six days after the due date, Howard asked if he should hand in the self-evaluation. Wardrop responded, "Don't worry about it!"

28. During the December 2003 evaluation, Wardrop explained that there was a difference at Wyeth between others "perception and the reality" of Howard. Wardrop stated that Howard was perceived as someone who completed projects late and this perception affected Howard's position under an "organizational cascade" occurring at Wyeth. Wardrop informed Howard that he would be demoted to a Packaging Supervisor, a position that, upon information and belief, requires neither a degree nor Howard's level of skill or experience.[1] Upon Howard's protestations, Wardrop expressed conflicting reasons for the demotion to Packaging Supervisor and Howard's performance evaluation.

29. In January 2004, Howard applied for a position as a Process Engineer in Wyeth's Vaccines Division, but was denied.

30. In January 2004, Howard applied for a position as a Staff Engineer in the Bioprocess Development Department. There were two openings for this position. Howard received no response from Wyeth, other than a confirmation of his application. Later, Howard learned that Andrew Safernack and David Anderson, both White employees, were given the position.

31. On January 5, 2004, Derek Burt ("Burt"), a White male employee, who was to be Howard's new supervisor, informed Howard that his name was available in the organizational cascade. Burt stated that, although he was pleased to have Howard in his division, he had not chosen Howard.

32. On January 5, 2004, Wardrop informed Howard that he had never made any comments about Howard completing projects late and stated that the 2003 performance evaluation and Howard's new assignment had nothing to do with each other. Wardrop also refused to change Howard's evaluation.

---

1 The Packaging Supervisor position requires an employee do little more than stand on an assembly line all day.

33. On January 7, 2004, Howard met with Wardrop who stated that he wanted "to be honest" with Howard. Wardrop explained that Burt had worked very hard to have Howard made a Packaging Supervisor and that Wardrop had gone out of his way to ensure that Burt would not place Howard on a midnight shift. Wardrop stated that he had given the matter a lot of thought and wanted to resubmit Howard's performance evaluation. Although the revised evaluation did not contain allegations of lateness on projects, unlike Howard's prior evaluations, it was very short and implied that Howard was merely an average employee.

34. On January 9, 2004, Howard met with Schaschl regarding his performance evaluation and demotion. Schaschl stated that he had a problem with Howard's multi-tasking skills and that it was necessary for Howard to obtain supervisory experience as a Packaging Supervisor. Howard has never had a problem with multi-tasking and, upon information and belief, numerous White employees have obtained management positions without prior supervisory experience. Howard also oversees operators in his current position.

35. When Howard asked Schaschl about the temporary Production Coordinator position that was given to Morgan in the spring of 2003, Schaschl responded that Morgan had filled the position in the past. However, Howard was not given the same opportunity to temporarily fill the position in the past.

36. On January 12, 2004 Joanne Rose ("Rose"), White female Human Resources Representative, informed Howard that his negative performance evaluation and his alleged problems with multi-tasking were factors in determining his new position. Before Howard met with Rose, Wardrop stopped him and apologized that "things got so bad."

37. On January 13, 2004, Howard met with Michael McDermott ("McDermott"), White male Managing Director. McDermott stated that Howard had been given a new position because

he was opposed to employees being in one job for too long. McDermott stated that he and Schaschl were responsible for Howard's demotion. McDermott also stated that he would get back to Howard about the demotion; however, this never occurred.

38. On January 22, 2004, after Howard contacted McDermott again, he met with McDermott about the performance evaluation and the demotion. McDermott stated that he would not change Howard's performance evaluation or his position and Howard should not view the Packaging Supervisor job as a demotion, but rather as a way to learn new skills. Howard explained that, as an African-American, he would have a very difficult time explaining the demotion on his resume. McDermott responded, "I'm all for diversity, but I am not going to get into that silly discussion with you."

39. On January 26, 2004, Howard met with Peter Bigelow ("Bigelow"), White male Senior Vice President of Quality and Operations, and stated that he had not received an honest answer regarding his performance evaluation or his placement following the organizational cascade. Howard also stated that he believed he was being discriminated against based on his race.

40. On February 11, 2004, Bigelow informed Howard that he had not met certain goals, which led to Howard's performance evaluation and demotion.

41. On February 16, 2004, Howard sent Bigelow an e-mail, in which he complained of racial discrimination.

42. On February 26, 2004, Bigelow sent Howard an e-mail stating that he should feel free to schedule a time to discuss the situation, but the tone of the e-mail implied that he had no intention of taking any further action.

43. Additionally, during a February 2004 meeting, Joe Vitanza, the current Managing Director of LCH, stated that a malfunctioning alarm system was a tar baby that he just couldn't get off his back.

