UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - X

                              05 Civ. 8106 (WCC)

HOWARD HENRY,                  :

                               ECF CASE

              Plaintiff,     :

    - against -           :       **OPINION**
                               <u>**AND ORDER**</u>

WYETH PHARMACEUTICALS, INC., WALTER  :
WARDROP, ANDREW SCHASCHL and MICHAEL
McDERMOTT,                :

             Defendants.   :

- - - - - - - - - - - - - - - - - - - X

**A P P E A R A N C E S :**

                                 LEEDS MORELLI & BROWN, P.C.
                                 **Attorneys for Plaintiff**
                                 One Old Country Road, Suite 347
                                 Carle Place, New York 11514

STEVEN A. MORELLI, ESQ.

      Of Counsel


                                 ORRICK, HERRINGTON & SUTCLIFFE LLP
                                 **Attorneys for Defendants**
                                 666 Fifth Avenue
                                 New York, New York 10103

MICHAEL DELIKAT, ESQ.
JAMES H. McQUADE, ESQ.

      Of Counsel

                              **Copies E-Mailed to Counsel of Record**

**Conner, Sr. D.J.:**

Plaintiff Howard Henry ("Henry") brings suit against defendants Wyeth Pharmaceuticals, Inc. ("Wyeth"), Walter Wardrop ("Wardrop") and Michael McDermott ("McDermott").[1] Plaintiff alleges that he suffered discrimination in the terms of his employment at Wyeth in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*; 42 U.S.C. § 1981 and New York State Human Rights Law. The case was previously assigned to the Honorable Colleen McMahon. Judge McMahon issued an Opinion and Order granting in part and denying in part defendants' motion for summary judgment. The case was then transferred to this Court. Defendants now move, pursuant to S.D.N.Y. Local Civ. R. 6.3, for reconsideration of the part of Judge McMahon's Opinion that denied their motion for summary judgment. For the following reasons, defendants' motion for reconsideration is denied.

## BACKGROUND

The facts of this case are set out at length in Judge McMahon's Opinion, familiarity with which is presumed. *See Henry v. Wyeth Pharm., Inc.*, 2007 U.S. Dist. LEXIS 57921 (S.D.N.Y. July 30, 2007) (*Henry I*). The following is a brief summary of those facts relevant to the disposition of the present motion. Plaintiff, an African-American man, is a chemist. *Id.* at *4. He began working for one of Wyeth's predecessors in 1993 and earned several promotions in subsequent years. *Id.* at *4-6. Beginning in 2001, however, plaintiff was turned down for promotions on several occasions under circumstances that led him to believe he was being discriminated against because of his race.

_____

[1] A third individual defendant, Andrew Schaschl, was dismissed from the case by stipulation and order dated February 8, 2006.

1

*See generally id.* Plaintiff contends that after he began asking questions about his lack of further advancement at Wyeth, he was subject to retaliation, including unfairly negative performance evaluations designed to further impede his career:

> To sum up Plaintiff's entire case . . . Plaintiff was an extremely talented chemical engineer receiving good reviews for nine straight years . . . [who won] two awards [and] who began seeking advancement opportunities within Wyeth. He applied for one position, and was turned down. He applied for another, and was turned down. Another. Another. He became suspicious, and he asked his supervisor why it was he was not advancing – why he was being treated unfairly. The next thing he knew, his performance ratings dropped, his accomplishments were being ignored, nobody could give a consistent answer as to why, and he was placed in danger of losing his job.

(Pl. Mem. Opp. Summ. J. at 25.)

Defendants moved for summary judgment, arguing that there was "a complete lack of any admissible evidence . . . that any of the employment decisions at issue were made because of Henry's race or color or because he had engaged in any protected activity." (Defs. Mem. Supp. Summ. J. at 1.) Judge McMahon granted the motion as to some of the claims against McDermott and Wardrop ("the individual defendants"), certain claims that the court held to be time-barred and all claims based on two promotions which plaintiff testified he did not believe he was denied because of his race; the court denied the motion as to all other claims. *See Henry I*, 2007 U.S. Dist. LEXIS 57921, at *77-83, *89. Defendants now ask us to reconsider the portion of that decision denying their motion.[2]

---

[2] Defendants offer, as an alternative basis for their motion, the Court's power to reconsider issues decided by another judge in a reassigned case. (*See* Defs. Mem. Supp. Mot. Recons. at 2.) The following analysis applies to both grounds for defendants' motion.

