```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
HOWARD HENRY,                                               :
                                                            :   05-CV-8106 (WCC)
                         Plaintiff,                         :
                                                            :
     -against-                                              :
                                                            :
WYETH PHARMACEUTICALS, INC., WALTER                         :
WARDROP, ANDREW SCHASCHL, and                               :
MICHAEL McDERMOTT,                                          :
                                                            :
                         Defendants.                        :
------------------------------------------------------------x
```

---

## MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTIONS IN LIMINE, NOS. 1 THROUGH 5

---

Respectfully submitted,

LEEDS MORELLI & BROWN, P.C.
Attorneys for Plaintiff
By: Steven A. Morelli (SM 4721)
    Of Counsel
One Old County Road, Suite 347
Carle Place, New York 11514
(516) 873-9550

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT

     I.    OPPOSITION TO MOTION IN LIMINE NO. 1 . . . . . . . . . . . . . . . . . . . . 3

     II.   OPPOSITION TO MOTION IN LIMINE NO. 2 . . . . . . . . . . . . . . . . . . . . 9

     III.  OPPOSITION TO MOTION IN LIMINE NO. 3 . . . . . . . . . . . . . . . . . . . 11

     IV.  OPPOSITION TO MOTION IN LIMINE NO. 4 . . . . . . . . . . . . . . . . . . . 12

     V.   OPPOSITION TO MOTION IN LIMINE NO. 5 . . . . . . . . . . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## PRELIMINARY STATEMENT

Plaintiff submits this memorandum of law in opposition to defendants' motions in limine numbered 1 through 5, inclusive, filed separately on or about December 19, 2007. Instead of responding to each motion by separate memoranda, plaintiff responds to each motion herein. Trial in this matter is scheduled to begin on February 4, 2008, with jury selection to occur on January 28, 2008. Pursuant to the Court's order during the pre-trial conference in this case that occurred on October 5, 2007, the parties agreed upon a briefing schedule which would have these motions fully briefed by January 21, 2008, the date set by the Court. The parties' agreement had the effect of extending plaintiff's time to respond to these motions from January 7, 2008 to January 11, 2008.

Prior to these motions, the Court has heard and decided defendants' motion for summary judgment, *Henry v. Wyeth Pharmaceuticals, Inc.*, No. 05 Civ. 8106 (CM), 2007 U.S.Dist. LEXIS 57921 (S.D.NY. July 27, 2007) (hereinafter, *Henry I*), and defendants' motion for reconsideration of the Court's ruling on defendants' motion for summary judgment, *Henry v. Wyeth Pharmaceuticals, Inc.*, No. 05 Civ. 8106 (WCC), 2007 U.S.Dist. LEXIS 93694 (S.D.NY. Dec. 19, 2007) (hereinafter, *Henry II*). The Court's opinions and orders are annexed hereto for reference.

## STATEMENT OF THE FACTS

Plaintiff respectfully refers the Court to its opinions and orders dated July 27, 2007 (*Henry I*) and December 19, 2007 (*Henry II*) for a recitation of the facts relevant to the determination of this motion. (See Appendix annexed hereto.)

## **SUMMARY OF THE ARGUMENT**

Rule 56 (e) of the Federal Rules of Civil Procedure and Rule 56.1 (d) of the Local rules of the United States District Courts for the Southern and Eastern Districts of New York requires that evidence presented in support of or in opposition to a motion for summary judgment must be admissible. Therefore, implicit in a court's ruling on a motion for summary judgment that relies, in part, on evidence proffered by a party in support of its position on the motion is a finding that the evidence was, in fact, admissible. Here, with respect to Defendants' motions in limine numbered 1 through 3, each motion seeks to exclude evidence from trial that was proffered in opposition to Defendants' motion for summary judgment—evidence that was relied on, in part, by the Court in ruling on the motion, and in ruling on Defendants' subsequent motion for reconsideration. As the Court has expressly stated in both of its opinions, the evidence of: (1) various comments made by Plaintiff's supervisors; (2) evidence of discrimination suffered by other employees of Defendant Wyeth Pharmaceuticals, Inc. ("Wyeth") within the same period of time; and, (3) Plaintiff's statistical evidence, are relevant and probative on the issue of Defendants' discriminatory intent. Moreover, for the reasons set forth below, none of the grounds set forth in Rule 403 of the Federal Rules of Evidence are present with respect to these proofs that would justify excluding the evidence despite its admissibility.