44. In the winter of 2004, Wardrop made a discriminatory comment about a Hispanic employee named Manny Rivera. Wardrop made gestures imitating the hip-hop youth culture and stated in a derogatory manner to another employee, "[i]s Manny the kind of guy to wear his pants hanging down like this?"

45. On March 29, 2004, after taking no action for one month, Bigelow contacted Howard and stated that he wanted to investigate Howard's claims of race discrimination. Although Bigelow later informed Howard that the investigation found no evidence of discrimination, he provided Howard with no details of the investigation. By e-mail to Bigelow, dated April 26, 2004, Howard requested that he be promoted to a position as Consumer Health Project Engineer. Howard received no response. On May 6, 2004, Howard was informed that he would remain a Production Engineer and would not become a Packaging Supervisor.

## RETALIATION

46. As a result of Howard's good faith opposition to discriminatory practices and his filing a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission, Howard, was, and continues to be, subjected to retaliation.

47. Such incidents of retaliation include, but are not limited to the following:

   a. On September 30, 2004, Howard was denied the position of Manager in the Manufacturing Support department.

b. On or about June 24, 2005, Howard was placed on a Performance Improvement Program ("PIP"). His placement on PIP will prevent Howard from bidding on future positions for one year.

c. On or about July 9, 2005, Howard received a negative mid-year review while his similarly situated counterparts outside his protected classes were not reviewed.

## CAUSES OF ACTION AGAINST COPORATE DEFENDANT
(Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.; 42 U.S.C. § 1981; and New York State Executive Law, Human Rights Law, § 290, et seq.)

48. Each allegation contained in paragraphs 1 through 47, inclusive, is hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

49. Howard was denied promotion, demoted, and subjected to retaliation on the basis of race, color, and his good faith opposition to discriminatory practices in violation of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.; 42 U.S.C. § 1981; and New York State Executive Law, Human Rights Law, § 290, et seq.

50. As a result of Defendant's actions, Howard suffered, and continues to suffer, injuries and damages.

## CAUSES OF ACTION AGAINST INDIVIDUAL DEFENDANTS
(New York State Executive Law, Human Rights Law, § 290, et seq.)

51. Each allegation contained in paragraphs 1 through 50, inclusive, is hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

52. Howard was denied promotion, demoted, and subjected to retaliation on the basis of race and his good faith opposition to discriminatory practices in violation of New York State Executive Law, Human Rights Law, § 290, et seq.

53. The individual Defendant, Walter Wardrop, aided, abetted, incited, compelled, and/or coerced the aforementioned unlawful conduct in violation of New York State Executive Law, Human Rights Law, § 296(6).

54. The individual Defendant, Andrew Schaschl, aided, abetted, incited, compelled, and/or coerced the aforementioned unlawful conduct in violation of New York State Executive Law, Human Rights Law, § 296(6).

55. The individual Defendant, Michael McDermott, aided, abetted, incited, compelled, and/or coerced the aforementioned unlawful conduct in violation of New York State Executive Law, Human Rights Law, § 296(6).

56. As a result of the individual Defendants' actions in violation of the New York State Executive Law, Human Rights Law, § 296(6), et seq., Howard suffered, and continues to suffer, injuries and damages.

WHEREFORE, Plaintiff demands judgment against Defendants for all compensatory, emotional, physical, and punitive damages (where applicable), lost pay, front pay, injunctive relief, promotion, and any other damages permitted by law. It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which Plaintiff is entitled. Plaintiff demands a trial by jury.

Dated: Carle Place, New York
       September 19, 2005

Respectfully submitted,

LEEDS MORELLI & BROWN, P.C.
*Attorneys for Plaintiff*
One Old Country Road, Suite 347
Carle Place, N.Y. 11514
(516) 873-9550

By: _____
    Steven Morelli (SM 4721)

EEOC Form 161 (3/98)      U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Howard Henry<br>29 North Brook Road<br>Hillcrest, NY 10977 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 160-2005-00013 | Sean J. Oliveira, Investigator | (212) 336-3760 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

☐ Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

☐ While reasonable efforts were made to locate you, we were not able to do so.

☐ You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act: This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this Notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

Equal Pay Act (EPA): EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

On behalf of the Commission

Spencer H. Lewis, Jr., Director      6/2/05 (Date Mailed)

Enclosure(s)

cc: WYETH PHARMACEUTICALS
401 North Middletown Road
Pearl River, NY 10965

Donna M. Orzell—Counsel
Wyeth Pharmaceuticals
P.O. Box 8299
Philadelphia, PA 19101

Steven A. Morelli, Esq.
One Old County Road, Suite 347
Carle Place, NY 11514