**DISCUSSION**

I.    <u>Standard of Review</u>

A motion for reconsideration or re-argument shall be granted only if "the court has overlooked matters or controlling decisions which, had they been considered, might reasonably have altered the result reached by the court." *Adams v. United States*, 686 F. Supp. 417, 418 (S.D.N.Y. 1988) (internal quotation marks omitted); *see also* S.D.N.Y. LOCAL CIV. R. 6.3.    Controlling decisions include decisions from the United States Court of Appeals for the Second Circuit; they do not include decisions from other circuits or district courts, even courts in the Southern District of New York. *See Ades v. Deloitte & Touche*, 843 F. Supp. 888, 892 (S.D.N.Y. 1994).    Local Rule 6.3 "is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the court." *Candelaria v. Coughlin*, 155 F.R.D. 486, 491 (S.D.N.Y. 1994).    The movant's disagreement with the court's interpretation of precedent is not a proper ground for reconsideration. *Effron v. Sun Line Cruises, Inc.*, 158 F.R.D. 39, 40 (S.D.N.Y. 1994). Where the movant fails to show that any controlling authority or facts have actually been overlooked, and merely offers substantially the same arguments he offered on the original motion, the motion for reconsideration must be denied. *See Geary v. Goldstein,* 1994 WL 396044, at *1 (S.D.N.Y. July 27, 1994).


II.    <u>Defendants' Arguments for Reconsideration</u>

Defendants base their motion for reconsideration on several grounds.    They argue that *Henry I* improperly "lumped together" all of plaintiff's claims, rather than analyzing them separately; that certain evidence plaintiff presented was legally insufficient to support an inference of discrimination;

3

that plaintiff's evidence of retaliation was also legally insufficient and that the remaining claims against the individual defendants should have been dismissed because there is no evidence that they directly participated in any discriminatory or retaliatory conduct.

### A.    The "Lumping Together" of Plaintiff's Claims

Plaintiff's claims of discrimination and retaliation are based on a series of events that took place over approximately four years.  Plaintiff alleges that he was repeatedly turned down for promotions because of his race, and that after he complained he was retaliated against (primarily by means of negative performance evaluations and a demotion).  Judge McMahon reviewed these allegations, along with defendants' responses to them, in detail in a lengthy Opinion.  *See Henry I*, 2007 U.S. Dist. LEXIS 57921, at *3-68.

Defendants argue that Judge McMahon's analysis improperly "lumped together" all of the events at issue rather than "analyzing each of these separate and discrete employment decisions separately."  (Defs. Mem. Supp. Mot. Recons. at 3.)  Defendants argue that "multiple failure to promote claims are separate and discrete employment decisions that must be analyzed on their own facts," and that Judge McMahon's failure to analyze plaintiff's claims separately led her to see questions of material fact where there were none.  (*Id.*)

First, we note that Judge McMahon's detailed and thoughtful fifty-eight-page Opinion reviewed in depth all of the events at issue.  There is no indication at all that the court overlooked any material facts; all of the facts defendants claim were overlooked are discussed in *Henry I*.  It is clear from our review of the record that Judge McMahon considered each party's arguments on all the major issues.  And, contrary to defendants' assertion, it was perfectly appropriate for Judge

4

McMahon to consider all of plaintiff's evidence in context and as a whole, and not, as defendants would have it, as a series of isolated and completely unrelated events. The Second Circuit has instructed that

> [i]n determining the appropriateness of summary judgment, the court should not consider the record solely in piecemeal fashion, giving credence to innocent explanations for individual strands of evidence, for a jury, in assessing whether there was impermissible discrimination and whether the defendant's proffered explanation is a pretext for such discrimination, would be entitled to view the evidence as a whole.

*Howley v. Town of Stratford*, 217 F.3d 141, 151 (2d Cir. 2000); *see also Gregory v. Daly*, 243 F.3d 687, 700 (2d Cir. 2001) ("We do not disaggregate mutually supportive assertions that plaintiff's sex played a significant causal role in the decision at issue; nor do we treat each as a distinct claim that must separately possess a firm enough basis to survive a challenge at pleading or summary judgment."); *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 314 (2d Cir. 1997) ("[T]he dissent considers the record solely in piecemeal fashion, proffering innocent explanations for individual strands of evidence. The jury, however, will be entitled to view the evidence as a whole in assessing whether there was impermissible discrimination . . . ."); *Ellenbogen v. Projection Video Servs., Inc.*, 2001 U.S. Dist. LEXIS 8852, at *26 (S.D.N.Y. June 29, 2001) ("[I]n the failure to promote context the Second Circuit has quite clearly instructed that a District Court is to consider the sum of the evidence in its totality, rather than examining specific aspects of evidence in isolation."). Defendants have not cited any controlling authority to the contrary.