With respect to Defendants' motion in limine number 4, Plaintiff remains confused as to why it was even made at all. Plaintiff consents to the motion being granted to the extent it seeks relief which is consistent with Plaintiff's previously stated position, yet opposes the fact that the motion was made, which has required Plaintiff and the Court to spend time and resources to address a completely unnecessary motion.

Finally, with respect to Defendants' motion in limine number 5, Plaintiff would ask the Court to see this motion for what it is: it is an attempt by the Defendants to have one of Plaintiff's claims dismissed from this case due to the fact that they failed to conduct further discovery on the claim or address it in their motion for summary judgment, which was when the proper opportunity for them to challenge this claim would have been.

For the reasons set forth below, Defendants' motion 4 should be granted in part, and Defendant's remaining motions should be denied in their entirety.

## ARGUMENT

### I.   OPPOSITION TO MOTION IN LIMINE NO. 1

Defendants seek to exclude the introduction of evidence that would be probative on the issue of Defendants' discriminatory intent. Such evidence includes statements made by Defendants' managerial employees, Walter Wardrop, a defendant herein, *Henry I*, at *66, Michael McDermott, a defendant herein, *Henry I*, at *40, Robert Bracco, *Henry I*, at *65-66, and Joseph Vitanza, *Henry I*, at *66. Defendants claim first that these statements by its employees are not relevant with respect to the promotional decisions (and other acts) at issue with respect to Henry, and should therefore be excluded under Rule 402 of the Federal Rules of Evidence ("FRE"). In the alternative, presumably due to this Court's previous rulings in *Henry I* and *Henry II* that this evidence was relevant, Defendants seek to exclude the evidence under Rule 403 on the ground that its probative value is substantially outweighed by the other elements set forth in Rule 403.

Rule 402 states that "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant

-3-

is inadmissible." FRE R. 402. Rule 401 defines "relevant evidence" to mean that evidence which has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence. FRE R. 401.

Plaintiff offers the statements made by its employees as evidence of management's discriminatory animus in general, and Defendants Wardrop and McDermott's discriminatory intent with respect to Plaintiff in particular. Clearly, their discriminatory intent is "of consequence" to this action. FRE R. 401; *see Henry I*, at *70-73. The question, then, is whether these statements offered by Plaintiff make it more probable that such was the case. FRE R. 401.

A plaintiff seeking to prove management's discriminatory intent in employment discrimination cases can rely on any number of facts, including a large number of circumstantial facts, to prove his claim. *Chertkova v. Connecticut Gen. Life Ins., Co.*, 92 F.3d 81, 91 (2d Cir. 1996). Indeed, employment discrimination plaintiffs "more often than not must depend on the cumulative weight of circumstantial evidence." *Tarshis v. Riese Org.*, 211 F.3d 30, 35-36 (2d Cir. 2000), *abrogated on other grounds by, Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 509 (2002). It is settled precedent in this circuit that actions or remarks by decision-makers that tend to show a "discriminatory animus" may lend support to the inference of a discriminatory motive. *Gregory v. Daly*, 243 F.3d 687, 697 (2d Cir. 2001); *Chertkova*, 92 F.3d at 91 (citing *Ostrowski v. Atlantic Mut. Ins. Cos.*, 968 F.2d 171, 182 (2d Cir. 1992)). Defendants seek to have these remarks characterized as "stray" remarks, and accordingly excluded from this trial because of it. However, this Court has already followed the direction of the Second Circuit and ruled that "such comments should not 'be categorized either as stray or not stray and then disregarded if they fall into the stray category.'" *Henry II*, at *14 (quoting *Tomassi v. Insignia Fin. Group, Inc.*, 478 F.3d 111,

116 (2d Cir. 2007)). A remark's probative value depends on how clearly it demonstrates a discriminatory intent and how closely it is related to the employment decision at issue. *Id.* at *15.