The two Supreme Court cases defendants rely on are inapposite. In *National Railroad Passengers Corp. v. Morgan*, 536 U.S. 101, 104 (2002), the plaintiff was an African-American man who alleged he had been subjected to ongoing harassment at work because of his race. The plaintiff

filed an EEOC complaint and then a lawsuit. *See id.* The plaintiff was required by statute to file his EEOC charge within 300 days of the date that the "unlawful employment practice" occurred, and some of the events he complained of fell outside the 300-day time frame. *Id.* at 104-05 (internal quotation marks omitted). The Court framed the issue before it as "whether, and under what circumstances, a Title VII plaintiff may file suit on events that fall outside this statutory time period." *Id.* at 105. The Court held that a plaintiff can not recover for "discrete acts of discrimination or retaliation that occur outside the statutory time period," *id.*, because "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice." *Id.* at 114 (internal quotation marks omitted).[3] The Court did not hold that each incident must be analyzed separately on a motion for summary judgment.

Defendants also cite *Ledbetter v. Goodyear Tire & Rubber Co.*, — U.S. —, 127 S. Ct. 2162, 2175 (2007), a case in which the plaintiff alleged that she had been discriminated against on the basis of sex by her employer with resulting lower pay. As in *Morgan*, the issue was when the violation had occurred for purposes of the statutory EEOC filing requirements. *See id.* at 2165. The Court held that the filing period begins to run from the time of the initial discriminatory employment decision, and a plaintiff who does not make a timely EEOC filing based on that decision can not bring suit based on subsequent, non-discriminatory events, even if those later events gave continuing effect to the earlier discrimination. *Id.* at 2174. The Court stated that "[t]he EEOC charging period is triggered when a discrete unlawful practice takes place. A new violation does not occur, and a new charging period does not commence, upon the occurrence of subsequent nondiscriminatory acts

---

[3] Further undermining the contention that the court overlooked any controlling authority, the court applied *Morgan* to dismiss several of plaintiff's Title VII claims as time-barred. *See Henry I*, 2007 U.S. Dist. LEXIS 57921, at *80-81.

6

that entail adverse effects resulting from the past discrimination." *Id.* at 2169.

Neither *Morgan* nor *Ledbetter* involved the issue in the present case: the showing an employment-discrimination plaintiff must make to defeat a defendant's motion for summary judgment in a disparate-treatment case based on failure to promote. Neither case held, as defendants assert, that all of a plaintiff's discrimination claims – and the facts relevant to each – must be analyzed in isolation from each other on a motion for summary judgment.[4] Defendants' reliance on *Morgan* and *Ledbetter* is misplaced.

In their Memorandum of Law in support of this motion, defendants attempt to explain why plaintiff can not maintain a claim based on: the fact that he was not promoted to Project Engineer in 2001; the fact that he was not promoted to Production Coordinator in 2002 or allowed to temporarily fill in at that position in 2003; his 2003 performance review or his alleged demotion. (*See* Defs. Mem. Supp. Mot. Recons. at 4-14.) As to all of these events, defendants merely offer up the same arguments they made on their motion for summary judgment. Their doing so does not justify reconsideration of the earlier decision. *See Geary*, 1994 WL 396044, at *1. Defendants do not cite any controlling authority indicating that *Henry I* reached the wrong result, and all of the facts they claim the court overlooked were discussed in *Henry I*, which shows that the court did not overlook them.

---

[4] If anything, *Morgan* supports the opposite view: the Court made clear that a plaintiff can rely on events that occurred outside the statutory period as "background evidence in support of a timely claim." *Morgan*, 536 U.S. at 113. In other words, events that are themselves incapable of sustaining a discrimination claim can serve as evidence in support of another, valid claim.