Notwithstanding the above, Defendants again selectively misquote the Second Circuit's opinion in *Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 506 (2d Cir. 1998). (Defs. Memo. Law in Supp. Mot. In Limine No.1 at 8); *see Henry II*, at * 15 n.6 (describing how Defendants selectively misquoted *Danzer* and the effect such an act had on their analysis with respect to stray remarks). *Danzer* actually holds contrary to Defendants' position. It holds that where "other indicia [besides the 'stray remarks'] of discrimination are properly presented, the remarks can no longer be deemed 'stray,' <u>and the jury has a right to conclude that they bear a more ominous significance</u>." *Danzer*, 151 F.3d at 56 (emphasis added).

Defendant Wardop, Henry's supervisor, made racially insensitive comments about a black employee's (non-existent) practice in voodoo, and made fun of an Hispanic employee by associating him (without any support) with "hip-hop culture" in a manner which, to the jury, could be considered as a negative or unprofessional portrayal of minority youth, thereby inferring that he viewed and treated Plaintiff in the same manner. *Henry I*, at *65-67, 88. Moreover, Wardrop engaged in this act in the winter of 2004, which was at or around the time of Plaintiff's negative 2003 performance review (given by Wardop) and his placement during the Organizational Cascade that took place at Wyeth (during which Wardop made recommendations concerning Plaintiff's placement). Clearly, this evidence satisfies the requirements of Rule 401 and is admissible during the trial of this matter.

With respect to Defendant McDermott, the Managing Director of the facility in which Plaintiff was employed, *Henry I*, at *3, he was the individual responsible for overall oversight of

the Organizational Cascade that took place in December 2003/January 2004, *Henry I*, at \*29. When Henry complained to him on January 22, 2004 that his placement during the Organizational Cascade felt discriminatory (i.e., that as an African-American he would have a hard time explaining the demotion on his resume), McDermott responded by saying that "[he was] not going to get into that silly discussion with [him]." *Henry I*, at \*39-40. As this Court has already found, McDermott's involvement with the discrimination Plaintiff suffered need not consist of direct acts, but can consist of failing to take adequate remedial measures, in order to support a finding of liability. *Henry II*, at \*23 (citing *King v. Town of Wallkill*, 302 F.Supp.2d 279, 296 (S.D.N.Y. 2004) ("[T]he case law establishes beyond cavil that a supervisor's failure to take adequate remedial measures can rise to the level of 'actual participation' under *HRL § 296(6)*.") (citing cases)). McDermott's comment is direct evidence, not circumstantial, that McDermott had no intention of investigating or remedying Plaintiff's claims of discrimination. In fact, the context in which it occurred makes this even clearer—the comment was made immediately after Plaintiff asked McDermott if he had read Plaintiff's performance appraisals, to which McDermott responded, "No, I don't care about them." *Henry I*, at \*38. Accordingly, it is just as clear that McDermott's remarks in this regard are relevant and admissible at the trial of this matter to prove that management, or at the very least, McDermott, had no intentions of investigating or remedying the discrimination Plaintiff had suffered.

With respect to Bracco's comments about voodoo, and Vitanza's comments that included the use of the well-known derogatory phrase, "tar baby," it should be clear that these comments are relevant to show, at least, management's general discriminatory animus. However, more importantly, Bracco was in charge of the Production Coordinator position that Plaintiff applied

for in July 2002, or sought to perform on an interim basis, until Andrew Schaschl ultimately took over, which is only months after Bracco expressed his belief that his black employee had inflicted voodoo on him. *Henry I*, at *11. It should be clear that the above referenced discriminatory comments by Wyeth's management team, including both of the individual Defendants herein, are relevant with respect to the issue of whether they harbor a general, and particular, discriminatory animus. Thus, Defendants argue in the alternative that the evidence should be excluded under Rule 403.