**B.**     **Statistical Evidence and Allegedly Discriminatory Remarks**

In opposing defendants' motion for summary judgment, plaintiff offered evidence of discrimination at Wyeth not directly related to the promotions at issue; that evidence included promotion statistics and allegedly discriminatory remarks.[5]  We note at the outset that it is clear from *Henry I* that plaintiff did not survive summary judgment on the strength of this evidence alone; in fact, the court appears to have treated it as little more than confirmatory details.  *See Henry I*, 2007 U.S. Dist. LEXIS 57921 at *87-88.  Nevertheless, defendants maintain that none of this evidence can support an inference of discrimination.  (*See* Defs. Mem. Supp. Mot. Recons. at 10.)  In effect, defendants argue that Judge McMahon should have disregarded each piece of evidence that would not, standing on its own, have been enough to defeat summary judgment.  That argument is without merit.  In deciding a summary judgment motion, a court must consider all the evidence in the record

---

[5] The statistical evidence is as follows:

Wyeth makes an announcement by email whenever an individual is promoted. (Henry Aff P 58). Based on the 53 announcements between March 2004 and October 2005 that plaintiff has been able to retain in his records and tabulate to date, three promotions were given to black employees, and one promotion was given to a Hispanic employee amounting to 7.54% of promotions. (Id.) None of the promotions given to black employees were promotions into upper management. (Id.)

During the Organizational Cascade that took place in January 2004, none of the new management positions created in plaintiff's division was awarded to a black employee. (Id.) Similarly, none of the 17 management positions made available by a corporate reorganization in October 2005 was given to a black employee. (Id.)

*Henry I*, 2007 U.S. Dist. LEXIS 57921 at *67-68.  Plaintiff also offered evidence of "racially insensitive – and allegedly discriminatory – behavior" by decision makers at Wyeth.  *See id.* at *65-67, 88.  For example, plaintiff alleged that defendant Wardrop, plaintiff's supervisor, said to a black employee, "what are you doing at home? Sticking pins in a doll? What have I ever done to you?" and made fun of a Hispanic employee by "pull[ing] [Wardrop's] pants down so that the waistband was around his thighs, supposedly imitating the dress 'hip-hop youth culture'" and making "other gestures reflecting his perception of the behavior of Hispanic youth." *Id.* at *66-67.

before it, including individual strands of evidence that would not on their own create a triable question of fact.  *See, e.g.*, *Gregory,* 243 F.3d at 699-70; *Stern*, 131 F.3d at 314.

Defendants dismiss the allegedly discriminatory comments made by Wardrop and others as "stray remarks."  (Defs. Mem. Supp. Mot. Recons. at 15.)  But the Second Circuit has made clear that such comments should not "be categorized either as stray or not stray and then disregarded if they fall into the stray category."  *Tomassi v. Insignia Fin. Group, Inc.*, 478 F.3d 111, 116 (2d Cir. 2007).  Rather, the district court must recognize that a remark's probative value will depend on how clearly it demonstrates a discriminatory state of mind and how closely it is related to the employment decision at issue.  *See id.* at 115; *Carras v. MGS 782 Lex, Inc*., 2007 U.S. Dist. LEXIS 67876, at *15 (S.D.N.Y. Sept. 12, 2007) ( "[A]ll comments should be considered in the context of all the evidence.").  In *Henry I*, the court analyzed the remarks in question in the context in which they were made and in light of plaintiff's other evidence.  *See Henry I*, 2007 U.S. Dist. LEXIS 57921, at *87-88.  The court quite reasonably found that the remarks were, as evidence of discrimination, "thin" and "sparse," but "not wholly lacking in probative value."  *Id.* at *87-88.  Defendants have not pointed out any controlling authority or other overlooked factors that mandate a different conclusion.[6]

---

[6] Defendants cite *Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 56 (2d Cir. 1998) in support of their "stray remarks" argument, and they quote *Danzer* as stating: "stray remarks, even if made by a decisionmaker, do not constitute sufficient evidence [to support] a case of employment discrimination."  (Defs. Mem. Supp. Mot. Recons. at 11 (brackets in Defs. Mem.).)  The way in which defendants quote *Danzer* is highly selective, and the manner in which they have altered the quotation is quite revealing.  *Danzer* actually states that "stray remarks, even if made by a decisionmaker, do not constitute sufficient evidence to *make out* a case of employment discrimination."  *Danzer*, 151 F.3d at 56 (emphasis added).  The distinction is crucial here, as plaintiff is not attempting to "make out" a case of discrimination based solely on the alleged discriminatory remarks; he merely offers those remarks, along with other evidence, in support of his claims.  As defendants are surely aware, the remainder of the paragraph from which they