     Rule 403 states that "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." FRE R. 403. Defendants claim that this evidence in this case has "all of these doleful characteristics," (Defs. Memo. Law in Support of Mot. No. 1, at 10), yet Defendants cite to only one twenty-four-year-old case to support this assertion: *Haskell v. Kamen Corp.*, 743 F.2d 113 (2d Cir. 1984). In doing do, the Defendants fail to inform the Court what the statements were that the Court of Appeals found should have been excluded in *Haskell*. Instead, they simply report the court's finding and ask this Court to hold the same. (Defs. Memo. Law in Support of Mot. No. 1, at 11-12.) The actual facts of this case show how inapposite it is to the case at bar. The statements at issue in *Haskell* amounted to approximately four statements over the course of a fifteen-year period, the last of which was made no later than three years prior to the plaintiff's termination. 743 F.2d, at 118, 120. Additionally, Haskell did not submit any other direct or compelling circumstantial evidence that he was terminated on account of his age. Moreover, the way Defendants characterize *Haskell* is quite misleading. The holding of the case was not that the

evidence should have been excluded under Rule 403, but that it should have been excluded under Rule 402 for lack of relevance due to the time period in which the comments occurred (i.e., over 15 years earlier and no later than 3 years earlier). *Id.* at 120. The court merely buttressed its holding by making an ancillary finding that there might have been the additional likelihood that the statements could have prejudiced the jury in Haskell's favor. *Id.*

Unlike Haskell, Plaintiff's evidence regarding comments made by the two individual Defendants herein, and two other managers at the facility, would not waste any time at all to present, is not cumulative of other evidence in the case, and it causes no *"unfair* prejudice" to the Defendants. *See* FRE R. 403 (emphasis added). Every negative fact about a party in litigation causes some kind of prejudice, but the question under Rule 403 is whether that prejudice is sufficiently unfair to bar its introduction. This is not the case here, particularly since the named Defendants made the comments. Moreover, in their motion papers, Defendants have not even engaged in the balancing test required by Rule 403 to show to this Court, even if these "doleful characteristics" were present, how they "substantially [outweigh]" the evidence's probative value. *See id.* It is not enough that the evidence may cause some prejudice, might cause some delay, or may fit into any one of the categories set forth in Rule 403, but a defendant seeking to exclude the evidence must show that the prejudice, confusion, or delay, "substantially outweigh[s]" the probative value of the evidence. Defendants have not even attempted to do so by their motion.

Finally, Defendants have raised Rule 404 (b) as grounds for excluding evidence of Wardopr's prior comments, arguing that his statements would constitute "[e]vidence of other crimes, wrongs, or acts [which] is not admissible to prove the character of a person in order to show action in conformity therewith." (Defs. Memo. Law in Support of Mot. No. 1, at 10.)

-8-

Again, Defendants provide half of a quotation, which admission is fatal to their argument. Rule 404 (b) goes on to state that such evidence is admissible for the purpose of proving, among other things, intent or absence of mistake or accident. FRE R. 404 (b). In an employment discrimination case such as this one, Plaintiff's ultimate burden *is*, essentially, to prove intent and the absence of a good faith reason for the adverse employment decision; thus, any remarks, or for that matter other incidents of discrimination (*see* Defs. Mot. No. 2), that are offered to show intent on the part of the speaker should not be excluded under Rule 404.