The same holds true for plaintiff's statistical evidence. That evidence, on its own, would almost certainly not be enough to defeat summary judgment. But a plaintiff can defeat summary judgment by relying in part on statistical evidence that, because of a small sample size or other deficiencies, could not carry the burden on its own. *See, e.g.*, *Sorlucco v. N.Y. City Police Dep't*, 971 F.2d 864, 872 (2d Cir. 1992) ("We might agree with the district court that [plaintiff] would have fallen short in her proof if the [statistical evidence] had been her only evidence of a departmental practice of gender discrimination. However, [plaintiff] presented ample facts concerning her treatment at the hands of her superiors from which the jury, in conjunction with the statistical evidence, could have reasonably inferred that there was a custom of sex bias operating within the NYPD and governing its disciplinary decisions . . . .") (citation omitted); *Ingram v. Madison Square Garden Ctr., Inc.*, 709 F.2d 807, 810 (2d Cir. 1983) ("We do not find as much significance in these figures as did the district court. . . . However, the district court did not rely on this evidence alone.") (citations omitted).

-------------------------------------------------

pulled the quotation explains the distinction quite clearly:

> [A]ll that *Woroski* holds is that such comments [i.e., stray remarks], *without more*, cannot get a discrimination suit to a jury. (If it were otherwise, disparaged workers who had the "fortuity" of being in the class encompassed by the stray remark would have an instantaneous jury case on discrimination, regardless of the ground for their dismissal.) When, however (as in the instant appeal), other indicia of discrimination are properly presented, the remarks can no longer be deemed "stray," and the jury has a right to conclude that they bear a more ominous significance.

*Id.* (citing *Woroski v. Nashua Corp.*, 31 F.3d 105 (2d Cir. 1994)) (emphasis in original).

C.    **Retaliation**

Plaintiff alleges that after he began complaining about being turned down for promotions, defendants retaliated against him by denying his application for the newly created position of Manager of the Manufacturing Support Department, placing him on a Performance Improvement Plan ("PIP") and giving him a negative mid-year performance review.  (Complt. ¶ 47.)  In *Henry I*, the court denied defendants' motion for summary judgment on these clams, based on the following rationale:

> Since the same evidence must be presented to the jury on Henry's retaliation claims as would be required to prove his claims of disparate treatment race discrimination, the court finds that the proper course of action is to have a jury decide whether defendant's articulated reasons were pretextual, and if so, whether their real reasons for refusing to promote Henry to the Manager Manufacturing Support position, giving him a negative 2005 mid-year performance evaluation, and placing on the PIP were retaliatory or discriminatory.

*Henry I*, 2007 U.S. Dist. LEXIS 57921, at *88.

Defendants argue that the court's reasoning was unsound because plaintiff did not assert discrimination claims based on those three events: those events are listed in the Complaint under the heading "Retaliation."  (*See* Defs. Reply Mem. Supp. Mot. Recons. at 8.)  This argument is excessively formalistic and provides no basis for denying plaintiff any relief to which he is otherwise entitled; it is also unsupported by any controlling authority of which we are aware.  To dismiss some of plaintiff's claims because of the heading under which they were listed in the Complaint would surely violate the command of the Federal Rule of Civil Procedure that "[p]leadings must be construed so as to do justice."  FED. R. CIV. P. 8(e).

Defendants also make the more substantive argument that Judge McMahon overlooked various facts and arguments related to the retaliation claims.  First, we note that a court is not

11

required to recite in its written opinion every fact and argument in the record before it. *See, e.g.*, *Woodward & Dickerson v. Kahn*, 1992 U.S. Dist. LEXIS 17032, at *6 (S.D.N.Y. Nov. 6, 1992) ("Defendants erroneously assume that the Court's failure to discuss a particular item in the written decision reflects a concomitant failure to consider fully all facts and documents that were in the record."). Defendants have not presented any controlling authority indicating that *Henry I* reached the wrong conclusion on this issue, and it is clear from the Opinion's lengthy and detailed review of the events surrounding these claims that Judge McMahon did indeed consider all the relevant facts. Defendants do not point out any facts that Judge McMahon overlooked. They merely offer "substantially the same arguments" they offered on the original motion. *See Geary,* 1994 WL 396044, at *1. As with all of defendants' other arguments in support of the present motion, defendants' claim that facts and arguments were "overlooked" is based on nothing more than the court's reaching a legal conclusion with which defendants disagree.