## II.  OPPOSITION TO MOTION IN LIMINE NO. 2

Defendants' second motion is to exclude the testimony of Daisy Early and Newton Paul to the extent that they might testify about their beliefs that they, too, had been discriminated against in hiring and promotions. *See Henry I*, at *67. Defendants cite a string of cases to support their assertion that the introduction of "me-too" evidence is subject to some kind of blanket exclusion under Rules 401 or 403. However, there are just as many cases that hold that such evidence is clearly admissible. *See Stumph v. Thomas & Skinner, Inc.*, 770 F.2d 93, 97-98 (7th Cir. 1985) (permitting the testimony of two witnesses that claimed they were discriminated against by employer due to their age); *Spulak v. K-Mart Corp.*, 894 F.2d 1150, 1156 (10th Cir. 1990) ("As a general rule, the testimony of other employees about their treatment by the defendant is relevant to the issue of the employer's discriminatory intent."); *Kneisley v. Hercules, Inc.*, 577 F.Supp. 726, 731 (D.Del. 1983) (allowing the plaintiff to call four former employees to testify that they were the victims of discrimination at the hands of the defendant employer).

Presumably the reason there are so many cases on both sides of the aisle with respect to the use of anecdotal evidence is that the trial courts have broad discretion when deciding

-9-

evidentiary issues, and in employment discrimination cases context usually plays a large role in the court's decision-making process. *See also McDonnel Douglas Corp. v. Green*, 411 U.S. 792, 805 n.18 (1973) (anecdotal evidence is just the type of evidence that a plaintiff can rely on to support his claim of pretext, including anecdotal evidence with respect to how the employer treated other individuals, without regard to the "same supervisor" limitation); *Hunter v. Allis Chalmers Corp.*, 797 F.2d 1417, 1423 (7th Cir. 1986) ("Given the difficulty of proving employment discrimination — the employer will deny it and almost every worker has some deficiency on which the employer can plausibly blame the employee's troubles — a flat rule that evidence of other discriminatory acts by or attributable to the employer can never be admitted without violating Rule 403 would be unjustified."). If anything, the "same supervisor" limitation Defendants would have this Court adopt, or the fact that other individuals' employment woes might not be connected to Plaintiff directly, affects the weight to be given to the evidence, not its admissibility.

While it is clear that this kind of evidence should be found admissible in this case (and notwithstanding all of the above argument), the Defendants have absolutely no idea what the witnesses they identified in their memorandum of law will testify to. Defendants are simply guessing that those witnesses might testify about their own discriminatory experiences. With the exception of Newton Paul, no affidavit or deposition testimony has been submitted with respect to discrimination suffered by Jose Torres, Manuel Rivera, Christopher Snell, or Daisy Early. (Defs. Memo. Law in Support of Mot. No. 2, at 4-5.) Accordingly, even if this Court were inclined to grant Defendant's motion in limine number 2, it should reserve decision on the motion until the time of trial, if the issue comes up at all and Defendants make their objection, so that the Court may make a determination then, after having heard the context, nexus, temporal proximity and

circumstances surrounding the testimony.

### III. OPPOSITION TO MOTION IN LIMINE NO. 3

Defendants third motion in limine seeks to preclude Plaintiff from offering "statistical evidence" derived from emailed promotion announcements he received while still employed by Defendant. (Defs. Memo. Law in Supp. Mot. No. 3); *see Henry I*, at \*67-68; *Henry II*, at \*12 n.5. Rule 56 (e) of the Federal Rules of Civil Procedure and Rule 56.1 (d) of the Local rules of the United States District Courts for the Southern and Eastern Districts of New York requires that evidence presented in support of or in opposition to a motion for summary judgment must be admissible. Therefore, implicit in the Court's ruling on Defendants' motion for summary judgment, which relied, in part, on Plaintiff's "statistical evidence," was a finding that the evidence was, in fact, admissible.