### D. **The Individual Defendants**

In *Henry I*, the court stated that it was dismissing plaintiff's Title VII claims against the individual defendants because "'individuals are not subject to liability under Title VII.'" *Henry I*, 2007 U.S. Dist. LEXIS 57921, at *83 (quoting *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000)). However, plaintiff's claims against the individual defendants were based on New York State Executive Law, Human Rights Law § 296(6). (*See* Complt. ¶¶ 51-56.) *Henry I* does not explicitly address the state-law claims. Defendants now argue that those claims must be dismissed because there is no evidence that the individual defendants participated in any act of discrimination or retaliation against plaintiff.

12

New York State Human Rights Law prohibits an employer from discriminating on the basis of, "*inter alia*, race, creed, color, or sexual orientation." *Feingold v. New York*, 366 F.3d 138, 157-58 (2d Cir. 2004) (citing N.Y. Exec. Law § 296). It is also unlawful for any individual to "aid, abet, incite, compel or coerce" such discrimination. N.Y. Exec. Law § 296(6). This provision creates individual liability for any person who "actually participates in the conduct giving rise to a discrimination claim." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *see also Feingold*, 366 F.3d at 157-58; *Cerrato v. Durham*, 941 F. Supp. 388, 396 (S.D.N.Y. 1996).

Although *Henry I* does not directly address the state-law claims against the individual defendants, the Opinion discusses the facts relevant to those claims at length, making defendants' argument that the court overlooked critical matters unpersuasive. Implicit in Judge McMahon's refusal to dismiss the claims against Wardrop and McDermott is a finding that plaintiff has produced sufficient evidence of their actual participation in discriminatory or retaliatory acts. Defendants have offered no controlling precedent or other overlooked matter that would require us to disturb that finding. And our review of the record before us shows that it is well supported.

For example, plaintiff contends – and offers evidence, in the form of plaintiff's own testimony, to support the assertion – that Wardop was involved in "defendants' attempts . . . to document nonexistent deficiencies in [plaintiff's] performance in order to limit his career growth," *Henry I*, 2007 U.S. Dist. LEXIS 57921, at *24-25, *32-35. That allegation, if proven, clearly constitutes "actual participation" in discriminatory conduct. *See Tomka*, 66 F.3d at 1317. McDermott, for his part, gave final approval to the reorganization plan that allegedly demoted plaintiff for discriminatory reasons. He also, according to plaintiff, dismissed plaintiff's concerns

13

about discrimination by telling him "I am all for diversity . . . but I'm not going to get into that silly discussion with you." *Id.* at *39 (internal quotation marks and citations omitted). We are not aware of any controlling authority indicating that this evidence is legally insufficient to defeat summary judgment, and several district courts in this Circuit have refused to dismiss aiding-and-abetting claims against individual defendants who ratified discriminatory conduct or failed to act on complaints of discrimination. *See, e.g., Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 363 (S.D.N.Y. 2007); *Briggs v. Mercedes-Benz Manhattan, Inc.*, 2006 WL 2789927, at *10 (S.D.N.Y. Sept. 27, 2006); *King v. Town of Wallkill*, 302 F. Supp. 2d 279, 297 (S.D.N.Y. 2004); *Lewis v. Triborough Bridge & Tunnel Auth.*, 77 F. Supp. 2d 376, 384 (S.D.N.Y. 1999) ("[T]he case law establishes beyond cavil that a supervisor's failure to take adequate remedial measures can rise to the level of 'actual participation' under HRL § 296(6).") (citing cases).

In summary, defendants have not pointed out any controlling authority that mandates a different result in this case; nor have they shown that Judge McMahon overlooked any critical matter. *See Adams*, 686 F. Supp. at 418. Defendants' arguments for reconsideration amount to nothing more than a disagreement with Judge McMahon's application of the summary judgment standard to the evidence in the record. That disagreement is not a basis for us to reconsider the court's conclusion. *See Effron*, 158 F.R.D. at 40.

## CONCLUSION

For all of the foregoing reasons, defendants' motion for reconsideration is denied.

SO ORDERED.
Dated: White Plains, New York
      December 19, 2007

*William C. Conner*
Sr. United States District Judge

14