Notwithstanding, the Court has already indicated that it is clear that Plaintiff did not survive summary judgment on this evidence alone, and that it previously treated the evidence as "little more than confirmatory details." *Henry II*, at \*12. The jury is entitled to do the same here—i.e., consider the evidence in light of all the other evidence, even if it were partially flawed (which Plaintiff does not concede), and come to a conclusion on whether there was a custom of racial bias operating at Defendants' place of business. *See Sorlucco v. N.Y. City Police Dep't*, 971 F.2d 864, 872 (2d Cir. 1992) ("We might agree with the district court that [plaintiff] would have fallen short in her proof if the [statistical evidence] had been her only evidence of a departmental practice of gender discrimination. However, [plaintiff] presented ample facts concerning her treatment at the hands of her superiors from which the jury, <u>in conjunction with the statistical evidence</u>, could have reasonably inferred that there was a custom of sex bias operating within the

NYPD and governing its disciplinary decisions . . . ." (citation omitted) (emphasis added). The *Sorlucco* court distinguished the facts before it to those present in *Haskell*, 743 F.2d at 121, a case upon which Defendants heavily rely, by pointing out that in *Haskell* the plaintiff sought to rely solely upon his statistical evidence, while in *Sorlucco* the plaintiff utilized her statistical evidence in conjunction with the evidence of own treatment at the hands of her superiors. *Sorlucco*, 971 F.2d at 872.

Just is in *Sorlucco*, the case at bar is not one in which Plaintiff is relying on "statistics alone." *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 339 (1977). Plaintiff seeks to have the jury hear his statistical evidence in conjunction with his other evidence, allow the Defendants to contradict it or question its significance as they are entitled to, and have the jury draw its own conclusions based thereon. For these reasons, and based upon the authority set forth above, Defendants' motion in limine number 3 must be denied in its entirety. *See also Ingram v. Madison Square Garden Center, Inc.*, 709 F.2d 807, 810-11 (2d Cir. 1983) (small statistical sample, when taken in conjunction with other evidence, was sufficient to support an inference of a discriminatory practice); *c.f. Watson v. Kansas City*, 857 F.2d 690, 696 (10th Cir. 1988) (evidence showing police conduct over a period of time could support a finding of a discriminatory police practice).

**IV.    OPPOSITION TO MOTION IN LIMINE NO. 4**

Defendants' fourth motion seeks to limit Plaintiff from using affidavit or deposition testimony on his case in chief for any reason other than that permitted by the Federal Rules of Evidence. (Defs. Mem. of Law in Supp. or Mot. No. 4.) Plaintiff opposes only the fact that this motion was made at all. At no time has Plaintiff indicated that he seeks to use any of the

previously submitted affidavits or deposition testimony for any reason other than that permitted by the Rules. Indeed, Plaintiff's portion of the Joint Pretrial Order says as much. Accordingly, Plaintiff consents to the granting of Defendants' motion in limine number 4 to the extent that the order still permits Plaintiff to introduce affidavit or deposition testimony for any reason that is permitted by the Federal Rules of Evidence.

## V.   OPPOSITION TO MOTION IN LIMINE NO. 5

Defendants' fifth motion to exclude the Plaintiff from presenting and pressing his constructive discharge claim at the trial of this matter is especially confusing, as are the arguments in support thereof. First, Defendants claim that Plaintiff should be precluded from doing so because the Complaint did not contain an allegation of constructive discharge. (Defs. Memo. in Supp. of Mot. No. 5, at 4.) However, Defendants fail to recognize that Plaintiff's Complaint was filed in September 2005, almost 5 months *before* the date of Plaintiff's termination. Thus, Plaintiff could not have even asserted his claim for constructive discharge in the Complaint. It appears that, yet again, Defendants' review of the pleadings in this case is "excessively formalistic," as the Court has already found. *Henry II*, at *19

Second, the fact that the deadline for amending the complaint in this action has elapsed is irrelevant. (Defs. Memo. in Supp. of Mot. No. 5, at 4, 6.) Plaintiff's claim for constructive discharge, based upon a set of facts that arose after the filing of the Complaint, would not properly be the subject of an amended complaint under the Rules, but a supplemental complaint, which Plaintiff may or may not file at any time prior to trial. Fed.R.Civ.P. 15 (d); *c.f.* Fed.R.Civ.P. 15 (b)(1) ("If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an amendment

when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits.")

Defendants' argument that Plaintiff's claim of constructive discharge would be prejudicial because they were unaware of it until Plaintiff filed his jury charges is wholly without merit. (Defs. Memo. in Supp. Mot. No. 5, at 6.) When asked a direct question on this issue at his deposition, Plaintiff clearly informed Defendants' counsel of the basis of his claim for constructive discharge. (Morelli Aff., Ex. Henry Depo. at 281-82.) Clearly, to a well-versed lawyer, Plaintiff's testimony that he did not return to work specifically because he did not want to be put back into a situation which caused him severe physical and psychological distress sets forth an unambiguous allegation of constructive discharge. Henry need only prove at trial that his decision to not return to work was objectively reasonable under the circumstances. *See generally Terry v. Ashcroft*, 336 F.3d 128, 151-52 (2d Cir. 2003) (setting forth requirements for claim of constructive discharge).

Without belaboring the point now or arguing the merits of the claim, it should be clear, or at least a jury could find, that demoting a decorated and experienced chemist to a position in which he is merely required to sit on an assembly line and watch employees pack vitamins into a bottle for eight hours per day is an indication that the Defendants were purposefully trying to force the Plaintiff out of the company, especially in light of all that occurred up to that point (i.e., engaging in such acts as giving false performance reviews to make him appear "unpromotable," and ignoring his complaints of discrimination, just to name a few). *See Henry I*. Simply put, Defendants' motion, which seeks to eliminate a cause of action purportedly because they were not given notice of it in time to conduct discovery, is nothing more than their attempt to cover their own failures; it is an attempt to eliminate a cause of action because they chose not to ask follow-

up questions at Plaintiff's deposition or seek supplemental disclosure regarding his claim.

Moreover, it should also be pointed out that Plaintiff's proposed jury charges, which contain a charge on Plaintiff's constructive discharge claim, were submitted months ago on July 30, 2007. At that time, Defendants did not move to strike the constructive discharge charge, did not seek to reopen discovery on the issue, did not correspond with Plaintiff's counsel asking that it be withdrawn, and did not press the Plaintiff to move to supplement the pleadings. Because they failed to do all of these very reasonable things, we would respectfully submit that their argument on this point has been waived. In any event, their argument that they did not have the opportunity to consider the allegations and conduct discovery on this claim is highly disingenuous in light of the above. Then, even after the proposed jury charges were submitted by which Defendants, for the second time, were informed of Plaintiff's constructive discharge claim, Defendants filed a motion for reconsideration (*Henry II*), which could have either addressed the issue therein, or could have separately contained a motion for summary judgment on that claim, yet they chose not to do so.

Finally, Defendants' argument that because Plaintiff did not address the issue of constructive discharge in his memorandum of law opposing Defendants' motion for summary judgment is nonsensical. Plaintiff's opposition to Defendants' summary judgment motion was just that, an *opposition* to *Defendants'* summary judgment motion. Defendants' failure to move for summary judgment on one of Plaintiff's claims, or to even address it all, does not mean that the issue was not present in the case.

As stated above, there are clear reasons why Defendants' motion in limine number 5 must be denied. However, should the Court require that Plaintiff formally supplement his pleadings

with his claim for constructive discharge, Plaintiff would be happy to do so.

## CONCLUSION

For all the foregoing reasons, Defendants' motions in limine numbered 1 through 5 inclusive should be denied, except Plaintiff consents to motion in limine number 4 being granted in part.

Dated: Carle Place, New York
      January 11, 2008

Respectfully submitted,

LEEDS MORELLI & BROWN, P.C.
*Attorneys for Plaintiff*

By: Steven A. Morelli (SM 4721)
    Of Counsel

One Old Country Road, Suite 347
Carle Place, New York 11514
(516) 873-9550
smorelli@lmblaw.com